UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISA LOCURTO, on behalf of herself and all others
similarly situated,

Plaintiff,

-against-

AT&T MOBILITY SERVICES LLC,

Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___8/18/14___

13 Civ. 4303 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

Plaintiff, Lisa LoCurto, brings this action on behalf of herself and other similarly situated

current and former employees of Defendant, AT&T Mobility Services LLC ("AT&T Mobility"),

alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., the New

York Labor Law, § 650 *et seq*., and the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56a

*et seq*.  Plaintiff moves for an order (1) conditionally certifying a collective action under 29

U.S.C. §§ 216(b); (2) requiring Defendant to provide the names, last known addresses, dates of

birth, and partial social security numbers of the potential class members; and (3) approving the

form of notice to be sent to members of the proposed class.  Plaintiff's motion is GRANTED in

accordance with the conditions set forth below.

## BACKGROUND

Plaintiff has worked for Defendant since October 2006 as a regional account executive

("RAE"), serving Defendant's national retail accounts in New York and New Jersey.  LoCurto

Aff. ¶¶ 7, 8.  Plaintiff claims that she and other RAEs that she knows regularly worked more than

forty hours per week and have not received overtime as required under the FLSA.  *Id*. ¶¶ 18, 21,

24, 35.  Plaintiff claims there are other similarly situated individuals who would join if provided

the opportunity and seeks conditional certification of the following class:

> Current and former employees of Defendant who performed any work as [RAEs] for Defendant in any state in the United States and who worked in excess of forty (40) hours in a given work week (the "FLSA Plaintiffs") beginning on or after June 20, 2010 (the "FLSA Class Period"), with the exception of RAEs who: (a) agreed to arbitrate their overtime claims with Defendant; (b) settled their FLSA claims with Defendant that accrued during the FLSA Class Period; or (c) annually earned during the FLSA Class Period compensation (including base salary and commissions) of $100,000 or more, which includes at least $455/week paid on a salary basis.

Pl. Mem., ECF No. 33.

Defendant is a wholly owned subsidiary of AT&T Corp. and provides wireless voice and advanced data communications services across the United States to more than 100 million subscribers. Defendant sells its products and services through both direct and indirect retail channels. The direct channel is comprised of retail stores owned and operated by Defendant and is not at issue here. Euraette Decl. ¶ 3, ECF No. 91. The indirect channel is comprised of partnerships and distribution agreements with local dealers (i.e. independent dealers or agent stores) and non-exclusive relationships with national retail chains (e.g., RadioShack, BestBuy, Wal-Mart, etc.). *Id*. ¶ 4. This indirect channel includes approximately 2,700 local dealer locations, the majority of which are exclusive dealers of Defendant's products and services, and approximately 13,000 national retail stores. *Id*.; McCormick Decl. ¶ 4, ECF No. 93. To serve the indirect channel, Defendant employs RAEs who promote, market, and sell Defendant's products and services and provide customer service to retail customers. Euraette Decl. ¶ 5; McCormick Decl. ¶¶ 4, 6. Plaintiff estimates that Defendant employs approximately 813 RAEs nationwide, with approximately 53 in the New York/New Jersey Area. LoCurto Aff. ¶ 11.

According to Defendant, the term RAE applies to three categories of employees: RAEs who work with local dealers, RAEs who work with national retailers, and "hybrid" RAEs who

serve both local dealer and national retail accounts.  Defendant estimates that it employs
approximately 288 RAEs who serve local dealers, 706 who serve national retailers, and 93
"hybrid" employees.  Euraette Decl. ¶ 5; McCormick Decl. ¶¶ 4, 6.  In support of its opposition
to conditional class certification, Defendant submits declarations from twenty-four RAEs.  ECF
Nos. 68-90, 95.  Some of these RAEs work with local dealers and others work with national
retailers.  *Id*.  Defendant also provides the declarations of four more senior employees, including
a director of sales operations, a director of compensation, a senior sales program execution
manager, and a director of sales for New York/New Jersey.  ECF Nos. 91-94.  Defendant
emphasizes the diverse responsibilities and duties of its RAEs, including, for example, that some
RAEs who work with local dealer owners are extensively involved in day-to-day store
operations, whereas others who work with national retailers are not and tend to interact with
various layers of management instead.  *See* Def. Mem. 6-9.  Defendant also argues that most
RAEs working with local dealers do not have to promote Defendant's products and services vis-
à-vis its competitors', because the majority of local dealers have exclusive agreements with
Defendant, whereas RAEs who work with national retailers do have such responsibilities.  *See*
*id*. at 9-14.  Defendant also points to differences within the category of RAEs who serve national
retailers, including differences in training, interactions with store management, and other job
responsibilities involving sales and the issuance of customer credits.  *See id*. at 14-24.

In support of her motion, Plaintiff provides an affidavit detailing her experience as an
RAE, attesting that she regularly worked more than forty hours per week without compensation.
LoCurto Aff. ¶¶ 17-29.  Plaintiff's assigned work schedule is Tuesday through Saturday from
8:00 a.m. to 5:00 p.m. or 9:00 a.m. to 6:00 p.m., with Sunday and Monday designated as days
off.  *Id*. ¶ 19.  The work schedule totals more than forty hours per week, and Plaintiff states that

she is expected to work without disruption.  *Id.* ¶ 20.  Plaintiff almost never takes lunch breaks

and regularly eats while driving between accounts.  *Id.*  According to Plaintiff, management

regularly requires RAEs to work additional hours, and she provides several examples of such

demands.  For example, RAEs must be "on call" at all hours of the day, including evenings, days

off, personal days and sick days to respond to phone calls, emails, and texts from accounts and

supervisors.  *Id.* ¶ 22.  Plaintiff has received instructions and emails from supervisors informing

her of this requirement.  *Id.*  Plaintiff also states that when, for example, Apple introduces a new

product, RAEs have been required to be at stores as early as 6:00 a.m. and work until 5:00 p.m.

or later.  *Id.* ¶ 29.  Plaintiff states that every year through 2010, RAEs were required to work on

"Black Friday" from 4:00 a.m. to 5:00 p.m. or later.  *Id.*  Additionally, RAEs are required to

participate in monthly telephone conference calls with management and to attend early morning

meetings to provide training to store personnel outside assigned work hours.  *Id.* ¶¶ 25, 29.

Plaintiff reports being required to make evening calls, including on her days off, to the

approximately twenty stores to which she was assigned regarding their sales and to communicate

this information to her manager, which she estimates totals one hour of additional work every

evening.  *Id.* ¶ 24.  Plaintiff attests that she has not received overtime payment for work in excess

of forty hours per week and states that, to her knowledge, RAEs are never paid for overtime but

rather are paid a salary plus commission based on sales.  *Id.* ¶¶ 21, 27.  According to Plaintiff,

other RAEs have been required to follow the same procedures that she has, and they have

performed similar duties, worked similar hours, and been paid in the same manner.  *Id.* ¶¶ 24, 35.

Plaintiff also provides Defendant's job posting for an RAE positon in Kansas City,

Missouri, which states that an employee's "[s]chedule may require evenings, weekends, and

holidays."  LoCurto Aff. Ex. B (Position Description), ECF No. 34-1.  The position requires,

among other things, that employees "[p]articipate in events to build and strengthen the relationship with Dealers," "[e]nsure timely and appropriate resolution of all customer issues," and "[a]ssist[] in special projects . . . or other duties as assigned by management." *Id*. Among the required qualifications is the "[a]bility to work flexible hours, including evenings, weekends, and holidays." *Id*.

On May 4, 2009, following an internal audit of the RAE position, Defendant made a determination that the RAE position had been incorrectly classified as exempt under the FLSA and would be reclassified. Plaintiff provides the Court with a "Notification for FLSA Classification," which she claims to have received from Defendant, stating that "effective May 31, 2009, your job has been classified as Non-Exempt and is eligible to receive overtime pay." LoCurto Aff., Ex. D (Notification for FLSA Classification), ECF 34-1. The notification states that the change applies to the job title "Retail Account Executive" and does not distinguish between RAEs who serve local dealers and RAEs who serve national retailers. *Id*. Plaintiff attests that management acknowledged that the reclassification applied to all RAEs. LoCurto Aff. ¶ 31. According to Plaintiff, despite Defendant's assertions that the RAE position would be reclassified and overtime pay would be effective the first pay cycle after May 31, 2009, no overtime payments were made. *Id*. ¶ 32. Defendant submits the declaration of Curt Johnson, who states that this reclassification was postponed on the advice of senior sales management and was ultimately never implemented. Johnson Decl. ¶ 4, ECF No. 92. Plaintiff attests that she and other RAEs continue to be required to work in excess of forty hours per week without receiving overtime pay. LoCurto Aff. ¶ 33.

**DISCUSSION**

I.   <u>Applicable Law</u>

The FLSA authorizes a plaintiff to file suit on behalf of "other employees similarly situated," but only if such employees "consent in writing."  29 U.S.C. § 216(b).  Thus, potential plaintiffs must "opt-in" to participate in an FLSA collective action.  The FLSA does not guarantee an initiating plaintiff a right to obtain a court-ordered notice to potential opt-ins. Rather, "district courts have discretion . . . to implement § 216(b) . . . by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alternations and internal quotation marks omitted) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

Courts in this Circuit use a two-step method to assess whether to certify a collective action.  *Myers*, 624 F.3d at 554-55.  At the first stage, plaintiffs must "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  *Id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'"  *Sbarro*, 982 F. Supp. at 261 (Sotomayor, J.) (quoting 29 U.S.C. § 216(b)).  "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."  *Hallissey v. Am. Online, Inc.*, 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008).  "Plaintiff's burden is minimal because the determination that the parties are similarly situated is merely a preliminary one."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006).  Once a plaintiff meets this standard, the court may authorize the plaintiff to send out notices to "potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect" to the FLSA violation alleged.  *Myers*, 624 F.3d at 555.

6

"At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555 (citation omitted).  The district court may "decertify" the action if it determines that the opt-in plaintiffs are not "similarly situated," and their claims may be dismissed without prejudice.  *Id*.  This second step is typically initiated by a defendant's filing a motion for decertification. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

II.  Collective Action Certification

Plaintiff's showing here is sufficient to satisfy the modest burden necessary for the first stage of certification.  Courts have routinely authorized notice to putative class members on records and allegations similar to those present in this case. *See, e.g.*, *Khamsiri v. George & Grank's Japanese Noodle Rest. Inc.*, 12 Civ. 0265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (finding that a single declaration from the plaintiff was sufficient for approval of collective certification); *Williams v. ezStorage Corp.*, RDB–10–3335, 2011 WL 1539941, at *3 (D.Md. Apr. 20, 2011) (finding that a plaintiff had demonstrated that she was "similarly situated" to other potential plaintiffs based on a "single affidavit," coupled with excerpts from the defendant's employee handbook); *Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 82-83 (E.D.N.Y. 2008) (collecting cases and finding that even where the defendant contested portions of the lone plaintiff's declaration that plaintiff's burden had been met); *Wraga v. Marble Lite, Inc.*, 05 Civ. 5038, 2006 WL 2443554, at *2 (E.D.N.Y. Aug. 22, 2006) (granting conditional certification based on complaint and single affidavit alleging failure to pay overtime where plaintiff stated that he was aware, based on conversations, of others in a similar situation).

Plaintiff submits her own affidavits in support of this motion.  In the first, Plaintiff describes her experience as an RAE, attests to regularly working more than forty hours per week

without overtime compensation, and states that she observed other RAEs performing the same types of job duties without receiving overtime pay.  LoCurto Aff. ¶¶ 17-29, 35.  In the second, Plaintiff attests that another RAE, Aldo Martino, who has served both local dealer and national retailer accounts, has expressed an interest in joining this lawsuit.  LoCurto Reply Aff. ¶ 7. Plaintiff also attests that Aldo Martino and Nikki Amari, another RAE employed by Defendant, can identify additional RAEs in both the local dealer and national retailer channel who have been subjected to the same unlawful overtime practices.  *Id.* ¶¶ 2-4.[1]  Plaintiff's evidence in support of conditional certification is not limited to her own affidavits.  Plaintiff also provides a job description for an RAE position in Kansas City, Missouri, which corroborates many of her statements regarding RAEs' duties and the expectation that RAEs will maintain a flexible schedule and respond quickly to a variety of concerns from customers, client stores, and management.  *See* LoCurto Affidavit Ex. B.  This position description does not draw any distinction between national retailers and local dealers or specify which clients the RAE will serve.  *Id.*  Plaintiff also submits a notification from Defendant, dated May 4, 2009, reclassifying the RAE position as non-exempt under the FLSA.  LoCurto Aff. Ex. D.  Following an internal audit, Defendant itself concluded that the RAE position had been misclassified as an FLSA-exempt position and that RAEs would, effective May 31, 2009, be non-exempt and therefore eligible to receive overtime.  *Id.*  Defendant submits an affidavit explaining that Defendant subsequently concluded that the RAE position was properly classified as exempt and indicating

---

[1] In her reply papers, Plaintiff also submits the affidavits of Nikki Amari and Aldo Martino.  ECF Nos. 100, 101.  In a letter to the Court, Defendant contends that these affidavits should not be considered in light of the scheduling order governing this motion.  Letter Motion, ECF No. 104.  The scheduling order instructed the parties that, by October 28, 2013, Defendant was entitled to depose all affiants whose statements are offered in support of conditional certification.  Scheduling Order, ECF No. 21.  Accordingly, in order to avoid any potential prejudice, the Court does not rely on the content of these affidavits in resolving this motion.  The Court is, however, troubled by Defendant's apparent gamesmanship in seeking to exclude these submissions despite producing twenty-eight affidavits in support of its opposition after the above deadline.  Moreover, as discussed at greater length below, Defendant's attempt to have the Court rely on this evidence to make factual findings relating to the RAE position reflects a misunderstanding of the parties' burdens at this stage.

that this reclassification was never implemented.  Johnson Decl. ¶ 4.  Plaintiff asserts that

Defendant's overtime policies have not changed and that others in her position continue to

perform duties similar to hers in excess of forty hours per week without receiving overtime

compensation.  LoCurto Aff. ¶¶ 32-35.  In light of these considerations, the Court is satisfied that

Plaintiff has presented more than "unsupported assertions" that individuals "'similarly situated'

plaintiffs do in fact exist."  *Myers*, 624 F.3d at 555; *see also Sbarro, Inc.*, 982 F. Supp. at 261.

Defendant opposes conditional certification of a single class and seeks to establish that

Plaintiff is not similarly situated with other RAEs for three reasons.  First, Defendant argues that

the term RAE applies to three separate jobs, each having different duties.  Defendant contends

that Plaintiff, an RAE who works with national retailers, is not similarly situated to RAEs who

work with local dealers or "hybrid" RAEs who serve both.  Second, Defendant argues that

Plaintiff, who works in the New York/New Jersey area, is not similarly situated to RAEs in other

geographical regions.  Third, Defendant argues that Plaintiff is not representative or typical of

other RAEs and, moreover, cannot claim that her position is non-exempt where she failed to

exercise discretion and independent judgment on significant matters or otherwise perform her job

duties as required by her employer.  Defendant submits extensive briefing and a total of twenty-

eight affidavits from various employees seeking to establish that there are differences between

the jobs and responsibilities of RAEs who serve national retailers, RAES who serve local

dealers, and "hybrid" RAEs, as well as across geographical regions.  *See* Def. Mem. at 4-24;

ECF Nos. 68-94.

AT&T Mobility recently employed a similar strategy in opposing conditional

certification of an RAE class in an FLSA action in Florida.  *See Reyes v. AT&T Corp.*, 801 F.

Supp. 2d 1350, 1355 (S.D. Fla. 2011).  There, the court admonished AT&T Mobility for its

"attempt, in effect, to seek a factual determination on the similarly situated question by presenting a vast amount of affidavit evidence" and observed that doing so "'demonstrate[s] a fundamental misunderstanding of the nature of the proceedings at this stage of litigation.'" *Id.* (quoting *Morden v. T-Mobile USA, Inc.*, C05-2112RSM, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006)). Defendant commits the same mistake again here. At this preliminary stage, the task of a party opposing conditional certification is to demonstrate the insufficiency of the evidence, not to seek a factual determination regarding the specific duties of the position. *Reyes*, 801 F. Supp. 2d at 1358. Indeed, the very nature of the two-step conditional certification process is such that factual findings on the similarly situated issue are reserved for the second stage, where such findings may be based on the record produced in discovery. *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005); *see also Masson v. Ecolab, Inc.*, 04 Civ. 4488, 2005 WL 2000133, at *14-15 (S.D.N.Y. Aug. 17, 2005) ("At this stage, [the] factual issues do not bear on whether this case can proceed as a collective action. Indeed, approval of [] collective action is for purposes of discovery as well as notice."). As recognized in *Reyes*, the Court here cannot make any such factual findings without making "premature" credibility determinations that are not appropriate at this stage. 801 F. Supp. 2d at 1360; *see also Hernandez v. Merrill Lynch & Co., Inc.*, 11 Civ. 8472, 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012) ("Rather than engage in a lengthy discussion of each [of defendant's arguments], suffice it to say that none defeats the required 'modest showing' because all would require the Court to resolve factual disputes or make credibility determinations . . . . [S]uch a judicial exercise would be inappropriate on this motion at this first stage.") (citations omitted). This is particularly true where, as here, Defendant has exclusive access to its employees and the parties have had a limited opportunity to engage in the adversarial discovery process.

In urging the Court to nevertheless draw factual conclusions relevant to the similarly situated issue, Defendant directs the Court to a Northern District of California case where, as here, the defendant submitted numerous affidavits relating to differences in employees' day-to-day activities and overall employment experiences.  Def. Mem. at 30-31 (citing *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F. Supp. 2d 1053, 1061 (N.D. Cal. 2007)).  The district court there observed that "[t]hough selectively chosen, defendants' declarations indicate a certain degree of variability from one [employee] to the next that the court must take into account when determining whether . . .  collective action certification is appropriate."  *Id*. Despite raising questions regarding the "reliability" of certain declarations submitted by plaintiff, the court nonetheless concluded that the "lenient standard warranting conditional certification" had been met.  *Id*. at 1071.  The situation here is similar.  Even if the Court were in the position to accept Defendant's factual allegations, the distinction between subcategories of RAEs has a limited bearing on the question before the Court at this stage, which is whether prospective members of the conditional class "together were victims of a common policy or plan that violated the law."  *Sbarro*, 982 F. Supp. at 261 (citations omitted); *see also Chowdhury v. Duane Reade, Inc.*, 06 Civ. 2295, 2007 WL 2873929, at *5 (S.D.N.Y. Oct. 2, 2007) ("Defendants cannot defeat a § 216(b) motion simply by pointing out all the ways in which plaintiff's exact day-to-day tasks differ from those of the opt-in plaintiffs; instead, defendants must show that plaintiffs are not similarly situated *in ways relevant* to their entitlement to overtime compensation under FLSA, which defendants have not done.") (emphasis in original); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of this inquiry . . .  is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.").  On the question before the Court, Plaintiff has met the minimal burden required.

11

Defendant's attacks on Plaintiff as an inadequate class representative also miss the mark. *See* Def. Mem. 39-42.  Contrary to Defendant's assertions, "[u]nlike Rule 23, section 216(b) of the FLSA requires no showing of numerosity, typicality, commonality, or representativeness." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007) (citations omitted).  Indeed, the "similarly situated" standard for certifying a 216(b) collective action is "considerably more liberal than class certification under Rule 23."  *Id.* (quoting *Iglesias-Mendoza*, 239 F.R.D. at 368.

As recognized in the case law setting forth the two-step framework for class certification, the appropriateness of the conditional class can be reassessed at a later point with the benefit of a more complete record.  *Myers*, 624 F.3d at 555; *see also Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303, 308 (S.D.N.Y. 1998) (granting conditional certification but declining to make any holding on the "similarly situated" issue until after discovery).  Indeed, "[t]he burden imposed at this first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs."  *Merrill Lynch*, 2012 WL 1193836, at *4 (citation omitted).  To the extent that RAEs who work primarily with local dealers were subjected to overtime policies different from RAEs who work with national retailers, that issue can be more appropriately evaluated following discovery, when, if warranted, the Court can decertify the class.  *See Myers*, 624 F.3d at 555.  At this stage, Plaintiff's showing is sufficient.

III.  Notice to Putative Class Members

The FLSA contains no provisions authorizing the issuance of notice to a conditional class.  *See Damassia v. Duane Reade, Inc.*, 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006). This authority stems from the Court's inherent power to manage its own docket, and the approval of a collective action notice is a "case management tool for district courts to employ in

12

appropriate cases." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010) (quoting *Myers*, 624 F.3d at 555 n. 9) (internal quotation marks omitted). "Section 216(b) manifests a preference that when collective action certification is granted, the court sanction a carefully-controlled notice to be provided to potential putative plaintiffs, rather than permitting unregulated solicitation efforts to secure joinder by those individuals." *Rudd v. T.L. Cannon Corp.*, 10-CV-059110022-4834, 2011 WL 831446, at *13 (N.D.N.Y. Jan. 4, 2011), *report and recommendation adopted*, 10-CV-0591, 2011 WL 830636 (N.D.N.Y. Mar. 3, 2011); *see also Hoffmann-La Roche*, 493 U.S. at 172 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.").

Defendant objects to some of the content in Plaintiff's proposed form of notice. First, Defendant objects that Plaintiff's proposed notice is misleading because the "Description of the Suit" states that the lawsuit was filed by three plaintiffs, when the other two original plaintiffs voluntarily withdrew their claims in this suit. Def. Mem. 43; *see also* ECF Nos. 10, 11. Second, Defendant requests that the reference in the notice to "various state wage and hour laws" be modified to reflect that this action only alleges state claims under the laws of New York and New Jersey. Def. Mem. 43. Third, Defendant objects that Plaintiff's notice fails to inform potential opt-in plaintiffs that they have the right to retain counsel of their choice and instead contains a statement that they are agreeing to be represented by Plaintiff's counsel. *Id*. at 44. Finally, Defendant objects to the ninety-day notice period proposed by Plaintiff on the grounds that is too long of a delay and not necessary to effectuate notice to the class. *Id*. at 43.

Plaintiff submits a revised form notice responding to two of Defendant's concerns. Saffer Reply Aff. Ex. B, ECF No. 103-1. Although the original notice already included a sentence under "VIII. Effect of Joining the Lawsuit" stating that prospective opt-in plaintiffs may

join the lawsuit with their own attorneys, Plaintiff has agreed to set out this provision in a separate paragraph.  Pl. Reply 17; *see also* Saffer Reply Aff. Ex. B.  Plaintiff has also consented to a sixty-day notice period and revised the proposed notice accordingly.  *Id.*

The Court has considered Defendant's objections and approves Plaintiff's revised notice, Saffer Reply Aff. Ex. B, with the modifications listed at the end of this order.

IV.  Production of Putative Class Member Information

Plaintiff requests an order requiring Defendant to provide the names, last known addresses, dates of birth, and partial social security numbers of the potential class members.  Pl. Mem. 15.  Plaintiff also requests permission to send a follow-up post card thirty days after the initial mailing and requests an order instructing Defendant to post the notice at worksites in the same areas where it is required to post FLSA notices.  *Id.* at 15, 16.  Defendant objects to the production of the dates of birth and partial social security numbers of prospective class members. Defendant claims that Plaintiff has no legitimate need for this information and proposes that the need to positively identify all prospective class members could be accomplished through the matching of employees' AT&T user identification numbers.  Def. Mem. 44.

Courts routinely order discovery of names and addresses in FLSA actions.  *See Hernandez v. Immortal Rise, Inc.*, 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012); *Ack v. Manhattan Beer Distribs., Inc.*, No. 11 Civ 5582, 2012 WL 1710985, at *6 (E.D.N.Y. May 15, 2012) (collecting cases).  Although "courts often decline to allow discovery of social security numbers due to privacy concerns, it is generally accepted that such discovery is permitted where [p]laintiff can demonstrate that names and contact information are insufficient to effectuate notice."  *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 448 (S.D.N.Y. 2011) (citations omitted).  Here, Plaintiff's counsel asserts that the requested information may be

necessary to reach prospective class members who are no longer employed by Defendant and who did not provide their former employer with a change of address.  In similar cases, courts have required plaintiff's counsel to "provide defendants' counsel with a copy of the notice of undeliverability" and then required "defendants' counsel [to] provide forthwith the social security numbers of each individual who could not be located."  *Ritz v. Mike Rory Corp.*, 12 Civ. 0367, 2013 WL 1799974, at *5 (E.D.N.Y. Apr. 30, 2013), *reconsideration denied*, 12 Civ. 367, 2013 WL 1968493 (E.D.N.Y. May 13, 2013).  The Court adopts the same procedure here.  As in *Ritz*, Plaintiff's counsel may request that the opt-in period for such individuals be extended 45 days from the date of receipt of the individual's date of birth and partial social security number.

Defendant shall produce a computer-readable list of prospective class member information by **September 2, 2014** and as described at the end of this order.  Because of privacy concerns, Plaintiff shall file a fully executed confidentiality agreement regarding the use of this information by **September 2, 2014** and as described at the end of this order.  *See Shajan v. Barolo, Ltd.*, No. 10 Civ 1385, 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010).

## CONCLUSION

Plaintiff's motion for conditional certification is GRANTED.

It is ORDERED that by **September 2, 2014**, Plaintiff shall submit for the Court's final review and approval a revised copy of the proposed notice in accordance with the following modifications.  First, although it is not inaccurate that three plaintiffs originally filed the complaint on June 20, 2013, all other references to "Plaintiffs" (plural) should be modified to reflect that only a single plaintiff is pursuing this action.  Second, Plaintiff shall revise paragraph "XI. Your Legal Representation If You Join the Lawsuit" by adding the following language at the beginning:  "You may join the Lawsuit with your own attorney.  If you do so, your attorney

must file the Consent Form signed by you within sixty (60) days of this Notice." The same language currently appears in paragraph "VIII. Effect of Joining the Lawsuit" and shall not be deleted.

Plaintiff's counsel is authorized to send the revised notice (after the Court grants final approval) and opt-in form to all class members by first class mail. Plaintiff is authorized to send follow-up postcards to class members who have not responded within thirty days after the mailing of the initial notice. Defendant shall post a copy of the Court-approved notice and consent form at each of Defendant's worksites where any RAE is employed in the same areas where it posts other FLSA notices.

It is ORDERED that by **September 2, 2014**, Defendants shall produce a computer-readable list of all names, last known addresses, dates and locations of employment, and positions held for all current and former RAEs employed by AT&T Mobility on or after June 20, 2010, with the exception of RAEs who: (a) agreed to arbitrate their overtime claims with Defendant; (b) settled their FLSA claims with Defendant that accrued during the FLSA Class Period; or (c) annually earned during the FLSA Class Period compensation (including base salary and commissions) of $100,000 or more, which includes at least $455/week paid on a salary basis. Dates of birth and partial social security numbers (where applicable) shall be provided upon receipt of a notice of undeliverability from Plaintiff's counsel.

It is ORDERED that by **September 2, 2014**, Plaintiff shall file a fully executed confidentiality agreement regarding the use of social security numbers. The agreement shall state that the birth dates and partial social security numbers will be maintained by counsel alone and used solely to perform public records searches to locate and provide notice to prospective members; that all copies of the numbers, including any program or other document created using the numbers, will be destroyed once the searches are complete; and that counsel will certify, in

writing, that the terms of this order have been adhered to once the destruction of this data is complete. *See Whitehorn*, 767 F. Supp. 2d at 448-49 (citing *Shajan*, 2010 WL 2218095, at *1).

The Clerk of Court is directed to terminate the motion at ECF Nos. 32 and 108.

SO ORDERED.

Dated: August 18, 2014
      New York, New York

 

_____
ANALISA TORRES
United States District Judge