PATRICK W. SHEA
PAUL HASTINGS LLP
75 East 55th Street
New York, NY 10022
patshea@paulhastings.com
(212) 318-6000 (telephone)
(212) 319-4090 (facsimile)

ERIKA L. LEONARD (*pro hac vice*)
PAUL HASTINGS LLP
1170 Peachtree St., NE, Suite 100
Atlanta, GA 30309
erikaleonard@paulhastings.com
(404) 815-2400 (telephone)
(404) 815-2424 (facsimile)

*Attorneys for Defendant*
AT&T Mobility Services LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA LO CURTO, *on behalf of herself and all others similarly situated*,<br><br>            Plaintiff,<br><br>        -against-<br><br>AT&T MOBILITY SERVICES LLC,<br><br>            Defendant. | 13 Civ. 04303 (AT)(KNF) |

## DEFENDANT AT&T MOBILITY SERVICES LLC'S MOTION FOR SUMMARY JUDGMENT ON THE CLAIMS OF PLAINTIFF LISA LOCURTO AND MEMORANDUM OF LAW IN SUPPORT THEREOF

**TABLE OF CONTENTS**

**Page**

I.      SUMMARY OF ARGUMENT ........................................................................... 1

II.     SUMMARY JUDGMENT STANDARD.......................................................... 2

III.    LEGAL ARGUMENT...................................................................................... 3

    A.    Plaintiff's Position Meets the First Prong of the Administrative Exemption Because She Earns a Salary in Excess of $455 Per Week .................... 3

    B.    Plaintiff's Position Meets the Second Prong of the Administrative Exemption Because Her Primary Duty Is Marketing and Promotional Work Directly Related to AT&T's General Business Operations ........................ 3

        1.   Plaintiff admits her position provides marketing and promotion support to AT&T's retailers........................................................ 5

        2.   Plaintiff's primary duty is the performance of non-manual work directly related to the general business operations of AT&T .................. 9

    C.    Plaintiff's Position Meets the Third Prong of the Exemption Because Her Primary Duty Includes the Exercise of Discretion and Independent Judgment With Respect To Matters of Significance ......................... 15

        1.   Employees need not exercise unfettered or constant discretion and independent judgment to satisfy the administrative exemption.............. 15

        2.   Plaintiff exercises discretion and independent judgment consistent with the factors identified by the DOL and courts as satisfying the third prong of the administrative exemption........................................... 16

        3.   Plaintiff's discretion and independent judgment is exercised with respect to matters of significance........................................................... 23

IV.     CONCLUSION................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Blanchar v. Standard Ins. Co.*,
   736 F.3d 753 (7th Cir. 2013) ................................................................13

*Carlson v. C.H. Robinson Worldwide, Inc.*,
   Civ. No. 02-3780, 2005 U.S. Dist. LEXIS 5677 (D. Minn. Mar. 30, 2005) .....................10, 23

*Clarke v. JPMorgan Chase Bank, N.A.*,
   No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) .........................2

*Cruz v. Lawson Software, Inc.*,
   764 F. Supp. 2d 1050 (D. Minn. 2011) ...........................................................21

*Dannenbring v. Wynn Las Vegas, LLC*,
   No. 2:12-CV-00007 JCM, 2014 U.S. Dist. LEXIS 15587 (D. Nev. Feb. 7,
   2014) .................................................................................................14

*Dewalt v. Greencroft Goshen, Inc.*,
   902 F. Supp. 2d 1127 (N.D. Ind. 2012) ...........................................................10

*Feiler v. Hyatt Corp.*,
   No. 98-2863-CIV, 1999 U.S. Dist. LEXIS 23407 (S.D. Fla. Dec. 8, 1999) .....................10, 23

*Hines v. State Room, Inc.*,
   665 F.3d 235 (1st Cir. 2011) ................................................................13, 14, 24

*Jackson v. Alpharma, Inc.*,
   No. 07-3250 (GEB-DEA), 2010 U.S. Dist. LEXIS 72435 (D.N.J., July 19,
   2010) .................................................................................................23

*LaCourse v. GRS III LLC*,
   No. 05-73613, 2006 WL 3694623 (E.D. Mich. Dec. 13, 2006) .............................20

*Reich v. John Alden Life Ins. Co.*,
   126 F.3d 1 (1st Cir. 1997) ............................................................... *passim*

*Reiseck v. Universal Commc'ns of Miami, Inc.*,
   591 F.3d 101 (2d Cir. 2010) ....................................................................2, 9

*Robinson-Smith v. Gov't Emps. Ins. Co.*,
   590 F.3d 886 (D.C. Cir. 2010) ...................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Scott v. SSP Am., Inc.*,
   No. 09-CV-4399 (RRM) (VVP), 2011 WL 1204406 (E.D.N.Y. Mar. 29, 2011).....................3

*Spinden v. GS Roofing Prods. Co.*,
   94 F.3d 421 (8th Cir.1996) ...............................................................................................16

*Swartz v. Windstream Commc'ns, Inc.*,
   429 F. App'x 102 (3d Cir. 2011) .......................................................................................24

*Thompson v. Real Estate Mortgage Network, Inc.*,
   No. 11-CV-01494, 2011 WL 6935312 (D.N.J. Dec. 30, 2011)................................................2

*Viola v. Comprehensive Health Mgmt., Inc.*,
   441 F. App'x 660 (11th Cir. 2011) .....................................................................13, 19, 20

**Other Authorities**

29 C.F.R. § 541.200(a) (2013).........................................................................................2, 3, 9

29 C.F.R. § 541.201(b) (2013)............................................................................................10

29 C.F.R. § 541.202(a) (2013)...............................................................................15, 21, 23

29 C.F.R. § 541.202(b) (2013)............................................................................................17

29 C.F.R. § 541.202(c) (2013)............................................................................................15

29 C.F.R. § 541.203(b) (2013)............................................................................................11

29 C.F.R. § 541.700 (2013) ..................................................................................................5

69 Fed. Reg. 22122 (Apr. 23, 2004) ...........................................................................*passim*

Federal Rule of Civil Procedure 56 ..................................................................................1, 2

N.J. Admin. Code tit. 12, § 56-7.2 (2013) ........................................................................2, 3

N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2 ............................................................2, 3

Opinion Letter FLSA 2009–28 (Dep't of Labor Jan. 16, 2009) ..........................................11

Plaintiff Lisa LoCurto ("Plaintiff" or "LoCurto") asserts that her position with Defendant AT&T Mobility Services LLC ("AT&T") was misclassified as exempt and that she is due unpaid overtime pursuant to the federal Fair Labor Standards Act ("FLSA") and its New York and New Jersey state law equivalents.[1]  Her claims should be dismissed pursuant to Federal Rule of Civil Procedure 56 because Plaintiff's own deposition testimony – buttressed by that of other current and former employees in her same job title, National Retail Account Executive ("NRAE") – establishes that NRAEs have at all times been properly classified as exempt from overtime pursuant to the administrative exemption.  Indeed, AT&T recently prevailed on cross-motions for summary judgment in three related arbitration matters involving the same job, the same counsel, and the same undisputed facts.  The Arbitrator found that the NRAE position at issue here (and a similar, but distinct Retail Account Executive "RAE" position) was properly classified as exempt under the FLSA and New York and New Jersey state laws.  *See* Decision of Arbitrator Young, attached as Exhibit A to the Affirmation of Patrick W. Shea.  In this case, once summary judgment is entered for Defendant and Plaintiff's claims are dismissed with prejudice, the claims of the remaining 19 opt-in Plaintiffs would be dismissed without prejudice.

## I.    SUMMARY OF ARGUMENT

Under the FLSA, an employee is exempt from overtime pursuant to the administrative exemption where she: 1) is compensated on a salary basis not less than $455 per week; 2) her primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and 3) her primary duty includes the exercise of discretion and independent judgment with respect to

---

[1] AT&T Mobility is Plaintiff's employer and is one of the AT&T family of companies offering products and services to consumers under the trade name "AT&T."

matters of significance.  29 C.F.R. § 541.200(a) (2013).  Courts apply essentially the same analysis to the administrative exemption under New York and New Jersey law.  *See* N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2 ("[A]n employer shall pay employees [overtime wages] subject to the exemptions of Section 13 of the Fair Labor Standards Act … .); *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 105 (2d Cir. 2010); N.J. Admin. Code tit. 12, § 56-7.2 (2013); *Thompson v. Real Estate Mortgage Network, Inc.*, No. 11-CV-01494 (DMC-JAD), 2011 WL 6935312, at *2 (D.N.J. Dec. 30, 2011).

The undisputed facts demonstrate that Plaintiff's NRAE position meets the test for exempt status under the FLSA.  Plaintiff is compensated at the requisite salary level.  As a matter of law, this satisfies the first prong of the administrative exemption.  Plaintiff's own testimony confirms that her primary duty is promotional work – to develop and maintain supportive relationships with her assigned national retailers with the ultimate "objective to increase the sales of AT&T Mobility products and services".  As a matter of law, this satisfies the second prong of the test.  Plaintiff's testimony likewise confirms that in carrying out her primary duty, she exercises discretion and independent judgment with respect to matters of significance.  This satisfies the third prong of the administrative exemption.  Accordingly, judgment should be entered in Defendant's favor on Plaintiff's claims.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the filings, discovery, disclosures and testimony establish that there is no genuine issue as to any material fact, and that Defendant is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  In the FLSA context, it is well-established that summary judgment is appropriate where a plaintiff's own deposition testimony proves the plaintiff to be an exempt employee.  *See*, *e.g.*, *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400(CM)(DCF), 2010 WL 1379778, at *2 (S.D.N.Y. Mar. 26, 2010) (granting summary

judgment for employer where employee's own deposition testimony "clearly shows that his job duties place him within the FLSA's computer employee exemption"); *Scott v. SSP Am., Inc.*, No. 09-CV-4399 (RRM) (VVP), 2011 WL 1204406, at *10, 14 (E.D.N.Y. Mar. 29, 2011) (granting summary judgment for employer where "the undisputed evidence in the record and Plaintiff's own deposition testimony" showed that the plaintiff was an exempt employee).

## III.   LEGAL ARGUMENT

By itself, Plaintiff's deposition testimony establishes that she is properly classified as exempt from overtime under the administrative exemption in the FLSA and New Jersey and New York state laws because her position meets the qualifications for exemption under 29 C.F.R. § 541.200(a).  *See also* N.Y. Comp. Codes R. & Regs., tit. 12, § 142-3.2; N.J. Admin. Code tit. 12, § 56-7.2 (2013).  This conclusion is inescapable when evaluated in the context of her coworkers' testimony set forth in the Statement of Facts.  29 C.F.R. § 541.200(a).

### A.   Plaintiff's Position Meets the First Prong of the Administrative Exemption Because She Earns a Salary in Excess of $455 Per Week.

Under 29 C.F.R. § 541.200(a) (2013), an employee must earn a salary of at least $455 per week in order to qualify for the exemption.  There is no dispute that Plaintiff meets that prong of the test, as her base salary has been between $42,000 and $44,000 annually.  (December 9, 2013 Deposition of Lisa LoCurto ("LoCurto Dep.") 239, attached to the Affirmation of Patrick W. Shea as Exhibit B; *see also* SOF 13).

### B.   Plaintiff's Position Meets the Second Prong of the Administrative Exemption Because Her Primary Duty Is Marketing and Promotional Work Directly Related to AT&T's General Business Operations.

AT&T sells its products and services through a number of different channels.  One such channel is the indirect channel, which includes the "national retail" organization.  That organization distributes AT&T products and services via third-party owned retail stores located

3

throughout the country. Retailers who sell AT&T products and services via this channel include national outlets such as Staples, Radio Shack, Costco and Best Buy, as well as other smaller, more regional outlets. *See* Answer [Doc. 14]. Retailers typically sell the products and services of AT&T's competitors, as well as those of AT&T. AT&T employs NRAEs, assigned to a portfolio of retail stores (also called "doors") in a specific geographic territory, to effectively promote and market AT&T's products and services to the retailers, and to support the retailers in delivering excellent customer service to the retailer's customers on behalf of AT&T. *See* Answer [Doc. 14]. Within their assigned portfolio of retailers, each NRAE must determine where and how to spend her time to make the greatest impact. (SOF 4, 13). As Plaintiff described it, as an NRAE, you must understand which retail accounts are "your drainers, your sustainers, and where you're going to get the most bang for your buck" with your marketing efforts. (LoCurto Dep. 67; SOF 4, 13).

NRAEs' marketing, promotional and consultative duties include activities such as analyzing and comparing sales numbers and trends for their assigned accounts, strategizing with the retailers' management regarding ways to increase sales of AT&T products and services, creating and updating retail sales goals, customizing and providing training for sales associates to more effectively sell AT&T products and services and achieve customer satisfaction, tailoring incentives for individual retail sales staff to achieve greater results, and acting as the Company's liaison with retailers. (SOF 1-3, 5-10). Plaintiff is an experienced, long-time marketing professional, who obtained a bachelor's degree in marketing and worked as an account executive for one of AT&T's competitors for 8 years prior to her employment with AT&T, where she has been an account executive for 9 years. (SOF 15). As an NRAE, Plaintiff has received extensive training from AT&T on the Company's products and services, how to evaluate marketing and

promotional opportunities at her retailers, and strategies to offer to her assigned retailers to assist them with delivering excellent service to AT&T customers.  (SOF 4).

### 1.   Plaintiff admits her position provides marketing and promotion support to AT&T's retailers.

There is no factual dispute with respect to Plaintiff's primary duty as an NRAE.  *See* 29 C.F.R. § 541.700 (2013) ("The term 'primary duty' means the principal, main, major or most important duty that the employee performs.").  As Plaintiff explained, her "primary duty is to develop and maintain supportive relationships with [her accounts]" with the ultimate "objective to increase the sales of AT&T Mobility products and services."  (LoCurto Dep. 16, 20; *see also* testimony of NRAEs Eudora Brooks, Nikki Amari, Juan Figuereo and Alejandro Reyes, as described in SOF 1, attached to the Affirmation of Patrick W. Shea as Exhibits C, D, E, and F, respectively).  Plaintiff's primary duty of marketing and promoting AT&T products and services is accomplished in several different ways, including the following:

- **Plaintiff builds relationships with retail management and sales associates to enable her to incentivize and influence retailers to promote and sell AT&T's products over those of its competitors.** See SOF 2, 9.

Plaintiff concedes that she "[w]ork[s] with [store management and wireless sales personnel] with the common goal of selling AT&T."  (LoCurto Dep. 32).  With respect to the retail managers with whom she works, Plaintiff finds that because "[e]veryone is different and they're treated as individuals," you have to "get to know them and understand their different personality and figure out how best to acclimate to that."  (LoCurto Dep. 130).  Plaintiff agrees that "ultimately, [it is her] objective to increase the sales of AT&T Mobility products and services" through her relationship-building. (LoCurto Dep. 20).

Plaintiff recognizes the importance of also "establishing relationships with the store associates" at her retail accounts.  (LoCurto Dep. 13).  Plaintiff believes that local relationships

are the key to success as an NRAE.  (LoCurto Dep. 122).  Her regular conversations with store

associates "range from how's your family doing to what's currently going on with AT&T, to

things that, you know, our rolling out new products, anything that I could do to help them."

(LoCurto Dep. 18-20).  As Plaintiff explains, "[i]t's really the likeability factor[.]  If they like

you.  They'll work with you a little bit more." (LoCurto Dep. 20).

- **Plaintiff analyzes sales metrics and business reports from her retail accounts for trending, communicates findings to retail management, discusses objectives and goals, determines areas of focus, and makes recommendations on retailer operations and personnel management to stimulate AT&T sales at her retailers, including by preparing individualized business plans for each retailer.**  See SOF 7.

Plaintiff meets with retail store management to discuss business objectives; "I support

them. I work with them to try to reach their objectives." (LoCurto Dep. 44).  Plaintiff makes this

a focus, because she finds that helping store management "increase their numbers increases [her]

numbers" as well.  (LoCurto Dep. 48).

Before each store visit, Plaintiff "take[s] an hour to two hours to review the numbers and

then compile information that might be helpful" to the retail staff, plus another five minutes to

refresh herself right before she walks in the store.  (LoCurto Dep. 78-79).  This preparation

includes "look[ing] at the store's numbers of where they currently are trending," and "read[ing]

MyCSP to see what is current and what the message that needs to be delivered to the stores are

[sic]." (LoCurto Dep. 62).  Plaintiff analyzes daily sales reports and whiteboard reports for

trending and communicates those findings to local retail store management to assist them in

"determin[ing] areas of focus."  (LoCurto 49-50).

Plaintiff also spends one-and-a-half to two hours preparing a business plan for each of her

accounts one or two times per year.  (LoCurto Dep. 199).  Plaintiff is expected, in creating each

business plan, to do a trend analysis that discusses any trends in the numbers and the key drivers

of those trends, to include a merchandising and marketing review, to provide an assessment of

the [retailer's] strengths and opportunities for improvement within the location, to describe major

action items implemented during the prior six-month period, to identify key opportunities for the

next period of time, to identify key store objectives, and to come up with an overall

recommendation on how the objectives from both the store and from AT&T could be achieved.

(LoCurto Dep. 204-07).

- **Plaintiff assesses training needs at her retailers and provides customized training for each retailer's employees on AT&T's products and services, the plans and offerings of AT&T's competitors, and how to provide a positive customer experience, including using interactive training techniques such as role-playing, side-by-side training, mentoring, observation and coaching.** See SOF 3-6.

Plaintiff lists "training of the associates in the store" as one of her responsibilities that she

"find[s] most important" in her job as an NRAE.  (LoCurto Dep. 13).  Plaintiff "train[s] the

[retail] employees" and "give[s] them knowledge" of AT&T's products and services in order to

get their buy-in in favor of AT&T over its competitors.  (LoCurto Dep. 26-27).   One way she

gains this mindshare is by "talk[ing] about the benefits of AT&T" to retail sales associates.

(LoCurto Dep. 24).  As a result, the retail sales associates in Plaintiff's accounts regularly call

Plaintiff "if they have a question and they are unsure about something that they're selling."

(LoCurto Dep. 26).

Plaintiff also uses training to make sales associates more comfortable selling AT&T.

(LoCurto Dep. 122).  Plaintiff acknowledges that, to that end, she "[c]onducts role plays and

mentors sales associates to ensure offers and/or promotions initiated by [her retail accounts] are

flawlessly executed."  (LoCurto Dep. 32).  "Role playing" is "when you simulate with a [retail

sales] associate how they would sell to a customer."  (LoCurto Dep. 33).  Plaintiff also trains

retail sales associates by "observing them sell and critiquing them after their sale," which is

called side-by-side training. (LoCurto Dep. 33).  Plaintiff is encouraged to engage in side-by-side

training, but she makes no sales herself; "I observe the sellers while they're selling.  I am

standing near them, but I don't intervene in their sales."  (LoCurto Dep. 103).  If she observes

during a sale that a retail sales associate is not particularly well-versed in a particular AT&T

product or service, then after the customer interaction is completed, Plaintiff tries to arrange an

opportunity to provide additional training to that associate.  (LoCurto Dep. 52).

- **Plaintiff works with national retailers to motivate and incentivize retail sales associates to promote and market AT&T's products and services, to help retailers deliver excellent customer service to retail customers on behalf of AT&T, and ultimately to increase AT&T's sales at those retailers.**  See SOF 1, 9.

One way that Plaintiff gains the "buy-in" of retail sales associates in favor of AT&T over

its competitors is by "giving them the benefits of AT&T" so that they will switch their personal

cell phone to AT&T service.  (LoCurto Dep. 29).  In Plaintiff's view, having the retail sales

associates use AT&T service on their personal cell phone "gives a slight advantage to AT&T"

because "if they're using the service, they're more familiar with the service" and thus better able

to favorably describe the service to their customers and answer customer questions accurately.

(LoCurto Dep. 30).

Another way that Plaintiff can incentivize increased sales is through contests and

promotions.  Plaintiff's AT&T supervisor instructed Plaintiff and her fellow NRAEs to "come up

with one or two contests to drive [increases in a particular category of sales] in a group of

RadioShack's or Best Buy's or Costco's" and informed them that AT&T would approve

expenses for the contest prize.  (LoCurto Dep. 148-49).  At her Best Buy account, Plaintiff

"offered a contest offering rewards for most lines added, most new activations added to an

account.  I put together e-mails that I've sent out to the sales team offering a contest. … I asked

the [Best Buy] wireless manager if it would be okay. … The prize was a gift card. … The

denomination changed a few times.  It started out as – it started out actually as a pizza, and then

it was a pizza and an ice cream cake, and then it was, I believe, a $25 gift card.  And then there

was a $100 gift card offer."  (LoCurto Dep. 113-115).  Although Best Buy had strict guidelines

that the dollar amount of give-aways could not exceed $25, Plaintiff was able to negotiate to

exceed that guideline.  Specifically, Plaintiff "got approval from the [Best Buy] general manager

and from the management at AT&T" for larger prizes.  (LoCurto Dep. 115).

> ### 2.    Plaintiff's primary duty is the performance of non-manual work directly related to the general business operations of AT&T.

>> #### a.    *Plaintiff is not a salesperson; she is a marketer and sales promoter.*

Based on the above evidence, there can be no dispute that Plaintiff's primary duty of

providing marketing and promotional support and advice to retailers in order to increase AT&T

sales generally constitutes "the performance of office or non-manual work directly related to the

management or general business operations of the employer or the employer's customers," as a

matter of law.  29 C.F.R. § 541.200(a).  As the Second Circuit has explained, "an employee

making specific sales to individual customers is a salesperson for the purposes of the FLSA,

while an employee encouraging an increase in sales generally among all customers is an

administrative employee for the purposes of the FLSA." *Reiseck v. Universal Commc'ns of*

*Miami, Inc.*, 591 F.3d 101, 107 (2d Cir. 2010).  Plaintiff does not sell a product in a retail

establishment.  The actual selling falls to the employees of the national retailer that Plaintiff

supports.  (LoCurto Dep. 103 ("I observe the sellers while they are selling.  I am standing near

them, but I don't intervene in their sales."); SOF 5).

Consistent with the guidance in *Reiseck*, courts have regularly found the activities in which Plaintiff engages to be administratively exempt marketing and promotional duties, not sales. *See, e.g.*, *Carlson v. C.H. Robinson Worldwide, Inc.*, Civ. No. 02-3780 (JNE/JGL), 2005 U.S. Dist. LEXIS 5677, at *1 (D. Minn. Mar. 30, 2005) (advising sales employees as to the best methods for logistics and recommending solutions for their needs is exempt administrative work); *Feiler v. Hyatt Corp.*, No. 98-2863-CIV, 1999 U.S. Dist. LEXIS 23407, at *25 (S.D. Fla. Dec. 8, 1999) (promoting and marketing a company in a territory "to further[ ] the company's overall sales effort" as opposed to "the ordinary day-in-day-out selling activity directed at making distinct sales" is exempt work); *Dewalt v. Greencroft Goshen, Inc.*, 902 F. Supp. 2d 1127, 1136 (N.D. Ind. 2012) (employee was engaged in marketing, not sales, because even though the extended nature of her relationship with specific prospective customers "may have facilitated individual sales, they also promoted [the company's] product to the public").

The Department of Labor's ("DOL") Regulations relating to the administrative exemption confirm that Plaintiff's marketing duties fall within the administrative exemption. The Regulations include an illustrative, non-exhaustive list of functional areas that are typically administrative in nature, which specifically includes marketing and "similar activities":

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; **marketing**; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b) (2013) (emphasis supplied). The Regulations also include several examples of particular positions and duties that meet the administrative exemption, including the following example drawn from the financial services industry, which demonstrates that

10

employees with strikingly similar duties to those performed by NRAEs, who work outside of "marketing departments," are administratively exempt:

> [Employees are administratively exempt whose primary duty consists of] work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products.

29 C.F.R. § 541.203(b) (2013).

As if the plain language of the regulations were not enough, the DOL has made it clear in its regulatory Preamble and Opinion Letters that the type of promotional activities in which Plaintiff engaged fall under the administrative exemption. The DOL has specifically advised that activities "in promotion and business development activities, including the marketing, servicing, and promoting of the [employer's] ... products" fall squarely within the administrative exemption. *See* Opinion Letter FLSA 2009–28 (Dep't of Labor Jan. 16, 2009). Moreover, the DOL made clear in the Preamble to the most recent revisions to the regulations that marketing and promotion work identical to the work undertaken by NRAEs is exempt administrative work, consistent with the holdings of numerous courts interpreting the prior version of the regulations. *See* 69 Fed. Reg. 22122, 22145 (Apr. 23, 2004).

### b.    *The DOL and courts have deemed similar marketing and sales promotions positions to be administratively exempt.*

In a case predating the DOL's revisions to the regulations, the First Circuit affirmed the finding that insurance marketing representatives performing duties very similar to NRAEs were exempt administrative employees. *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 3 (1st Cir. 1997). As with NRAEs, the insurance marketing representatives did not sell insurance to the end customers. *Id.* Rather, John Alden (the insurance company) sold its products through licensed

11

independent insurance agents – just as AT&T sells its services through national retailers in its
indirect sales channel.  *Id*.  The insurance agents could recommend the products of any one of a
number of insurance carriers to the end-user clients, just as retail sales associates in national
retail stores such as Best Buy, RadioShack, Target and Sam's Club may recommend the services
of AT&T or any of its competitors.  *Id*.  Thus, the primary duty of insurance marketing
representatives was found to be cultivating relationships with the independent insurance agents,
in order ultimately to increase sales of their employer's insurance products.  *Id*.  Plaintiff
described her primary duty just the same way.  *See* SOF 1, 2.  In furtherance of their primary
duty, John Alden's insurance marketing representatives were "responsible for keeping [their]
insurance agents up to date on all aspects of the [insurance carrier's] product line," including
new products and price changes.  *John Alden*, 126 F.3d at 4.  Plaintiff performs the same role in
keeping the retail sales associates at her assigned accounts up to date on AT&T's offerings and
promotions.  (*See* SOF 1-5).  John Alden's marketing representatives also discussed with the
insurance agents how the insurer's products might meet the needs of the agent's current or
prospective customers, and advised agents on how best to market the insurer's products against
competing products.  *John Alden*, 126 F.3d at 4.  Plaintiff likewise uses training opportunities
such as role-playing and side-by-side training to ensure that retail sales associates know how to
make targeted sales pitches to retail customers.  (*See* SOF 4-6, 9).   These day-to-day activities
"are more in the nature of 'representing the company' and 'promoting sales,'" both of which are
examples of exempt administrative work under the regulations.  *See John Alden*, 126 F.3d at 10.

     The DOL specifically endorsed the *John Alden* decision in the Preamble to the revised
regulations it issued in 2004.  *See* 69 Fed. Reg. at 22145.  Accordingly, the *John Alden* decision,
which is directly on point, is dispositive of Plaintiff's claims.  Moreover, after the

implementation of the new regulations, courts have consistently found that the type of work performed by the John Alden marketing representatives and by Plaintiff is exempt administrative work.

For instance, promoting the sales of special retirement plans for an insurance company met the administrative exemption where those duties included training staff about the special retirement plans, explaining their differences from other existing retirement plans, "doing what was needed to make [the company's] product competitive," and where one of the employee's "key goals" was "representing [the company] in the marketplace as the product manager and expert" on the products. *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 755, 757 (7th Cir. 2013) (finding that the duties of the marketing representatives in *John Alden* bore "a striking resemblance" to plaintiff's duties). In *Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 662-63 (11th Cir. 2011), the court concluded that a community event coordinator's marketing and promotions work on behalf of a health insurance company – including calling on physicians for the purpose of promoting her employer's insurance policies, scheduling and hosting promotional events, and developing marketing strategies for her employer – fell under the administrative exemption.

The First Circuit found that sales managers for a banquet facility satisfied the primary duty prong of the administrative exemption through their marketing and promotion activity where "the primary role of sales managers was to secure a steady stream of business by selling each prospective client on a package of options … and by ensuring that each event so planned was a success." *Hines v. State Room, Inc.*, 665 F.3d 235, 237, 242 (1st Cir. 2011). The sales managers also "developed relationships" with clients in order to "encourage repeat business." *Id.* at 238. "In so doing, the sales manager secured clients one at a time, but also worked to

13

maintain and enhance the reputation of their venues as a desirable location for custom, high-end events for private and nonprofit clients." *Id*. The *Hines* court agreed that the second prong of the administrative exemption was met, specifically relying on the *John Alden* decision in determining that marketing and promotion work "to establish long-term relationships, to keep clients happy and to maintain the overall reputation of their employers" is exempt administrative work. *Hines*, 665 F.3d at 242-43.

Similarly, in *Dannenbring v. Wynn Las Vegas, LLC*, No. 2:12-CV-00007 JCM (VCF), 2014 U.S. Dist. LEXIS 15587, at *20-21 (D. Nev. Feb. 7, 2014), the court found that a casino's "executive slot marketing host" was an exempt administrative employee where her duties "involved promoting certain activities at defendant's gaming resort and persuading customers to spend money on defendant's 'products." The court reasoned that "[i]n the context of a gaming resort, these activities certainly constitute 'marketing.' Because marketing is among the activities specifically listed in 29 C.F.R. § 541.201, the court finds that plaintiff's primary duties were related to defendant's general business operations." *Id*.

In light of this controlling case law, there can be no doubt that Plaintiff's primary marketing and promotional duty satisfies the second prong of the administrative exemption test. As Arbitrator Young found in granting summary disposition to Defendant as to the arbitration claims of three current and former NRAEs:

> [The NRAEs] do not focus their efforts on individual customers and do not sell AT&T products and services directly to individual customers. Rather … [they] promote sales of AT&T products generally by training each Door's sales representatives to become more successful at selling AT&T products and services and by engaging in other efforts to supports the sales representatives and the Doors' management. … I further conclude that promotional work of [NRAEs], however characterized, relates to the general business operations of AT&T.

*See* Arbitrator's Decision, Exhibit A, p. 7.

14

For all of these reasons, Plaintiff's position is clearly one that relates to the general business operations of the Company, and the second prong of the exemption test is satisfied.

      C.      **Plaintiff's Position Meets the Third Prong of the Exemption Because Her Primary Duty Includes the Exercise of Discretion and Independent Judgment With Respect To Matters of Significance.**

           1.      <u>**Employees need not exercise unfettered or constant discretion and independent judgment to satisfy the administrative exemption.**</u>

The remaining issue – whether Plaintiff's primary duty of working with her national retail accounts in order to increase AT&T sales includes the exercise of discretion and independent judgment with regard to matters of significance – must also be answered in the affirmative based on the undisputed facts and Plaintiff's deposition testimony.  The DOL regulations describe discretion and independent judgment as "involv[ing] the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a) (2013).  An employee who exercises discretion and independent judgment generally "has authority to make an independent choice, free from immediate direction or supervision" even if her decision does not "have a finality that goes with unlimited authority and a complete absence of review."  29 C.F.R. § 541.202(c) (2013); *see also John Alden*, 126 F.3d at 14 ("[T]o the extent that the marketing representatives receive guidance about products to emphasize and suggested points to make with agents, they nonetheless exercise discretion in applying this instruction-- for instance, in determining which agent may have an interest in [a particular] product, or in fashioning bid proposals that meet the needs of the agent's customers.").  As the DOL was careful to point out in the Preamble to the 2004 regulations, an exempt administrative employee's primary duty need only "include" the exercise of discretion and independent judgment.  69 Fed. Reg. at 22143.  The regulations do not specify how frequently discretion need be exercised.  Id.; *see also Robinson-Smith v. Gov't*

*Emps. Ins. Co.*, 590 F.3d 886, 894 (D.C. Cir. 2010) (engaging in negotiations "even 20 times per year" satisfies the requirement administrative employee's primary duty "include" the exercise of discretion and independent judgment); *Spinden v. GS Roofing Prods. Co.*, 94 F.3d 421, 427 (8th Cir.1996) ("accept[ing] the district court's finding that only 10 to 20 percent of Spinden's duties involved discretion," but "reject[ing] as clearly erroneous its finding that administration was not Spinden's primary duty").

> **2.    Plaintiff exercises discretion and independent judgment consistent with the factors identified by the DOL and courts as satisfying the third prong of the administrative exemption.**

The FLSA regulations contain the following non-exclusive list of ten factors to consider when determining whether an employee satisfies the discretion and independent judgment prong of the administrative exemption:

- Whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

- Whether the employee carries out major assignments in conducting the operations of the business;

- Whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

- Whether the employee has authority to commit the employer in matters that have significant financial impact;

- Whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

- Whether the employee has authority to negotiate and bind the company on significant matters;

- Whether the employee provides consultation or expert advice to management;

- Whether the employee is involved in planning long- or short-term business objectives;

- Whether the employee investigates and resolves matters of significance on behalf of management; and

- Whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b) (2013).  In the Preamble to the 2004 revised regulations, the DOL specified that, consistent with federal case law, generally "employees who meet at least two or three of these factors are exercising discretion and independent judgment, although a case-by-case analysis is required."  69 Fed. Reg. at 22143.

As discussed in more detail below, Plaintiff meets at least four of these factors: 1) implementing management operating practices (SOF 10); 2) work that affects business operations to a substantial degree (SOF 1, 7-10, 14); 3) consultation or expert advice to retail management (SOF 1, 2, 7, 10); and 4) planning long- or short-term business objectives.  (SOF 1, 6, 7, 9).

The Preamble lists an additional dozen factors that courts have found to be relevant to the discretion and independent judgment prong, which include the following eight factors applicable to Plaintiff's duties:

1) freedom from direct supervision (SOF 11-12);

2) troubleshooting or problem-solving activities on behalf of management (SOF 10);

3) use of personalized communication techniques (SOF 2, 3, 5, 6, 9);

4) authority to handle atypical or unusual situations (SOF 5, 7- 10);

5) responsibility for assessing customer needs (SOF 1, 3, 5, 6, 7, 10);

6) functioning as the primary contact to public or customers on behalf of the employer – in this case, the primary contact between the employer AT&T and the national retailer (SOF 1, 2, 5-9);

7) the duty to anticipate competitive products or services and distinguish them from competitor's products or services (SOF 3-5, 8); and

8) advertising or promotion work (SOF 1- 3, 5- 9).  69 Fed. Reg. at 22144.

Plaintiff exercises more than enough discretion and independent judgment to satisfy the third prong of the administrative exemption under both the DOL factors described in the Preamble, and the analysis conducted by courts considering the exemption.  Specifically, Plaintiff admitted at her deposition that she exercises discretion and independent judgment with regard to the following matters of significance, which satisfy the factors described above:

- **Plaintiff spends the vast majority of her time working in the field without direct supervision, conducting store visits at her retailers where she has determined her work will have the most impact, and deciding how to promote AT&T services based on her evaluation of the needs of the location.** (SOF 11-12).

Plaintiff visits anywhere from five to 19 stores per week, with visits ranging from 15 minutes to 5 hours.  (LoCurto Dep. 60, 97).  Plaintiff is unaccompanied by her AT&T supervisor except one or two visits per month.  (LoCurto Dep. 140-41).  Plaintiff determines where it would be most effective for her to spend her time by evaluating which of her accounts are "your drainers, your sustainers, and where you're going to get the most bang for your buck."  (LoCurto Dep. 67).  Plaintiff makes her own store visit schedule based on "which stores need more attention," choosing to focus on stores whose "numbers are trending very low" as well as on the higher-volume stores, which have more capacity to change the overall sales performance of her account portfolio.  (LoCurto Dep. 64-65).  Even once Plaintiff has set a schedule, "[i]f a store is not performing to where they could be performing, then I'll go in to revisit or visit them, whether it's on the schedule or not on the schedule, just to try to motivate."  (LoCurto Dep. 70). In addition, Plaintiff can unilaterally change her store visit schedule if something personal comes up that she needs to take care of.  (LoCurto Dep. 74).  Each of Plaintiff's store visits varies a lot, depending on the needs of a particular store.  (LoCurto Dep. 98).

18

Plaintiff's freedom from direct supervision as she works in the field is an important factor reflecting her exercise of discretion and independent judgment.  *See Preamble*, 69 Fed. Reg. at 22144; *Viola*, 441 Fed. App'x at 662-63 (plaintiff's marketing and promotions work included the exercise of discretion and independent judgment where she worked without direct supervision 75% of the time and set her own schedule).

- **Plaintiff analyzes sales metrics and business reports from her retail accounts for trending, communicates her findings to retail management, discusses objectives and goals, determines areas of focus, and makes recommendations about retailer operations and personnel management to stimulate AT&T sales at her retailers, including by preparing individualized business plans for each retailer.**  (SOF 7, 8).

Each day Plaintiff analyzes sales reports for trends at her retail accounts, and communicates her findings and observations to the retail store management to assist them in "determin[ing] areas of focus."  (LoCurto Dep. 49-50).  If a store is not performing well, "[I]'ll go in and say what's going on with you guys, why aren't you performing, and what can we do to turn this around and try to work with them to devise a game plan that will maybe motivate them."  (LoCurto Dep. 70).  For instance, based on her analysis, Plaintiff may determine that a retailer "might need to focus on selling MiFi devices, selling tablets, increasing their overall revenue if it's low."  (LoCurto Dep. 49-50).  On the other hand, "[i]f they're not low, [then I focus on] giving them a pat on the back and telling them they're doing a great job."  (Id.).  Plaintiff constructs sales goals for her accounts by "look[ing] at where they're performing currently and then you want to give them an increase, usually depending on the month."  (LoCurto Dep. 202).  Plaintiff also provides feedback on retail sales associate performance to retail management; "If somebody was excelling, I would give credit.  And if somebody was struggling to learn, I would make the manager aware." (LoCurto Dep. 156).

These tasks include the exercise of discretion and independent judgment under the administrative exemption. *See Viola*, 441 Fed. App'x at 662-63 (plaintiff's marketing and promotions work included the exercise of discretion and independent judgment where she was required to "analyze her market" and "create a strategy to promote [her employer's] brand and image," and selected where to hold marketing and promotional events).

- **Plaintiff uses her judgment in tailoring the training portion of her store visits to have the greatest impact on sales.** (SOF 3-6).

Plaintiff determines which of the available training topics she will cover on a particular day with a particular retail sales associate, depending on what she thinks will most help promote sales at the store. (LoCurto Dep. 37-38). Plaintiff also tailors retail associate training to respond to what she has observed during her store visits. For instance, if she observes a retail sales associate conducting a sale who is not particularly familiar with a particular AT&T product or service, she provides additional training to that associate. (LoCurto Dep. 52). If Plaintiff identifies that a retail sales associate is slow to grasp the training she is providing, Plaintiff "customiz[es] to their ability to learn." (LoCurto Dep. 35).

Plaintiff also rejects training methods and materials that she deems ineffective. For instance, Plaintiff stopped going to any monthly meetings at her Best Buy locations to provide information about new promotions or provide training, because "I train one on one with my sellers. And after being here for many years, I found that it was most effective." (LoCurto Dep. 112). Similarly, Plaintiff has refused to use particular AT&T-provided training materials with which she disagrees at any of her accounts where, in her opinion, using the document "could possibly damage the relationship with the store." (LoCurto Dep. 143-46).

This type of discretion satisfies the third prong of the administrative exemption. *See, e.g., LaCourse v. GRS III LLC,* No. 05-73613, 2006 WL 3694623, at *20 (E.D. Mich. Dec. 13,

2006) (plant training consultant used discretion and independent judgment to modify as

necessary existing training course materials to respond to individual plant needs; consultant also

exercised discretion by making training recommendations for the plants, even though those

suggestions were subject to approval by a supervisor); *Cruz v. Lawson Software, Inc.*, 764 F.

Supp. 2d. 1050, 1067 (D. Minn. 2011) (software consultants who advise their employer's clients

are essentially "problem-solvers for the clients"; their use of independent judgment in how to

train and address the client's needs and problems qualifies for the administrative exemption).

- **Plaintiff uses her judgment to determine how best to motivate and incentivize store sales associates to sell AT&T's products and services over those of competitors, including by understanding the mindset of the retail sales staff.** (SOF 1, 2, 9).

Plaintiff works with retail staff to increase sales "by gaining the buy-in of the store

associates" in favor of AT&T products over products of the Company's competitors by

"talk[ing] about the benefits of AT&T" and making herself available to her accounts on the

"magnitude of occasions that they would need [her]." (LoCurto Dep. 23-26). Plaintiff, however,

must vary her approach with retail management. "Some of the store managers have been around

a little bit longer … and they're a little bit tougher to reach, where the store associates are, you

know, there's a constant turnover in what we do; so, store associates are fresh and a little bit

more open to those conversations." (LoCurto Dep. 20). Plaintiff has determined that one way to

motivate sales staff is through sales contests, and she works with retail management to gain the

necessary approval for the contests, even negotiating with retail management to permit her to

offer a prize above the typical limits set by Best Buy. (LoCurto Dep. 113-115).

Selecting from a wide array of potential motivational methods is a classic example of

"compar[ing] and … evaluat[ing] … possible courses of conduct, and acting or making a

decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). There is

not a per se right or wrong way to motivate retail sales associates; rather, Plaintiff uses her

extensive marketing experience and her personal evaluation of each sales associate to determine

an appropriate course of action.

- **Plaintiff exercises discretion and independent judgment in resolving various customer and store issues for her retailers.** (SOF 10).

Plaintiff concedes that she "serves as a liaison between the retailer store and [the]

Company to identify and resolve issues" with both sales associates and store managers.

(LoCurto Dep. 52-54).  Retail sales associates contact Plaintiff for a "magnitude of reasons,"

including "if they're having an issue with a customer that they can't figure out."  (LoCurto Dep.

26).  Plaintiff also assists her accounts "[i]f they're having issues contacting credit and

activations" to complete a customer sale, or if there is an outage with one of AT&T's systems

that they need help resolving.  (Id.).   Plaintiff could be called upon to address any sort of issue

with her retailer, and is required to use her independent judgment and knowledge of the retailer's

business to suggest an appropriate solution.

 Indeed, the marketing representatives in *John Alden* were found to exercise discretion

and independent judgment in regard to matters of significance for their execution of duties

markedly similar to Plaintiff's job duties:

> It is undisputed that these employees have discretion in choosing which agents to
> contact on any given day, and concerning which products to discuss with each
> agent.  In addition, the marketing representatives rely on their own knowledge of
> an agent's business to help tailor proposals for the agent's end-customers.
> Further, they must be able to anticipate the competing products that the agent's
> customers might be considering, and distinguish John Alden's offerings from
> those of competitors.

*John Alden*, 126 F.3d at 13.  Considering Plaintiff's job duties as a whole, it is evident that she

meets this prong of the administrative exemption.

3.      **Plaintiff's discretion and independent judgment is exercised with
respect to matters of significance.**

To satisfy the third prong of the administrative exemption, an employee's discretion and

judgment must be exercised with respect to "matters of significance," which "refers to the level

of importance or consequence of the work performed."  29 C.F.R. § 541.202(a).  The law is clear

that marketing and promotional activities are of substantial importance to business operations.

*See John Alden*, 126 F.3d at 10-11 (marketing representatives were engaged in work that 'affects

business operations to a substantial degree'" because "the work of the marketing representatives

is critically important to John Alden's business"); *Carlson*, 2005 U.S. Dist. LEXIS 5677, at *42

(work of transportation sales representatives affects general business operations as to their

segment of the company's customers); *Feiler*, 1999 U.S. Dist. LEXIS 23407, at *26-27 (sales

managers' promotional work at a single hotel location affects international hotel chain's business

to a substantial degree); *Jackson v. Alpharma, Inc.*, No. 07-3250 (GEB-DEA), 2010 U.S. Dist.

LEXIS 72435, at *13 (D.N.J., July 19, 2010) (promotional work of pharmaceuticals sales

representatives "for advancing the sales of their products within their territories 'affects business

operations to a substantial degree'").  All of Plaintiff's promotional efforts with respect to her

portfolio of accounts similarly affect the business operations of AT&T to a substantial degree.

(SOF 7, 8).

Exercising discretion and judgment in promoting the company's products by determining

"which agent would be in the best position to sell a given product, and which products would be

most attractive to a given customer" relates to matters of significance.  *John Alden*, 126 F.3d at

13.  This is just the sort of discretion Plaintiff exercised in tailoring her marketing and promotion

efforts to particular retail sales associates and the customers they served by communicating

effectively AT&T's message to a specific audience and addressing particular concerns of sales

associates and their end customers.  (SOF 5, 6, 7, 9, 12).  In *Hines*, the First Circuit found that

the at-issue employees were "integral to the functioning of the employers' businesses," and their

exercise of judgment and discretion related to matters of significance because, as with the

NRAEs, the employees "were the face of the businesses to prospective clients, and the judgment

that they exercised concerned how best to represent the employers and to develop a proposal that

would attract the prospective clients to a contract with the venues."  *Hines*, 665 F.3d at 246.

Similarly, the Third Circuit found in *Swartz v. Windstream Commc'ns, Inc.*, 429 F. App'x 102,

105 (3d Cir. 2011), that employees exercised discretion and judgment with regard to matters of

significance where the employer's "customer base was varied," "[e]ach customer's needs varied

with the nature of its business," and "it fell to employees such as [the plaintiff] to assess these

unique needs" and to design solutions by selecting from among the employer's product portfolio

"to find the right combination of products at a price the customer was willing to pay."  Plaintiff

concedes that she determines how to structure her marketing and promotional efforts, and where

to place her focus, based on her own analysis of the impact she can have on the overall sales

performance of each retailer.  (SOF 11-12).  This is quintessential discretion and independent

judgment of substantial importance to business operations.  This is the essence of the job for

which NRAEs are hired by AT&T.  As Arbitrator Young found in determining that NRAEs'

discretion and independent judgment satisfies the third prong of the administrative exemption:

> [The NRAEs'] work involves matters of significance.  As the liaison between AT&T and the independent retailers, [the NRAEs] implement AT&T sales promotion and marketing practices on behalf of the Company in an effort to increase sales of AT&T products and services.

*See* Arbitrator's Decision, Exhibit A, p. 11.

As a practical matter, it is clear that Plaintiff's marketing and promotional duties where

she exercises discretion are "matters of significance" because Plaintiff's performance had a

direct impact on AT&T's sales.  Plaintiff's relationships with store management and sales associates caused her assigned retailers to promote AT&T products over the Company's competitors, leading to increased sales.  (SOF 1, 2, 9).  Although not dispositive, the significance of the discretion and independent judgment NRAEs exercise in increasing sales is recognized by AT&T's compensation plan for NRAEs, a portion of which is "at-risk" compensation that specifically compensates Plaintiff based on the volume of sales by her retailers.  (SOF 13, 14 (Plaintiff makes approximately $20,000 of her $62,000-$64,000 total annual compensation via commissions)).

IV.   **CONCLUSION**

As established by Plaintiff's own testimony, she is compensated by AT&T on a salary basis not less than $455 per week, her primary duty is the performance of office or non-manual marketing and promotional work directly related to the management or general business operations of AT&T and its retail accounts; and her primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  As such, Plaintiff is unquestionably exempt from overtime requirements under the administrative exemption of the FLSA and New York and New Jersey state law.  Summary judgment should be awarded in favor of Defendant.

Dated: October 20, 2015

Respectfully submitted,

PAUL HASTINGS LLP

By:


_____/s/ Patrick W. Shea_____
Patrick W. Shea, Esq.
Paul Hastings LLP
75 East 55th Street
New York, NY 10022

Erika L. Leonard, Esq.
Paul Hastings LLP
1170 Peachtree, Street, N.E., Suite 100
Atlanta, GA  30309

ATTORNEYS FOR DEFENDANT
AT&T MOBILITY SERVICES, LLC