PATRICK W. SHEA
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
patrickshea@paulhastings.com
(212) 318-6000 (telephone)
(212) 319-4090 (facsimile)

*Attorneys for Defendant*
AT&T Mobility Services LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LISA LOCURTO, *on behalf of herself and all others similarly situated*,

               Plaintiff,

        -against-

AT&T MOBILITY SERVICES LLC,

              Defendant.

No. 13 Civ. 04303 (AT)(KNF)

---

## DEFENDANT AT&T MOBILITY SERVICES LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO THE CLAIMS OF OPT-IN PLAINTIFF ANTHONY RENZI

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

    A.    In Connection with the Termination of His Employment at AT&T, and in Exchange for Substantial Severance Benefits, Renzi Signed a General Release and Waiver and Agreed Not to Participate in Any Class or Collective Action Against the Company. ............................................................... 2

    B.    Although Renzi Consented to Join This Action Before the Termination of His Employment at AT&T, He Did Not Request That AT&T Exclude His Claims in This Action from the Scope of the Waiver........................................... 4

III.  RENZI WAIVED HIS RIGHT TO PARTICIPATE IN THIS ACTION......................... 4

    A.    Renzi's Electronic Signature of the Waiver is Valid and Enforceable................. 4

    B.    The Waiver Is Valid and Enforceable Under Pennsylvania Law. ........................ 5

    C.    The Right to Proceed Collectively Under the FLSA Is Waivable. ....................... 6

    D.    Direct Communications Between AT&T and Renzi in the Ordinary Course of Business Are Proper, and AT&T Explicitly Encouraged Renzi to Seek Legal Advice Before Signing the Waiver in Exchange for Severance Benefits........................................................................................... 7

IV.   CONCLUSION............................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benedict v. Hewlett-Packard Co.*,
    No. 13-cv-00119-BLF, 2016 U.S. Dist. LEXIS 42810 (N.D. Cal. Mar. 29, 2016)..................8

*Birdsong v. AT&T Corp.*,
    No. C12-6175 TEH, 2013 U.S. Dist. LEXIS 37272 (N.D. Cal. Mar. 18, 2013) ......................7

*Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.*,
    209 F.3d 273 (3d Cir. 2000)....................................................................................................5

*Brown v. Sears Holdings Mgmt. Corp.*,
    No. 09 C 2203, 2009 WL 2514173 (N.D. Ill. Aug. 17, 2009)..................................................7

*Christensen v. Kiewit-Murdock Inv. Corp.*,
    815 F.2d 206 (2d Cir. 1987)....................................................................................................8

*Copello v. Boehringer Ingelheim Pharm., Inc.*,
    812 F. Supp. 2d 886 (N.D. Ill. 2011) .....................................................................................7

*Griffin v. Aldi, Inc.*,
    No. 5:16-CV-0354, 2017 U.S. Dist. LEXIS 71840 (N.D.N.Y. May 11, 2017)......................8

*Jones v. Waffle House, Inc.*,
    866 F.3d 1257 (11th Cir. 2017) .............................................................................................9

*Kubischta v. Schlumberger Tech Corp.*,
    Civil Action No. 15-1338, 2016 U.S. Dist. LEXIS 91556
    (W.D. Pa. July 14, 2016) ...................................................................................................6, 7

*Lu v. AT&T Servs.*,
    No. C 10-05954 SBA, 2011 U.S. Dist. LEXIS 65617 (N.D. Cal. June 21, 2011) ..................6

*Palacios v. Boehringer Ingelheim Pharms.*, Inc.,
    No. 10-22398-Civ-UU, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011)....................................7

*Schrock v. Nomac Drilling, LLC*,
    No. 2:15-cv-1692, 2016 U.S. Dist. LEXIS 40574 (W.D. Pa. Mar. 28, 2016) ....................4, 5

*Sci. Games Int'l, Inc. v. Commonwealth*,
    620 Pa. 175, 66 A.3d 740 (2013)...........................................................................................4

*United States v. Mezzanatto*,
    513 U.S. 196, 115 S. Ct. 797 (1995).......................................................................................6

*Weight Watchers of Phila., Inc. v. Weight Watchers Int'l, Inc.*,
    455 F.2d 770 (2d Cir. 1972)...................................................................................8

*Wu v. Pearson Educ. Inc.*,
    No. 09 Civ. 6557 (RJH)(JCF), 2011 U.S. Dist. LEXIS 60881 (S.D.N.Y. June
    7, 2011) ........................................................................................................8

**Statutes**

73 Pa. Stat. Ann. § 2260.303(d).............................................................................4

73 Pa. Stat. Ann. § 2260.305 ................................................................................4

73 Pa. Stat. Ann. § 2260.305(a).............................................................................4

29 U.S.C. § 216(c) ...............................................................................................6

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Public policy favors the enforcement of contracts. Contracting parties generally are free to waive statutory rights as part of their exchange, and absent fraud, duress, or mistake, a signed waiver is binding upon the parties. In the context of the Fair Labor Standards Act of 1938 ("FLSA"), Congress intended to preclude private parties from waiving their *substantive* rights under the statute, such as minimum wage and maximum hours, but this intent is absent in the permissive statutory language of § 216, which creates a *procedural* right to bring or participate in a collective action under the FLSA. Accordingly, courts have consistently held that individuals may waive their right to participate in FLSA collective actions, upholding FLSA collective action waivers contained in separation agreements—*including the exact waiver and agreement at issue here*.

On June 13, 2016, in connection with the termination of his employment at AT&T and in exchange for receiving approximately $26,998 in severance pay and associated welfare benefits, Opt-in Plaintiff Anthony Renzi III ("Renzi")[1] signed a valid and enforceable class and collective action waiver. However, he has continued to prosecute his FLSA claims in this collective action against AT&T in derogation of his contractual promise. AT&T does not challenge Renzi's right to assert his FLSA claims against the company on an individual basis, but it paid him severance in exchange for his agreement not to participate a collective action such as this one, in which he

---

[1] Mr. Renzi passed away on July 22, 2017. (*See* Dkt. No. 203.) This Court previously denied without prejudice two motions to substitute Mr. Renzi's estate for Mr. Renzi as a party to this class action. (*See* Dkt. Nos. 210, 247.) On September 5, 2017, plaintiff's counsel moved for a third time to substitute Mr. Renzi's estate for Mr. Renzi. (*See* Dkt. No. 249.) This Court granted that motion on September 25, 2017. (*See* Dkt. No. 271.) References to Mr. Renzi herein refer to his estate.

asserts claims arising prior to the date he signed the waiver. Accordingly, this Court should

enforce the private contract at issue and grant AT&T's motion for summary judgment.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      In Connection with the Termination of His Employment at AT&T, and in Exchange for Substantial Severance Benefits, Renzi Signed a General Release and Waiver and Agreed Not to Participate in Any Class or Collective Action Against the Company.

Renzi signed the Severance Pay Plan General Release and Waiver (the "Waiver") on

June 13, 2016, upon the termination of his employment at AT&T. (*See* Peoples Decl. ¶ 13;

Peoples Decl. Ex. B; *see also* Koons Decl. ¶ 3.) In exchange for doing so, Renzi became entitled

to a severance allowance and associated welfare benefits, including continued life insurance and

medical insurance coverage. (*See* Peoples Decl. Ex. A, at 1–3.) Moreover, although Renzi could

have chosen to remain on payroll for a 60-day period in order to apply for openings at AT&T, he

elected instead to receive severance benefits immediately. (Peoples Decl. ¶¶ 6, 8.) And Renzi

actually received a severance payment in the amount of $26,998 from AT&T, pursuant to the

terms of its Severance Pay Plan, on July 21, 2016. (*Id*. ¶ 14.)

By signing the Waiver, Renzi: (1) released any and all claims he might have had against

AT&T at the time of signing; (2) agreed that any wages and overtime owed to him had been

paid; and (3) waived his right to bring or participate in a class or collective action. (*See* Peoples

Decl. Ex. C.) Specifically, the agreement provided the following, in relevant part:

- With respect to the payment of wages: "***I agree that any wages and overtime payments owed me have been paid (except for any amounts I claim are due and owing which I have listed at the end of this General Release and Waiver)***[2] and that the benefits

---

[2] Renzi listed none.

extended to me in exchange for this General Release and Waiver are in addition to all such amounts." (*Id*. at 7 (emphasis added).)

- Waiver of right to participate in class or collective action: "Without limiting the generality of the foregoing, ***I agree that I will not bring or participate in any class action or collective action*** against the Company which asserts, in whole or in part, any claim(s) which arose prior to the date I sign this Agreement, whether or not such claims are covered by the Waiver." (*Id*. at 7 (emphasis added).)

Moreover, Renzi was advised to carefully review the document and to consult with counsel before signing. Indeed, the Waiver provided explicit instructions, in bold, at the beginning of the document:

> **This General Release and Waiver is an important document, which you should examine carefully before signing. You are encouraged to seek the advice of anyone you need to in order to make an informed decision, including your financial advisor. You should consult with an attorney before signing this General Release and Waiver.**

(*Id*. at 1 (emphasis in original).) At the end of the document, additional language in bold confirmed that by signing, Renzi acknowledged that he was assenting to its terms after careful review and after receiving the instruction to seek legal advice:

> By signing below, I acknowledge that my election to accept the benefits of the Plan, and to release any claims described above, is knowing, free and voluntary and will become irrevocable seven calendar days after I sign this General Release and Waiver.
>
> **In addition, I hereby acknowledge by my signature that I have carefully read and fully understand all of the provisions of this document. I have been encouraged to consider this document carefully and to seek legal and financial advice before signing it.**

(*Id*. at 7 (emphasis in original).) Renzi was given ample time to consider whether to sign: he had 45 days to sign and an additional seven days after signing to revoke. (*Id*. at 6.) The Waiver also

3

provided explicit, bold directions to Renzi, cautioning that he should carefully examine the provisions of the document and seek legal advice before signing.

> **B.** **Although Renzi Consented to Join This Action Before the Termination of His Employment at AT&T, He Did Not Request That AT&T Exclude His Claims in This Action from the Scope of the Waiver.**

Renzi joined the action as an opt-in plaintiff on October 29, 2014. (*See* Dkt. No. 132.) Nevertheless, Renzi did not request that AT&T exclude his claims in this action from the scope of the Waiver before signing the document. AT&T has no way of knowing whether Renzi actually consulted with counsel before signing, as the document clearly encouraged him to do. But given that he had already joined this action and thus was already represented by counsel (*see* Dkt. No. 132), it certainly would have been easy for him to do so. In other words, he agreed to the terms of the Waiver with knowledge of his claims in this action and with immediate access to legal advice. By signing, he knowingly and voluntarily agreed not to further participate in this action.

## III.   RENZI WAIVED HIS RIGHT TO PARTICIPATE IN THIS ACTION.

> **A.** **Renzi's Electronic Signature of the Waiver is Valid and Enforceable.**

Pennsylvania—the state in which Renzi worked at the time of his termination (Koons Decl. ¶ 3)—recognizes the validity of electronic signatures, which are "attributable to a person if it was the act of the person." 73 Pa. Stat. Ann. § 2260.305(a); *see also* § 2260.303(d) ("If a law requires a signature, an electronic signature satisfies the law."). The effect of an electronic signature is determined "from the context and surrounding circumstances at the time of its creation, execution or adoption, *including the parties' agreement*" and as otherwise provided by law. 73 Pa. Stat. Ann. § 2260.305 (emphasis added); *accord Sci. Games Int'l, Inc. v. Commonwealth*, 620 Pa. 175, 183 n.6, 66 A.3d 740, 745 (2013); *see also Schrock v. Nomac Drilling, LLC*, No. 2:15-cv-1692, 2016 U.S. Dist. LEXIS 40574, at *9 (W.D. Pa. Mar. 28, 2016)

("Under Pennsylvania law, electronic signatures are to be given the same effect as written signatures.").

AT&T proffers ample evidence of overt acts sufficient to constitute an electronic signature attributable to Renzi: On June 13, 2016 at 11:42 AM, Renzi accessed AT&T's Mechanized Employee Surplus Administration website ("MESA") using a unique user ID and user-created password, elected not to request certain retiree health and insurance benefits, and acknowledged the Waiver by typing his name as an electronic signature. (*See* Peoples Decl. ¶ 13; Peoples Decl. Ex. B.) Renzi explicitly acknowledged, in bold font, "**By entering my name as it appears above, I confirm that I am the person named above and this is my electronic signature.**" (Peoples Decl. ¶ 12; Peoples Decl. Ex. D.) Under these circumstances, Renzi's electronic signature has the same legal effect as a signature inked on paper.

## B.      The Waiver Is Valid and Enforceable Under Pennsylvania Law.

The Waiver is valid and enforceable in Pennsylvania. Under Pennsylvania law, "a signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake." *Bowersox Truck Sales & Serv., Inc. v. Harco Nat. Ins. Co.*, 209 F.3d 273, 279 (3d Cir. 2000).

Here, there was no fraud, duress, or mutual mistake in the formation of the contract; the Waiver is clear and unambiguous. The provision specifically states, in plain English: "I agree that I will ***not bring or participate in any class action or collective action against the Company*** which asserts, in whole or in part, any claim(s) which arose prior to the date I sign this Agreement, whether or not such claims are covered by the Waiver." (Peoples Decl. Ex. C., at 7 (emphasis added).). Given that Renzi had already joined this collective action (*see* Dkt. No. 132), he knew or should have known that the Waiver would preclude him from participating further.

In addition, Renzi had 45 days to review the Waiver before signing and another 7 days to revoke his assent after signing. (*Id*. at 6) As described above, the Waiver also provided explicit, bold directions to Renzi, cautioning that he should examine the provisions of the document closely and seek legal advice before signing. (*See id*. at 1) The Waiver is, therefore, enforceable. *See Kubischta v. Schlumberger Tech Corp.*, Civil Action No. 15-1338, 2016 U.S. Dist. LEXIS 91556, at *13 (W.D. Pa. July 14, 2016) (enforcing a collective action waiver in a severance agreement under Pennsylvania law based on an unconscionability analysis where the waiver was provided to the plaintiff around the last date of his employment, advised plaintiff to consult with an attorney, and gave plaintiff 45 days to consider the waiver and 7 days to revoke).

### C.     The Right to Proceed Collectively Under the FLSA Is Waivable.

Renzi validly waived his procedural right to prosecute FLSA claims collectively. Statutory rights may be waived by agreement of the parties, unless Congress expresses the clear intent to preclude such a waiver. *See, e.g., United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S. Ct. 797, 801 (1995) ("[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver by voluntary agreement of the parties.").

Although the FLSA evinces a clear Congressional intent to preclude private waiver of its *substantive* rights, *see* 29 U.S.C. § 216(c), such intent is absent in the permissive statutory language creating a *procedural* right to bring or participate in a class action under the FLSA (specifically, 29 U.S.C. § 216(b)). Therefore, district courts have overwhelmingly held that individuals may waive their right to participate in FLSA collective actions, upholding FLSA collective action waivers contained in separation agreements—*including the exact waiver and agreement at issue here. See, e.g., Lu v. AT&T Servs., Inc.*, No. C 10-05954 SBA, 2011 U.S. Dist. LEXIS 65617, at *8-9 (N.D. Cal. June 21, 2011) ("The right to bring a collective action

6

under the FLSA is a procedural—not a substantive one. . . . Because the right to proceed on a collective basis implicates an employee's procedural, as opposed to substantive rights, a collective action waiver contained in severance agreement is enforceable."); *see also Birdsong v. AT&T Corp.*, No. C12-6175 TEH, 2013 U.S. Dist. LEXIS 37272, at *17 (N.D. Cal. Mar. 18, 2013) (holding that waiver of the right to bring a collective action does not contravene the policy behind the FLSA); *Kubischta*, 2016 U.S. Dist. LEXIS 91556, at *19 (enforcing an FLSA collective action waiver contained in a severance agreement; "Plaintiff does not lose any statutory right to pursue his damages under the FLSA [or state laws] by virtue of the class action waiver."); *Copello v. Boehringer Ingelheim Pharm., Inc.*, 812 F. Supp. 2d 886, 894 (N.D. Ill. 2011) ("[W]hile FLSA prohibits substantive wage and hour rights from being contractually waived, it does not prohibit contractually waiving the procedural right to join a collective action."); *Brown v. Sears Holdings Mgmt. Corp.*, No. 09 C 2203, 2009 WL 2514173, at *4 (N.D. Ill. Aug. 17, 2009) (enforcing class action waiver in separation agreement; while "the underlying availability of remedies provided in the FLSA, such as back wages, liquidated damages, etc., that constitute rights that cannot be abridged by private agreement, […] her FLSA rights are not affected by her inability to litigate via a class action"); *Palacios v. Boehringer Ingelheim Pharms., Inc.*, No. 10-22398-Civ-UU, 2011 WL 6794438, at *3 (S.D. Fla. Apr. 19, 2011) (holding class and collective action waiver in separation agreement was "fully enforceable" because "Plaintiff most certainly has an opportunity to litigate and win her individual claim for overtime under the FLSA § 207; she does not need to be part of a class to do that").

**D.    Direct Communications Between AT&T and Renzi in the Ordinary Course of Business Are Proper, and AT&T Explicitly Encouraged Renzi to Seek Legal Advice Before Signing the Waiver in Exchange for Severance Benefits.**

A court's role in governing direct communication between the parties in a FLSA collective action is somewhat limited:

> In general, communications that are litigation-neutral — that do
> not alter the legal relationship between the defendants and
> members of a putative class — *are not subject to restriction*.
> Indeed, defendants can even negotiate settlement of the claims of
> potential class members. However, courts have a responsibility to
> restrict communications… that are potentially coercive or
> misleading.

*Wu v. Pearson Educ. Inc.*, No. 09 Civ. 6557 (RJH)(JCF), 2011 U.S. Dist. LEXIS 60881, at *16-

17 (S.D.N.Y. June 7, 2011) (citations omitted) (emphasis added); *cf. Christensen v. Kiewit-*

*Murdock Inv. Corp.*, 815 F.2d 206, 213 (2d Cir. 1987) ("[D]efendants do not violate Rule 23(e)

by negotiating settlements with potential members of a class."); *Weight Watchers of Phila., Inc.*

*v. Weight Watchers Int'l, Inc.*, 455 F.2d 770, 775 (2d Cir. 1972) ("[P]laintiff has no legally

protected right to sue on behalf of other [class members] who prefer to settle; [Rule] 23(e),

requiring court approval of the dismissal or compromise of a class action, does not bar non-

approved settlements with individual members which have no effect upon the rights of others.").[3]

Absent egregious coercion or misrepresentation, courts enforce collective action waivers

contained in severance agreements between employers and FLSA opt-in plaintiffs represented by

counsel where, as here, it is clear that the severance agreements were executed in the ordinary

course of business. *See Benedict v. Hewlett-Packard Co.*, No. 13-cv-00119-BLF, 2016 U.S. Dist.

LEXIS 42810, at *18-19 (N.D. Cal. Mar. 29, 2016) (granting defendant-employer's motion to

enforce collective action waivers in severance agreements signed by opt-in plaintiffs following

conditional certification of a FLSA collective action and to dismiss those opt-in plaintiffs who

signed the waiver while represented by counsel, without prejudice to their individual claims,

---

[3] Even where courts determine that direct communications are coercive or misleading, they are
reticent to void the collective action waivers contained therein. *See Griffin v. Aldi, Inc.*, No. 5:16-
CV-0354 (LEK/ATB), 2017 U.S. Dist. LEXIS 71840, at *18 (N.D.N.Y. May 11, 2017)
(declining to void collective action waivers in settlement agreements with prospective FLSA opt-
in plaintiffs, even after finding the agreements to be misleading).

because "counsel did not direct [the defendant-employer] to offer waivers to obtain an advantage in this litigation"); *cf. Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1273 (11th Cir. 2017) (upholding an arbitration agreement executed between the parties to ongoing employment litigation, where the plaintiff-employee failed to consult the lawyers representing him before signing it; "The arbitration agreement did not amount to an improper ex parte communication, and the practice of pre-signing the agreements did not render the agreement invalid.").

Here, AT&T offered Renzi a standard severance package in the ordinary course of business. The Waiver predates this litigation by several years. As shown in the footer of each page of the document, it was last amended May 2011. (*See* Peoples Decl. Ex. C.) Moreover, there can be no question that Renzi made an informed decision to discontinue his participation in this action in exchange for severance benefits. He consented to join this action on October 29, 2014 (*see* Dkt. No 132), and he decided to sign the Waiver on June 13, 2016—over a year and a half later, with 45 days to consider the offer and consult with his attorney. *See* Peoples Decl. Ex. C, at 1, 6–7. As described above, Renzi was advised to carefully review the document and to consult with counsel before signing. The Waiver explicitly provides, in bold and at the beginning of the document, "**You should consult with an attorney before signing this General Release and Waiver.**" (Peoples Decl. Ex. C, at 1 (emphasis in original).) In signing the document, Renzi acknowledged that "**I have been encouraged to consider this document carefully and to seek legal and financial advice before signing it.**" (*Id*. at 7 (emphasis in original).) Whatever his reasons, he signed the Waiver with knowledge of this litigation and immediate access to legal advice, after AT&T explicitly encouraged him to seek legal advice before singing. Renzi's informed decision cannot—and should not—be undone more than a year and a half later.

**IV.    CONCLUSION**

Renzi agreed to a reciprocal contract with AT&T, under which he received valuable consideration in exchange for waiving the procedural right to participate in a class or collective action against AT&T. He has already enjoyed the benefits of signing the Waiver by accepting the severance paid in exchange for it. He therefore cannot now escape the obligations of the Waiver simply because he would prefer to litigate collectively. If his estate chooses to pursue his FLSA claims, it must do so in an individual action.

Accordingly, we respectfully submit that AT&T's motion for summary judgment should be granted.

Dated:   October 27, 2017                    Respectfully submitted,
         New York, New York


                                             PAUL HASTINGS LLP

                                             By:   /s/ Patrick W. Shea
                                                   Patrick W. Shea

                                             200 Park Avenue
                                             New York, New York 10166
                                             (212) 318-6000
                                             patrickshea@paulhastings.com

                                             *Attorneys for Defendant*