PATRICK W. SHEA
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
patrickshea@paulhastings.com
(212) 318-6000 (telephone)
(212) 319-4090 (facsimile)

*Attorneys for Defendant*
AT&T Mobility Services LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LISA LO CURTO, *on behalf of herself and all others similarly situated*,

    Plaintiff,

   -against-

AT&T MOBILITY SERVICES LLC,

    Defendant.

13 Civ. 04303 (AT)(KNF)

---

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR FINAL FLSA COLLECTIVE ACTION CERTIFICATION

# <u>TABLE OF CONTENTS</u>

Page

I.      INTRODUCTION .................................................................................................. 1

II.     PROCEDURAL HISTORY...................................................................................... 2

III.    FINAL CERTIFICATION OF THE FLSA COLLECTIVE IS NOT
        WARRANTED BECAUSE THE OPT-IN PLAINTIFFS ARE NOT SIMILARLY
        SITUATED. ............................................................................................................. 3

        A.      Plaintiff Cannot Establish Similarity Among the Members of the Putative
                Collective By Selectively Citing the Testimony of a Few to Support
                Contradicted Facts. ............................................................................................ 4

                1.      The Evidence Clearly Establishes Variation in Business Planning. .......... 4

                2.      The Evidence Clearly Establishes Variation in Training Duties. .............. 6

                3.      The Evidence Clearly Establishes Variation in Marketing Duties. .......... 8

                4.      The Evidence Clearly Establishes Varying Supervision and
                        Autonomy in Scheduling. ......................................................................... 9

                5.      The Evidence Clearly Establishes Variation in Resolving Customer
                        Issues......................................................................................................... 11

        B.      Similar Classification, Job Description, and Initial Training Does Not
                Render Employees Similarly Situated. .............................................................. 12

        C.      The Legal Authority Cited in Plaintiff's Motion Does Not Support
                Certification Here............................................................................................... 15

IV.     CONCLUSION....................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
  103 F. Supp. 3d 343 (E.D.N.Y. 2015) .......................................................................12, 14, 15

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  772 F. Supp. 2d 1111 (N.D. Cal. 2011) ...................................................................................7

*Bradford v. CVS Pharmacy, Inc.*,
  308 F.R.D. 696 (N.D. Ga. 2015)..............................................................................................7

*Brown v. Barnes & Noble, Inc.*,
  No. 16-cv-07333 (RA) (KHP), 2017 U.S. Dist. LEXIS 67148
  (S.D.N.Y. May 2, 2017)...................................................................................13, 14, 15, 16

*Cruz v. Lawson Software, Inc.*,
  764 F. Supp. 2d 1050 (D. Minn. 2011) ..................................................................................12

*Cuzco v. Orion Builders, Inc.*,
  477 F. Supp. 2d 628 (S.D.N.Y. 2007) ....................................................................................17

*Gardner v. W. Beef Props., Inc.*,
  No. 07-CV-2345 (NGG)(JMA), 2013 WL 1629299 (E.D.N.Y. Mar. 25, 2013),
  *report and recommendation adopted sub nom. by White v. W. Beef Props.,
  Inc.*, No. 07 CV 23454(RJD)(JMA), 2013 WL 1632657
  (E.D.N.Y. Apr. 16, 2013).......................................................................................................17

*Gardner v. W. Beef Props.*,
  No. 07-CV-2345 (NGG) (JMA), 2013 U.S. Dist. LEXIS 56511 (E.D.N.Y.
  Mar. 25, 2013), *report and recommendation adopted*, No. 07 CV 2345 (RJD)
  (JMA), 2013 U.S. Dist. LEXIS 55725 (E.D.N.Y. Apr. 16, 2013)............................................7

*Green v. Harbor Freight Tools USA, Inc.*,
  888 F. Supp. 2d 1088 (D. Kan. 2012) ....................................................................................11

*Guillen v. Marshalls of MA, Inc.*,
  No. 09 Civ. 9575(LAP)(GWG), 2012 WL 2588771 (S.D.N.Y. July 2, 2012) .................12, 13

*Harper v. Gov't Emps. Ins. Co.*,
  No. CV 09-2254(LDW)(GRB), 2015 WL 9673810 (E.D.N.Y. Nov. 16, 2015),
  *report and recommendation adopted*, No. 2:09-CV-02254(LDW)(GRB), 2016
  WL 98516 (E.D.N.Y. Jan. 6, 2016) .................................................................................10, 13

*Hernandez v. Fresh Diet, Inc.*,
    No. 12-CV-4339 (ALC)(JLC), 2014 WL 5039431 (S.D.N.Y. Sept. 29, 2014)......................14

*Hernandez v. Merrill Lynch & Co., Inc.*,
    No. 11 Civ. 8472(KBF), 2012 WL 1193836 (S.D.N.Y. Apr. 6, 2012) ...................................18

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997)..........................................................................................16

*Jacob v. Duane Reade, Inc.*,
    No. 11-CV-0160 (JPO), 2016 WL 3221148 (S.D.N.Y. June 9, 2016) .............................15, 19

*Jenkins v. TJX Cos., Inc.*,
    853 F. Supp. 2d 317 (E.D.N.Y. 2012) ....................................................................................14

*Khan v. Airport Mgmt. Servs., LLC*,
    No. 10 Civ. 7735(NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...............................13

*Lipnicki v. Meritage Homes Corp.*,
    No. 3:10-CV-605, 2014 WL 5620603 (S.D. Tex. Nov. 4, 2014) ..............................................9

*McEarchen v. Urban Outfitters, Inc.*,
    No. 13-CV-3569 (RRM)(JO), 2017 U.S. Dist. LEXIS 33335 (E.D.N.Y. Mar.
    7, 2017), *report and recommendation adopted*, No. 13-CV-3569 (RRM)(JO),
    2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017)......................................................14

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ..............................................................................................14

*Morrison v. Ocean State Jobbers, Inc.*,
    290 F.R.D. 347 (D. Conn. 2013)..................................................................................*passim*

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010).....................................................................................................17

*Nabi v. Hudson Grp. (HG) Retail, LLC*,
    310 F.R.D. 119 (S.D.N.Y. 2015) ............................................................................................12

*Perkins v. Southern New England Telephone. Co.*
    669 F. Supp. 2d 212 (D. Conn. 2009)......................................................................................16

*Reyes v. Texas Ezpawn, L.P.*,
    Civil Action No. V-03-128, 2007 WL 101808 (S.D. Tex. Jan. 8, 2007).................................11

*Ruiz v. Citibank, N.A.*,
    93 F. Supp. 3d 279, 300 (S.D.N.Y.), *reconsideration denied*, No. 10 Civ. 5950
    (KPF)(RLE), 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x
    39 (2d Cir. 2017)..............................................................................................................20, 21

*Stevens v. HMSHost Corp.*,
No. 10 CV 3571 (ILG) (VVP), 2014 U.S. Dist. LEXIS 119653
(E.D.N.Y. Aug. 26, 2014) ...........................................................................................6, 17, 18

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
No. 10 Civ. 8820(LTS)(THK), 2011 WL 2693712 (S.D.N.Y. July 11, 2011) ......................14

*Zivali v. AT&T Mobility, LLC*,
784 F. Supp. 2d 456 (S.D.N.Y. 2011) ............................................................................17, 20

## I.     INTRODUCTION

In her motion, Plaintiff Lisa LoCurto asks the Court to grant final certification of a nationwide class of National Retail Account Executives ("NRAEs") and Retail Account Executives ("RAEs") of AT&T Mobility Services LLC ("AT&T"). Plaintiff's motion should be denied for the same three reasons set forth in AT&T's Motion for Decertification.

First, post-conditional certification discovery has revealed substantial variation among the Opt-In Plaintiffs with regard to the performance of their job duties, including the degree to which each Opt-In Plaintiff exercised discretion and independent judgment. Faced with this fact, Plaintiff selectively cites to deposition testimony in her motion in an attempt to show some meaningful similarity among the Opt-In Plaintiffs where none exists. For example, Plaintiff asks this Court to find all Opt-In Plaintiffs are similarly situated by citing to testimony from a small subset who took a similar approach to training in-store employees (though other Opt-In Plaintiffs testified that they took different approaches); another small subset who felt limited in their ability to address customer issues (though other Opt-In Plaintiffs testified they had far more authority in this regard); and another small subset who did not develop customized business plans for their stores (though other Opt-In Plaintiffs testified that they did). By picking and choosing her proof, Plaintiff underscores that the Opt-In Plaintiffs are not similarly situated.

Second, AT&T intends to present several defenses at trial, three of which require individualized inquiries and render this action ill-suited for collective treatment. AT&T's principal defense that the Opt-In Plaintiffs were employed in a bona fide administrative capacity and were, therefore, properly classified as exempt, is a highly individualized defense rendering representative testimony insufficient because its applicability depends upon the unique job duties of each Opt-In Plaintiff. Moreover, because the testimony of many of the Opt-In Plaintiffs conflicts with the information contained in their resumes, performance reviews, and affidavits,

AT&T intends to challenge the credibility of each Opt-In Plaintiff based on facts specific to that individual. Finally, the NRAE and RAE positions were structured to be exempt, and any Opt-In Plaintiff who performed in a non-exempt manner was misperforming the job. Each of these defenses requires a separate examination of the individual factual circumstances of each Opt-In Plaintiff, and makes this action unsuitable for collective treatment.

Third, fairness and procedural considerations weigh heavily in favor of proceeding individually. The vast majority of Opt-In Plaintiffs worked in jurisdictions outside of New York and have no connection to this forum. Due process and fairness considerations require that these Opt-In Plaintiffs present their individualized claims in their home jurisdictions, where they, and the relevant witnesses with knowledge of their job duties and performance, reside.

## II.   PROCEDURAL HISTORY

On November 13, 2013, Plaintiff moved the Court to conditionally certify a collective action under the FLSA. (*See* Dkt. Nos. 32-36.) On August 18, 2014, the Court granted Plaintiff's motion for conditional class certification under the FLSA and provided for a 60-day opt-in period. (*See* Dkt. Nos. 111, 112.) In granting conditional certification, the Court explicitly relied on the fact that Plaintiff's burden at the first conditional certification stage was "minimal," noting that "the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs." (Dkt. No. 111, at 12.)

During the opt-in period, Plaintiff sent individualized notice to 347 NRAEs and RAEs, nationwide, informing them of their right to join the FLSA collective action. Out of the 347 who received individualized notice, 19 joined the FLSA collective action (in addition to Plaintiff). Four of the 19 Opt-In Plaintiffs have subsequently withdrawn their consent, leaving, to date, 15

Opt-In Plaintiffs as part of the conditionally certified FLSA collective action.[1]  Discovery has since been taken from the Opt-In Plaintiffs including, in nearly all instances, discovery by deposition. On September 22, 2017, Defendant moved the Court to decertify the collective action and to dismiss the claims of the Opt-In Plaintiffs (see Dkt. No. 263) and Plaintiff moved for final certification of the FLSA collective action (Dkt. No. 265).

As is explained more thoroughly in Defendant's Motion for Decertification (Dkt. No. 263) and below, discovery has revealed substantial variation in the duties performed by the Opt-In Plaintiffs. These differences span nearly every aspect of the Opt-In Plaintiffs' responsibilities, including marketing, training, setting business goals, scheduling, and resolving customer issues. Given these substantial disparities, the one-size-fits-all, class-wide analysis sought by Plaintiff on these claims cannot proceed.

## III.    FINAL CERTIFICATION OF THE FLSA COLLECTIVE IS NOT WARRANTED BECAUSE THE OPT-IN PLAINTIFFS ARE NOT SIMILARLY SITUATED.

Plaintiff has failed to sustain her burden of proving that the Opt-In Plaintiffs are similarly situated because discovery has revealed significant differences in the facts and employment settings applicable to the class. In an effort to conjure similarity among the class where none exists, Plaintiff makes broad assertions in her motion that ignore directly contradictory statements from many of the Opt-In Plaintiffs.[2] The only evidence Plaintiff points to is that NRAEs and RAEs were similarly classified as non-exempt, and had similar job descriptions and

---

[1]      AT&T has concurrently filed a motion to dismiss the claims of Opt-In Plaintiff Reysan Almonte, and a motion for summary judgment on the claims of the estate of Opt-In Plaintiff Anthony Renzi III.  Should AT&T succeed on these motions, there will be only 13 total Opt-In Plaintiffs in the putative collective action.

[2]      To avoid duplication of arguments, AT&T respectfully directs the Court to its Motion for Decertification for further discussion on the two additional reasons why Plaintiff's motion should be denied:  because AT&T's defenses must be individually applied to each Opt-In Plaintiff; and fairness and procedural considerations preclude certification. (See Dkt. No. 263 at 21-26.)

initial training.  This is plainly insufficient to establish that the class is similarly situated.

Finally, the legal support that Plaintiff cites to in her motion is inapposite.

> **A.      Plaintiff Cannot Establish Similarity Among the Members of the Putative Collective By Selectively Citing the Testimony of a Few to Support Contradicted Facts.**
>
> > 1.      <u>The Evidence Clearly Establishes Variation in Business Planning.</u>

The evidence does not support Plaintiff's claim that the business plans prepared by the Opt-In Plaintiffs were "'cookie-cutter' forms prepared by AT&T." (Dkt. 265 at 13.) Indeed, several Opt-In Plaintiffs testified that they analyzed performance metrics and business reports from their retail accounts for trends, observed and reported on the performance of sales associates, identified operational challenges and opportunities for improvement, described marketing efforts, and recommended future action items. For example:

- Bryant testified that her business plans included a trend analysis, identified operational challenges, and provided an assessment of sales and opportunities for improvement, among other things. (Bryant Dep. 56:5-59:9.)[3]

- Martino, a former NRAE and RAE, testified that he created business plans twice per year for his locations, in which he described operational challenges and proposed action plans, which he then presented to a Vice President of AT&T. (Martino Dep. 86:2-20.)

- Lombard, a former RAE, explained that he led his 17 retail accounts to "success" by analyzing sales metrics and suggesting action plans to improve sales, which his stores typically followed, and that he was praised in a performance review for ""look[ing] at

---

[3]      All sworn declarations cited in this brief are attached as exhibits to the Affirmation of Patrick W. Shea, filed concurrently herewith, and are cited throughout this motion in the following format: "[Declarant's Last Name] Decl., ¶ [Paragraph Number]."  Deposition testimony is cited as "[Deponent's Last Name] Dep. [Page]:[Line(s)]."

results and the underlying reasons for success or failure at multiple levels and us[ing] data analysis as well to clearly point out the underlying drivers[.]" (Lombard Dep. 17:3-18:8; 50:20-51:2.)

- Daily testified that he analyzed trends in business reports and then responded by identifying the root cause of any increases with store management and encouraging them to share best practices.(Daily Dep. 37:18-38:13.)

- Briscoe admitted that she reviewed store performance metrics and devised strategies for sales performance at her locations based on that review. (Briscoe Dep. 73:2-74:4.)

Further, unlike Plaintiff, who claimed never to have shared her business plans with anyone at AT&T, other Opt-In Plaintiffs testified that they shared their business plans with their managers, others at AT&T, and even representatives at their assigned locations. (*See, e.g.,* Bryant Dep. 56:5-59:9 (shared her business plans with her manager and store owners); Ward Dep. 80:7-84:4 (shared her business plans with AT&T Vice Presidents, regional directors, managers, and store owners).)

Indeed, it was a performance expectation for RAEs and NRAEs to prepare customized business plans that identified and analyzed performance issues, identified and analyzed the root cause or causes of performance issues, and that recommended effective measures to address performance issues. From the perspective of those managing RAEs and NRAEs, this was not a "cookie cutter" task. (*See* Wang Decl. ¶¶ 3, 5 ("I expected RAEs to act in partnership with the individuals managing the AT&T authorized retailer stores in their respective territories, as well as the sales associates working in the stores, in order to increase sales of AT&T products and services. To that end, I expected RAEs to cultivate relationships with store personnel and to consult with them on ways to improve the store's sales . . . I expected NRAEs to act as AT&T

5

ambassadors to the sales personnel at their assigned national retail stores. I expected NRAEs to cultivate good relationships with their assigned store personnel, and to consult with them on how to improve sales of AT&T products and services.").)

The disparate factual and employment settings with respect to class members' preparation and use of business plans weigh against certification. *See generally Stevens v. HMSHost Corp.*, No. 10 CV 3571 (ILG) (VVP), 2014 U.S. Dist. LEXIS 119653, at *21 (E.D.N.Y. Aug. 26, 2014) (decertifying collective action, holding that "plaintiffs' employment settings and job duties varied widely in material ways and defendants' exemption defenses are accordingly not amenable to generalized or representative proof").

2.     The Evidence Clearly Establishes Variation in Training Duties.

The testimony of many Opt-In Plaintiffs contradicts Plaintiff's contention that the training duties of all other Opt-In Plaintiffs were limited to "simply foster[ing] the rollout of AT&T's programs, tools, and training, and had absolutely no input into their creation."  (Dkt. 265 at 10.)  For example:

- Briscoe testified that she developed her own games and quizzes and "one-sheeters" for training purposes. (Briscoe Dep. 60:20-61:14; 80:22-81:11.)

- Bryant testified that while AT&T provided her with training materials, she "would use [her] own" and that she was not "required to use a certain training material." (Bryant Dep. 49:5-51:23 (Bryant's own training materials included "[q]uestions and answers, certain customer situations, benefits and objections, how to overcome… customer objections, how to handle difficult situations, things like that.").)

- Foster testified that for some period of time she made up her own training materials, and that other times she would customize training materials. (Foster Dep. 44:23-45:11

6

("[I]n the beginning we made it up. We went through and printed out our own stuff. Towards the end we had actual sales programs that we could use . . . we had materials that were provided to us that we could put together and customize for the individual new hire.").)

- Martino, Lombard, Walker, and Ward admitted to tailoring training based on their own analysis of store performance (Martino Dep. 47:14-48:11 (tailored training based on own analysis of store performance reports); Lombard Dep. 29:15-23 (tailored training based on own observation of personnel and assessment of store performance); Walker Dep. 68:2-19 (same); Ward Dep. 89:20-90:13 (varied the content of training depending on the performance of the store).)

- Cascioli admitted to varying the content of training based on the particular knowledge of the trainee. (Cascioli Dep. 69:24-70:8.)

The great disparity between the Opt-In Plaintiffs' experiences with regard to conducting trainings and preparing training materials weighs in favor of denying final certification. *See Gardner v. W. Beef Props.*, No. 07-CV-2345 (NGG) (JMA), 2013 U.S. Dist. LEXIS 56511, at *26-28 (E.D.N.Y. Mar. 25, 2013) (recommending decertification where some opt-in plaintiffs "admitted to performing a substantial amount of training," while others "engaged in more limited training and, sometimes, no training at all"), *report and recommendation adopted*, No. 07 CV 2345 (RJD) (JMA), 2013 U.S. Dist. LEXIS 55725 (E.D.N.Y. Apr. 16, 2013); *Bradford v. CVS Pharmacy, Inc.*, 308 F.R.D. 696, 699 (N.D. Ga. 2015) (decertifying collective action where some opt-in plaintiffs "exercised very little discretion in training other employees," while another "created his own training materials, and held weekly training calls for loss prevention"); *cf. Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1123 (N.D. Cal. 2011)

(decertifying collective action where some opt-in plaintiffs conducted personal training sessions for clients, while others "were not permitted to train clients at all").

       3.     <u>The Evidence Clearly Establishes Variation in Marketing Duties.</u>

Plaintiff asserts that the marketing duties that she and the Opt-In Plaintiffs performed "were limited to ensuring that their assigned stores' visual look was in accord with AT&T's planogram" and that they played "no role in AT&T's actual marketing." (Dkt. 265 at 33.) This assertion is flatly inconsistent with the testimony of many Opt-In Plaintiffs who explained that they exercised substantial discretion and independent judgment in the marketing arena. For example:

- Martino reported using his merchandising expertise to make suggestions to Radio Shack managers to improve merchandising of the wireless section. (Martino Dep. 65:15-66:2.)

- Walker decided to start writing monthly marketing newsletters for his stores to increase sales and highlight important products and features. (Walker Dep. 51:4-52:8.) He shared these newsletters with other account executives, some of whom then created and customized newsletters for their stores. (*Id.* 52:9-53:4.)

- Henton described a vastly different marketing role than the other RAEs. He testified that he acted as a "small business account manager" during the limitations period (instead of an RAE). (Henton Dep. 16:12-18:25 (his manager told him that he considered him a small business account manager who was responsible for selling more business-to-business services).) Henton focused on creating small business accounts (instead of just individual accounts), and identified opportunities to do so by building relationships with individual customers, visiting small businesses in his area

to promote AT&T, and attending trade shows to connect with account executives from other companies. (*Id*. 20:15-21:11; 23:24-26:7.) No other Opt-In Plaintiff testified to these or similar duties.

This substantial variation in marketing duties performed by the Opt-In Plaintiffs weighs against granting final certification here. *See Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-605, 2014 WL 5620603, at *4-5 (S.D. Tex. Nov. 4, 2014) (decertifying collective action due to a disparity in marketing efforts by opt-in plaintiffs).

4.   The Evidence Clearly Establishes Varying Supervision and Autonomy in Scheduling.

Plaintiff argues that she and the Opt-In Plaintiffs were often closely supervised by and in frequent contact with their supervising RAMs and ARSMs. (Dkt. No. 265 at 34.) To support this claim, Plaintiff asserts that the Opt-In Plaintiffs were in contact with their supervisors on a "weekly, daily, or more frequent" basis, that sometimes their supervisors would conduct ride-alongs, and that they were "frequently required to inform and/or receive input from their RAM or ARSM regarding their weekly schedule of store visits and events." (Dkt. No. 265 at 15-16.) Yet many Opt-In Plaintiffs testified to just the opposite, stressing that they received minimal in-person supervision and often minimal remote supervision. (*See* Briscoe Dep. 47:16-22 (estimating one in-person meeting per week and phone or email communication, "[o]n average, once -- maybe two to four times a week"); Lombard Dep. 64:13-65:3 (estimating two to four ride-alongs per month); Martino Dep. 75:15-22 (estimating one ride-along "[m]aybe once every two, three months"); Foster Dep. 43:18-44:3 ("[M]y supervisor was not a micromanager, and I've been with the company for a long time, I knew my job. I hadn't -- was not a new RAE who had been hired three months ago who needed direction and needed to know what to do, so she -- she pretty much left me alone. I knew what I needed to do.").)

Moreover, several Opt-In Plaintiffs testified that they exercised substantial autonomy in deciding their own schedules. (*See* Foster Dep. 36:14-21 ("Q. You set your own schedule? A. As far as which stores I visited when, at the time that I was employed there, yes. Q. Did you ever deviate from your own schedule? A. All the time. Q. Under what circumstances? A. Whatever circumstance arose that needed me to deviate from that."); Walker Dep. 43:3-45:19 (testifying that he set his own schedule; "I had – had visited my stores according to how I felt I needed to."); Runnels Dep. 35:5-8 (testifying that she set her own schedule; "I made a schedule and I did it."); *see also* Wang Decl. ¶ 7 ("RAEs and NRAEs reporting to me had the freedom to set their own schedules, subject to it making good business sense, and to come up with their own plans to maximize sales in their doors.").)

Some Opt-In Plaintiffs reported, unsurprisingly, that the degree to which they could exercise discretion and independent judgment regarding scheduling varied widely from supervisor to supervisor. (*See* Ward Dep. 75:10-76:15 (prepared his own schedules and sometimes deviated from them based on customer issues, promotions, or system problems; some managers wanted to see his schedules to know where he would be, while other managers did not); Henton Dep. 72:15-24 ("Some of the details [regarding how he communicated his schedule] changed depending on the manager. . . .Some micromanage, some don't.  Some [would] say you have to go to seven locations, not five. Some said, you know, you have to send certain reports throughout the day.  Some said you had to send it after being in the field.  The details changed depending on the manager.").)

Such variation requires the denial of final certification here. *See Harper v. Gov't Emps. Ins. Co.*, No. CV 09-2254(LDW)(GRB), 2015 WL 9673810, at *4 (E.D.N.Y. Nov. 16, 2015), *report and recommendation adopted*, No. 2:09-CV-02254(LDW)(GRB), 2016 WL 98516

(E.D.N.Y. Jan. 6, 2016) (granting motion to decertify FLSA collective action based in part on variation in supervisor oversight); *Reyes v. Texas Ezpawn, L.P.*, Civil Action No. V-03-128, 2007 WL 101808, at *3 (S.D. Tex. Jan. 8, 2007) (decertifying collective action; "The extent of an ASM's discretion and authority largely depended on the store manager in charge of that particular store. The management style of individual store managers often dictated the nature of the duties an ASM was required to perform."); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1101–02 (D. Kan. 2012) (because the level of control and discretion are "crucial factors to be considered in an FLSA exemption analysis," the "lack of uniformity" among the opt-ins regarding the level of supervision weighs against the action continuing as a collective one).[4]

> ### 5.   The Evidence Clearly Establishes Variation in Resolving Customer Issues.

In her motion, Plaintiff admits that some Opt-In Plaintiffs had the authority to give customers credits and others could not, but claims that they "did not have discretion or authority to authorize other types of customer resolutions." (Dkt. 265 at 33.) Here again, however, Plaintiff's assertion ignores the Opt-In Plaintiffs' own testimony. The Opt-In Plaintiffs testified to substantial variation in the degree to which they could exercise discretion and independent judgment in addressing customer issues.  (*Compare* Briscoe Dep. 96:17-97:25 (had authority to deal with customers directly and instruct a retailer's employee on how to resolve a customer issue) *with* Ward Dep. 84:20-23 (did not recall resolving customer issues except by issuing credits); Martino Dep. 106:19-107:12 (dealt with customers disgruntled by defective products,

---

[4] Plaintiff cites to *Morrison* for the proposition that differences in job duties based on management styles are not relevant for certification purposes. (Dkt. No. 265 at 34.) The District Court in *Morrison* refused to consider differences in management styles based on its conclusion that it could not consider *any* arguments related to the merits of the underlying claim. *Morrison v. Ocean State Jobbers, Inc.*, 290 F.R.D. 347, 361-62 (D. Conn. 2013). As discussed in Section 3(C), this conclusion was erroneous.

but referred billing issues to employees in receivables); *and* Walker Dep. 50:12-24 (advised store employees on dealing with customer issues, but did not recall personally resolving specific customer issues other than billing issues).)

The wide variation among Opt-In Plaintiffs with respect to their authority and autonomy in resolving customer issues weighs against certification here. *See Cruz v. Lawson Software, Inc.*, 764 F. Supp. 2d 1050, 1062 (D. Minn. 2011) (denying final FLSA certification of a collective classified under the administrative exemption; noting that collective analysis would not be appropriate because "Plaintiffs have little supervision, interact with customers in different manners, and give conflicting testimony regarding the extent to which they independently solve problems versus follow an established [company] process to resolve issues.")

### B. Similar Classification, Job Description, and Initial Training Does Not Render Employees Similarly Situated.

In her motion, Plaintiff relies heavily on the argument that, regardless of the variation in the actual job duties each Opt-In performed, the Court should grant final FLSA certification merely because the Opt-In Plaintiffs shared similar job descriptions, underwent similar initial training, and were all classified as exempt from overtime requirements. (*See* Dkt. 265.)

Even if Plaintiff were correct on these facts (which AT&T disputes), courts in this circuit routinely reject this "rubber stamp" approach to certification. Indeed, the mere fact that there was uniformity among job descriptions, training, and classification is plainly insufficient to render a class similarly situated. *See Guillen v. Marshalls of MA, Inc.*, No. 09 Civ. 9575(LAP)(GWG), 2012 WL 2588771, at *1 (S.D.N.Y. July 2, 2012) ("[C]ourts in this Circuit have routinely held that the mere fact of a common FLSA-exempt designation, job description, or uniform training is insufficient" to create an inference that such employees are similarly situated for FLSA purposes); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 351 (E.D.N.Y. 2015) (same); *Nabi v.*

*Hudson Grp. (HG) Retail*, *LLC*, 310 F.R.D. 119, 124 (S.D.N.Y. 2015) (denying certification in part because, "[t]he mere fact that Defendants created a uniform job description for this position and that operations managers may perform some of the same tasks at commuter station newsstands nationally is insufficient to create an inference that operations managers are generally misclassified"); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735(NRB), 2011 WL 5597371, at *4 (S.D.N.Y. Nov. 16, 2011) ("[P]laintiff's reliance on the centralized job descriptions maintained by defendants is misplaced."); *see also Harper v. Gov't Emps. Ins. Co.*, No. CV 09-2254(LDW)(GRB), 2015 WL 9673810, at *5 (E.D.N.Y. Nov. 16, 2015), *report and recommendation adopted*, No. 2:09-CV-02254(LDW)(GRB), 2016 WL 98516 (E.D.N.Y. Jan. 6, 2016) ("While GEICO's corporate procedures and polices tend to show how plaintiffs are similarly situated *in theory*, the record – as shown by the Second Circuit's summary order and elsewhere – belies that notion *in practice*.") (citations omitted; emphasis in original).

First, a common job description "is insufficient to find [putative class members] 'similarly situated' for FLSA purposes." *Guillen*, 2012 WL 2588771, at *1; *see also, Khan*, 2011 WL 5597371, at *4 ("To proceed as a collective action when making such a claim, 'it is not sufficient for [plaintiff] to show that he and the proposed class operated under the same job description.' ") (citations omitted). And for good reason: "[I]f a uniform job description by itself was sufficient, every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee." *Brown v. Barnes & Noble, Inc.*, No. 16-cv-07333 (RA) (KHP), 2017 U.S. Dist. LEXIS 67148, at *14-15 (S.D.N.Y. May 2, 2017) (citations omitted).

Second, "the mere classification of a group of employees – even a large or nationwide group – as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence

13

of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10 Civ. 8820(LTS)(THK), 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011); *Jenkins v. TJX Cos., Inc.*, 853 F. Supp. 2d 317, 323, (E.D.N.Y. 2012) (same); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 n. 46 (11th Cir. 2008) ("Just because a business classifies all employees in a particular job category as exempt does not mean that those employees are necessarily 'similarly situated' for purposes of a 29 U.S.C. § 216(b) collective action."); *Hernandez v. Fresh Diet, Inc.*, No. 12-CV-4339 (ALC)(JLC), 2014 WL 5039431, at *4 (S.D.N.Y. Sept. 29, 2014) ("'Blanket misclassification' arguments are insufficient at [the decertification] stage.") (citations omitted).

Third, even if the Company's policies and training were uniform, which they were not, "uniform corporate policies and training do not on their own render the plaintiffs similarly situated." *McEarchen v. Urban Outfitters, Inc.*, No. 13-CV-3569 (RRM)(JO), 2017 U.S. Dist. LEXIS 33335, at *1 (E.D.N.Y. Mar. 7, 2017) (decertifying FLSA collective where actual job duties varied significantly, despite uniform classification decision, corporate policies, and training), *report and recommendation adopted*, No. 13-CV-3569 (RRM)(JO), 2017 U.S. Dist. LEXIS 144203 (E.D.N.Y. Sept. 6, 2017); *Ahmed*, 103 F. Supp. 3d at 351 ("the mere fact of a common FLSA-exempt designation, job description or uniform training is insufficient to find [putative collective members] similarly situated for FLSA purposes.") (citations and quotations omitted).

In *Brown*, the plaintiffs moved for conditional FLSA certification on the grounds that the defendant had classified all of its Café Managers as exempt from overtime, issued a single job description to cover each of them, and maintained uniform comprehensive policies, procedures,

14

and work rules governing how they performed their job. 2017 U.S. Dist. LEXIS 67148, at *11.

Denying the plaintiffs' motion, the court held that these facts were insufficient to satisfy even the

"low threshold for conditional certification." *Id.* at *12 (citing *Jenkins*, 853 F. Supp. 2d at 323

(rejecting plaintiff's argument that conditional certification requires merely showing that plaintiff

and the putative class were subject to the unlawful application of a facially lawful policy)

(citation omitted); *and Ahmed*, 103 F. Supp. 3d at 351 (stating that district courts in this Circuit

have routinely concluded that "the mere fact of a common FLSA-exempt designation, job

description or uniform training is insufficient to find [assistant store managers] 'similarly

situated' for FLSA purposes"). Here, ignoring *Brown* and the overwhelming weight of authority

cited above, Plaintiff asks the court to hold that these same facts warrant *final* certification of

their collective FLSA claims. They do not.

### C.    The Legal Authority Cited in Plaintiff's Motion Does Not Support Certification Here.

Rather than engage seriously with the facts of this case that warrant decertification,

Plaintiff focuses the Court on four district court decisions: two which she claims are factually

analogous to the instant matter and two which she claims are not. In this way, Plaintiff presents a

false dichotomy that does not support final certification.

Plaintiff directs the Court to two decisions in which district courts granted FLSA

certification. (Dkt. 265 at 23-24 (*citing Morrison v. Ocean State Jobbers, Inc*., 290 F.R.D. 347,

361 (D. Conn. 2013) *and Jacob v. Duane Reade, Inc.,* No. 11-CV-0160 (JPO), 2016 WL

3221148, at *7 (S.D.N.Y. June 9, 2016)).) Plaintiff first points to *Morrison*, in which the District

Court of Connecticut found that variations in the opt-in plaintiffs' job duties were substantial

enough to preclude Rule 23 class certification, but were not even relevant to FLSA collective

certification. *Morrison*, 290 F.R.D. 347. The *Morrison* decision is an outlier with respect to

Section 216, and turned on the incorrect premise that a court should not consider variations in the actual job duties of opt-in plaintiffs when determining whether to grant final certification of an FLSA collective, because "under § 216(b) the court does not consider arguments pertaining directly to the merits of the underlying claim." *Id.* at 361–62. Ignoring the variations in the opt-in plaintiffs' job duties, the court focused solely on the uniform exemption determination, job description, and training received by the opt-in plaintiffs in certifying the collective. *Id.* As recognized by Judge Parker, this unworkable approach, if adopted by other district courts, would have disastrous results: "every business in corporate America would be subject to automatic certification of a nationwide collective action on the basis of the personal experiences of a single misclassified employee."  *Brown*, 2017 U.S. Dist. LEXIS 67148, at *14-15 (citations omitted).

The *Morrison* decision relies solely on *Perkins v. Southern New England Telephone. Co.* for the premise that facts related to the merits of plaintiffs' claims are irrelevant to the collective action inquiry—even at the second stage of certification. 669 F. Supp. 2d 212, 219 (D. Conn. 2009). But the only in-circuit decisions cited by *Perkins* to support this premise were applying the comparatively minimal standard for *conditional* certification, not the more stringent standard for final certification. *See Perkins*, at 221 ("a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.") (*citing Holbrook v. Smith & Hawken, Ltd*., 246 F.R.D. 103, 105-06 (D. Conn. 2007) (As long as a plaintiff asserts a plausible basis for her claim, the merits of that claim are irrelevant to the similarly situated inquiry at the *conditional* class certification phase.") (emphasis added)*; Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (When considering a motion for *conditional* class certification, "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated'

plaintiffs can exist") (emphasis added); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632–33 (S.D.N.Y. 2007) ("At this [conditional certification] stage, a representative plaintiff has only a minimal burden to show that he is similarly situated to the potential class . . . [and] [i]t is not necessary for a court to evaluate the merits of a plaintiff's claims in order to determine that a group of similarly situated persons exists.").

As *Morrison* failed to acknowledge, the second stage of certification involves a "more stringent standard of proof" than the first. *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (internal citation omitted). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citation omitted). And the defendant's "blanket classification decision and uniform corporate policies do not on their own render plaintiffs similarly situated." *Stevens*, 2014 WL 4261410, at *5. Nor do they "eliminate the need to make a factual determination as to whether class members are actually performing similar duties." *Gardner v. W. Beef Props., Inc.*, No. 07-CV-2345 (NGG)(JMA), 2013 WL 1629299, at *7 (E.D.N.Y. Mar. 25, 2013), *report and recommendation adopted sub nom. by White v. W. Beef Props., Inc.*, No. 07 CV 23454(RJD)(JMA), 2013 WL 1632657 (E.D.N.Y. Apr. 16, 2013) (collecting cases) (quotation omitted). "Ultimately, determining whether plaintiffs' employment settings were similar requires the Court to examine the deponents' testimony about their particular job duties[.]" *Stevens*, 2014 WL 4261410, at *6. As this court noted in its Order approving conditional class certification, "the very nature of the two-step conditional certification process is such that factual findings on the similarly situated issue are reserved for the second stage, where such findings may be based on the record produced in discovery." (Dkt.

No. 111, at 10 (citations omitted).) Indeed, "[t]he burden imposed at this first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are actually 'similarly situated' to the named plaintiffs." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472(KBF), 2012 WL 1193836, at *4 (S.D.N.Y. Apr. 6, 2012) (citation omitted).

To be sure, courts are not asked to *decide* the merits of plaintiffs' underlying claims at the decertification stage. "However, understanding their claims . . . is essential to deciding whether Plaintiffs are similarly situated in relevant respects and allowed to proceed as a collective." *Stevens*, 2014 WL 4261410, at *5. In *Stevens*, the district court conditionally certified an FLSA collective and the parties deposed 19 opt-in plaintiffs. The court noted at the decertification stage that "Defendants' blanket classification decision and uniform corporate policies do not on their own render plaintiffs similarly situated." *Id.* Rather, "determining whether plaintiffs' employment settings were similar requires the Court to examine the deponents' testimony about their particular job duties and level of managerial authority[,]" particularly with respect to the duties relevant to the exemption analysis. *Id.* at *6. Because the record established "variation and dissimilarity across the deponents' testimony" on these issues, the Court decertified the collective action, stressing that "wide differences in employment settings and job duties greatly complicate the use of representative proof either to prove the correctness of the [classification] or to rebut such a showing." *Id.* at *6-7.

Under Plaintiff's rubric, in order to determine whether it would be appropriate to rule collectively based on representative evidence on whether the members of the collective were properly classified, this Court would have to ignore the myriad differences between the individual Opt-In Plaintiffs that are directly relevant to whether each is exempt from overtime.

This position runs contrary to settled law and common sense. This Court should reject Plaintiff's erroneously constructed standard for final FLSA certification and apply the standard adopted by the overwhelming majority of courts in this Circuit.[5]

The *Jacob* decision cited by Plaintiff is likewise inapposite. Unlike the instant matter, plaintiffs in *Jacob* shared similar job duties and performed those duties in a similar way, employing a similar degree of discretion and independent judgment. The deposition testimony of company representatives and opt-in plaintiffs alike "confirmed that all [opt-in plaintiffs] share similar primary job responsibilities." *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160 (JPO), 2016 WL 3221148, at *2 (S.D.N.Y. June 9, 2016) (internal citations omitted). The differences between opt-in plaintiffs consisted only of "minor deviations" and the Court identified only one meaningful outlier. *Id.* at *3 (citations omitted). Here, by contrast, discovery has revealed substantial variation in the individual Plaintiffs' job duties in several areas directly relevant to their claims: scheduling, training, marketing, setting business objectives, resolving customer issues, and working during so-called "on-call" time. (*See* Dkt. No. 263 at 18-21.) Put simply, *Jacob* offers Plaintiff no support and instead serves as a stark contrast to the facts at issue here.

---

[5]    Plaintiff also quotes *Jacob* to reiterate an alternative version of the erroneous principle from *Morrison*, discussed above. (Dkt. 265 at 26 ("The determination of whether an employee is exempt from overtime 'goes to the merits of Plaintiffs' claims, not whether they are amenable to classwide resolution.' ") (quoting *Jacob*, 2016 WL 3221148, at *6, *8).) The quoted language appears only within the *Jacob* decision's discussion of the commonality requirement applicable to class actions under Rule 23 – not to certification under Section 216(b). When lifted out of context, the language also obfuscates the key point: at the second stage of certification, the court must determine whether employees are similarly situated with respect to the issues underlying their claims (here, their job duties). The Court is not making determinations on the merits at this stage, it is deciding whether the Court or a jury can or cannot subsequently make blanket determinations on the merits applicable to an entire group of employees based on representative proof.

To complete the false dichotomy, Plaintiff stresses that the instant case is different from two district court cases in which courts denied final certification. (Dkt. 265 at 25-26. (*citing Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) *and Ruiz v. Citibank, N.A.,* 93 F. Supp. 3d 279, 300 (S.D.N.Y.), *reconsideration denied*, No. 10 Civ. 5950 (KPF)(RLE), 2015 WL 4629444 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39 (2d Cir. 2017))*.  Neither *Zivali* nor *Ruiz* dealt with exempt classification issues.  More importantly, neither case supports certification here.

*Zivali* was an off-the-clock case in which the issue was whether the plaintiffs' inconsistent testimony regarding time spent responding to company communications, working through lunch breaks, engaging in company activities, and otherwise working away from the office precluded collective action treatment. *Zivali*, 784 F. Supp. 2d at 460. The court found that such variation in the relevant job duties, paired with highly individualized defenses such as the plaintiff's managers' knowledge of off-duty work and the *de minimis* nature of that work, precluded collective treatment and warranted decertification. *Id.* Other than confirming that a Court should review job duties relevant to Plaintiff's FLSA claims, *Zivali* adds little to the exempt classification issue before this Court. The decision does demonstrate, however, that where testimony regarding after-hours responsiveness reveals substantial variation among opt-in plaintiffs, collective treatment is not appropriate. Here, the Opt-In Plaintiffs have testified to substantial variations in their job duties related to after-hours and weekend work and responsiveness and collective treatment is therefore unwarranted. (*See* Dkt. No. 263 at 18-21.)

Similarly, *Ruiz* was an off-the-clock case addressing whether to certify a collective of employees classified as non-exempt who claimed that they were not paid overtime for all hours worked in excess of 40. The court found that the defendant's policies were legal and appropriate,

and that disparities among putative collective members in the circumstances relevant to their off-the-clock claims—and to the employer's defenses—precluded collective treatment. *Ruiz*, 93 F. Supp. 3d at 300 ("To find otherwise would reduce Section 216(b)'s requirement that plaintiffs be 'similarly situated' to a mere requirement that Plaintiffs share an employer, a job title, and a professed entitlement to additional wages."). As a purely off-the-clock decision, *Ruiz* is a poor factual analogy for the instant case. Nonetheless, it reiterates the well-settled principle that meaningful differences in the facts and circumstances of opt-in plaintiffs regarding issues that will be relevant to the court's adjudication of the merits preclude collective treatment.

## IV.   CONCLUSION

Discovery has revealed that the 15 Opt-In Plaintiffs do not have similar enough job duties to support a one-size-fits-all exemption determination based solely on representative evidence. Rather, the Opt-In Plaintiffs' testimony regarding their job duties, hours, and supervision differed in material respects from each other's, and from Plaintiff's. Consequently, the Court should deny Plaintiff's Motion for Final Certification FLSA Collective Action and dismiss the claims of each Opt-In Plaintiff.

Dated:   October 27, 2017                         Respectfully submitted,
         New York, New York


                                                  By:   __s/ Patrick W. Shea_____
                                                        Patrick W. Shea

                                                  PAUL HASTINGS LLP
                                                  200 Park Avenue
                                                  New York, New York 10166
                                                  (212) 318-6000
                                                  patrickshea@paulhastings.com

                                                  *Attorneys for Defendant*