PATRICK W. SHEA
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
patrickshea@paulhastings.com
(212) 318-6000 (telephone)
(212) 319-4090 (facsimile)

*Attorneys for Defendant*
AT&T Mobility Services LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA LOCURTO, *on behalf of herself and all others similarly situated*,<br><br>                           Plaintiff,<br><br>           -against-<br><br>AT&T MOBILITY SERVICES LLC,<br><br>                           Defendant. | No. 13 Civ. 04303 (AT)(GWG) |

**DEFENDANT AT&T MOBILITY SERVICES LLC'S REPLY IN SUPPORT OF ITS
<u>MOTION FOR CERTIFICATION OF AN INTERLOCUTORY APPEAL</u>**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................... 1

II. THE ORDER SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL. ............. 2

    A. *Novartis* is central to the Order. ............................................................... 2

    B. The *Novartis* administrative exemption analysis is rooted in the controlling deference deemed improper by the Supreme Court. ........................... 5

    C. Denying certification would unduly tax the Court's and parties' resources.......... 8

III. CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Blanchar v. Standard Ins. Co.*,
   736 F.3d 753 (7th Cir. 2013) ................................................................................................... 4

*Caiozzo v. Koreman*,
   581 F.3d 63 (2d Cir. 2009) ....................................................................................................... 5

*Centurion v. Sessions*,
   860 F.3d 69 (2d Cir. 2017) ....................................................................................................... 7

*Chambless v. Masters, Mates & Pilots Pension Plan*,
   815 F.2d 869 (2d Cir.1987) ...................................................................................................... 5

*Christopher v. SmithKline Beechman Corp.*,
   567 U.S. 142, 132 S. Ct. 2156 (2012) ...................................................................................... 6

*Colello v. Bottomline Techs., Inc.*,
   No. 2:14-cv-00297-JAW, 2016 WL 471294 (D. Me. Feb. 5, 2016) ........................................ 7

*Darnell v. Pineiro*,
   849 F.3d 17 (2d Cir. 2017) ....................................................................................................... 5

*eBay, Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388, 126 S.Ct. 1837 (2006) ....................................................................................... 5

*Flood v. Just Energy Mktg. Corp.*,
   904 F.3d 219 (2d Cir. 2018) ..................................................................................................... 8

*Hardt v. Reliance Standard Life Ins. Co.*,
   560 U.S. 242 (2010) ................................................................................................................. 5

*Harold Levinson Assocs., Inc. v. Chao*,
   37 F. App'x 19 (2d Cir. 2002) .............................................................................................. 8, 9

*Harper v. Gov't Emps. Ins. Co.*,
   980 F. Supp. 2d 378 (E.D.N.Y. 2013), *vacated on other grounds*, 586 F.
   App'x 772 (2d Cir. 2014) ......................................................................................................... 7

*Hines v. State Room, Inc.*,
   665 F.3d 235 (1st Cir. 2011) .................................................................................................... 4

*Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*,
   804 F.2d 24 (2d Cir. 1986) ....................................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page

*Kingsley v. Hendrickson*,
    135 S. Ct. 2466 (2015) ............................................................................................................. 5

*Levitian v. Sun Life & Health Ins. Co. (U.S.)*,
    486 F. App'x 136 (2d Cir. 2012) .............................................................................................. 5

*In re Novartis Wage & Hour Litig.*,
    611 F.3d 141 (2d Cir. 2010), *abrogated by Christopher v. SmithKline
    Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156 (2012) ................................................... passim

*Pippins v. KPMG LLP*,
    759 F.3d 235 (2d Cir. 2014) ................................................................................................ 7, 8

*Pippins v. KPMG LLP*,
    921 F. Supp. 2d 26 (S.D.N.Y. 2012), *aff'd*, 759 F.3d 235 (2d Cir. 2014) ................................ 7

*Raffe v. Am. Nat'l Red Cross*,
    No. 5:08-cv-00211, 2011 WL 6019436 (N.D.N.Y. Nov. 30, 2011), *opinion
    amended on reconsideration*, No. 5:08-cv-00211, 2012 WL 140412
    (N.D.N.Y. Jan. 18, 2012) ......................................................................................................... 2

*Reich v. John Alden Life Ins. Co.*,
    126 F.3d 1 (1st Cir. 1997) .................................................................................................... 3, 4

*Reich v. S. New England Telecomms. Corp.*,
    121 F.3d 58 (2d Cir. 1997) ....................................................................................................... 9

*Salinger v. Colting*,
    607 F.3d 68 (2d Cir. 2010) ....................................................................................................... 5

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) .............................................................................. 8

*United States v. Awadallah*,
    202 F. Supp. 2d 17 (S.D.N.Y. 2002) ........................................................................................ 7

*United States v. Ceccolini*,
    435 U.S. 268 (1978) ................................................................................................................. 7

*Varletas v. Holder*,
    566 U.S. 257 (2012) ................................................................................................................. 7

*Viola v. Comprehensive Health Mgmt., Inc.*,
    441 F. App'x 660 (11th Cir. 2011) .......................................................................................... 4

# TABLE OF AUTHORITIES
(continued)

Page

**Other Authorities**

29 C.F.R. § 541.200(a)(1)(3) ...................................................................................................2

69 Fed. Reg. 22,122 (Apr. 23, 2004) .....................................................................................3, 4

I. **INTRODUCTION**

Plaintiffs oppose the motion on three basic grounds. First, they argue that it does not matter if the only decision cited in the body of the Order's substantive analysis of the Opt-In Plaintiffs' primary duty is bad law because it was not necessary to the Court's holding. Next, they attribute to the Second Circuit statements it never made and assert that the only other district courts to consider the effect of *Christopher* on the *Novartis* administrative exemption analysis are "simply incorrect." Finally, they argue without support that there is an unspecified possibility fourteen individual damages trials will not ensue if the Court denies the motion for certification. Plaintiffs are wrong in each respect.

The Order relies on *Novartis* as a direct factual analogy with respect to the Opt-In Plaintiffs' core job duty. Absent that analogy, the regulations and undisputed facts compel the conclusion that the Opt-In Plaintiffs are exempt administrative employees, or at a minimum that there exists a genuine issue of material fact on that issue. The Second Circuit has yet to opine regarding the scope of *Christopher's* abrogation of *Novartis*, but it remained silent on the issue when affirming a district court's decision that deemed the *Novartis* administrative analysis "pure dictum." And Plaintiffs offer no reason to doubt that denying the motion would lead to potentially wasteful discovery, motion practice, and fourteen individual damages trials.

The Order presents a controlling question of law regarding which there is substantial ground for difference of opinion. That question is ripe for appeal and its resolution would materially advance this litigation. The Court should grant the motion and certify the Order for interlocutory appeal pursuant to Section 1292(b).

II.     **THE ORDER SHOULD BE CERTIFIED FOR INTERLOCUTORY APPEAL.**

    A.     *Novartis* **is central to the Order.**

Plaintiffs' argument that "played a minor role in the Court's decision" is belied by the Order itself. Pl. Br., at 1 (ECF 328). *Novartis* is the *only decision* cited in the body of the Court's substantive analysis of the Opt-In Plaintiffs' primary job duty: training store associates to increase sales. Order, at 13-14[1]; 3 (the Opt-In Plaintiffs spent "the majority of their days visiting their accounts' brick-and-mortar locations to train sales associates in selling AT&T products and promoting the sale of AT&T products."). The Order expressly relies on *Novartis* as the basis for analyzing the discretion and independent judgment the Opt-In Plaintiffs' exercised with respect to that primary duty. *Id.* at 14.[2]

Analyzing this core duty, the Order acknowledges that the Opt-In Plaintiffs "almost uniformly testified that they tailored" their training "based on their observations of sales associates." Order, at 13. The Order also notes that many Opt-In-Plaintiffs "decided which trainings to deliver based on sales associates' needs." *Id.* On their face, these facts show the Opt-

---

[1] (citing *In re Novartis Wage & Hour Litigation*, 611 F. 3d 141 (2d Cir. 2010), *abrogated by Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 132 S. Ct. 2156 (2012)). Throughout this brief, AT&T refers to the Order regarding Plaintiffs' Motion for Partial Summary Judgment (ECF 320) as the "Order."

[2] Plaintiffs also assert that *Novartis* does not matter because the Order concludes the Opt-In Plaintiffs "do not exercise discretion and independent judgment with respect to the four other areas of the job" analyzed therein. Pl. Br., at 5. In other words, they argue that even if the Opt-In Plaintiffs exercised discretion and independent judgment with respect to their primary job duty—training sales associates to sell AT&T products and increase sales—they should be deemed non-exempt merely because they considered management input when setting their schedules, occasionally had managers ride along with them, had a limited budget to resolve customer issues, were approved by managers to run their own promotions, and only in some instances created their own marketing materials. Order, at 11-18. This is plainly wrong. Because the Opt-In Plaintiffs' primary job duty, the duty which they spent "the majority of their days" performing, involved the exercise of discretion independent judgment—a conclusion the facts and regulations compel in the absence of *Novartis*—none of these findings concerning peripheral duties would be sufficient to support a summary judgment determination that they were non-exempt. Order, at 3; *see* 29 C.F.R. § 541.200(a)(1)(3) (third prong of administrative exemption is whether an employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance"); *see e.g., Raffe v. Am. Nat'l Red Cross,* No. 5:08-cv-00211, 2011 WL 6019436, at *13 (N.D.N.Y. Nov. 30, 2011), *opinion amended on reconsideration*, No. 5:08-cv-00211, 2012 WL 140412 (N.D.N.Y. Jan. 18, 2012) (granting summary judgment to defendants on administrative exemption defense where plaintiff's primary duties involved the exercise of discretion and independent judgment, despite facts that plaintiff made simple decisions when performing certain services, needed a supervisor's approval when performing most actions, and consulted with senior staff regarding presentations and marketing events).

In Plaintiffs exercised discretion and independent judgment with respect to their primary job duty.

But looking exclusively to *Novartis*, the Order stresses that "[i]n a similar context, however, the Second Circuit has held that pharmaceutical sales representatives' authority to decide 'when and how to deliver' the company's predetermined 'core message' does not establish the exercise of discretion or independent judgment because the representatives have 'no role in formulating the 'core messages.''" Order, at 14 (citing *Novartis*, 611 F.3d at 156). In line with the *Novartis* decision, which relied on granting controlling deference to the Secretary's interpretation of the exemption, the Court opined that the Opt-In Plaintiffs' customization of training amounted merely to the use of "skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." Order, at 14 (citations omitted).

This central analysis depends entirely on *Novartis*. The only other authority the Order identifies regarding the Opt-In Plaintiffs' core duty is the regulations. Order, at 13-14. And the regulations confirm that these kinds of marketing and sales-focused training activities involve discretion and independent judgment—not mere skill. For example, the regulations expressly endorse *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 3–5 (1st Cir. 1997), a decision holding that insurance marketing representatives with nearly identical duties to the Opt-In Plaintiffs are exempt from FLSA overtime requirements as administrative employees. *See* 69 Fed. Reg. 22,122, at 22,145 (Apr. 23, 2004). Like the Opt-In Plaintiffs with respect to store associates, the insurance marketing representatives at issue in *John Alden* cultivated relationships with independent insurance agents and trained them regarding their company's products in order to increase sales. *John Alden*, at 4. They updated agents on their products and pricing, discussed with agents how their products would meet their clients' needs, and advised agents on how best to market their products against competing products. *Id.* The First Circuit held that these

3

activities were "more in the nature of 'representing the company' and 'promoting sales,'" both of which are examples of administrative work under the regulations. *Id.* at 10.

When the DOL issued revised FLSA regulations in 2004, it specifically endorsed the *John Alden* decision. *See* 69 Fed. Reg. at 22,145. In the wake of *John Alden* and those revised regulations, courts have consistently held that the type of work performed by the John Alden marketing representatives and the Opt-In Plaintiffs is exempt administrative work. *See, e.g.*, *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 755, 758 (7th Cir. 2013) (granting summary judgment to employer; finding that employee whose primary duties involved "promoting sales, advising sales staff, and fielding questions" was properly classified under the administrative exemption); *Hines v. State Room, Inc.*, 665 F.3d 235, 237, 242 (1st Cir. 2011); *Viola v. Comprehensive Health Mgmt., Inc.*, 441 F. App'x 660, 662–63 (11th Cir. 2011) (denying plaintiff's summary judgment motion where plaintiff "worked alone more than seventy-five percent of the time and generally without supervision," was required to analyze her market, write business plans, and make decisions regarding marketing and promotional events).

In *Novartis*, the Second Circuit rejected this consensus and the plain reading of the regulations because it opined that the Secretary of Labor's contrary opinion as *amicus curiae* was entitled to "controlling deference." *Novartis*, 611 F.3d at 149 (internal citation and quotation marks omitted). If the administrative exemption analysis in *Novartis* is no longer good law, the Court's analysis of the Opt-In Plaintiffs' core job duty would lack support. The remaining authorities—the regulations and analogous case law—indicate that the work performed by the Opt-In Plaintiffs was administratively exempt.[3]

---

[3] Plaintiffs state the obvious by noting that "section 1292(b) authorizes certification of orders for interlocutory appeal, not certification of questions." Pl. Br., at 6 (citing *Isra Fruit Ltd. v. Agrexco Agr. Exp. Co.*, 804 F.2d 24, 25 (2d Cir. 1986)). They also omit the obvious—that "[o]f course, in certifying an order for interlocutory review it is helpful if the district judge frames the controlling question(s) that the judge believes is presented by the order being certified." *Isra Fruit Ltd.*, 804 F.2d at 25.

4

### B. The *Novartis* administrative exemption analysis is rooted in the controlling deference deemed improper by the Supreme Court.

Plaintiffs contend that *Christopher* did not abrogate the *Novartis* administrative exemption analysis because the Supreme Court only directly addressed the outside sales exemption. Pl. Br., at 7-8 (citations omitted). Rather than analyze either decision, Plaintiffs argue broadly that when the Supreme Court reverses a Second Circuit decision in part, the balance of the decision remains good law. *Id.* That may be true where a partially overruled Second Circuit decision analyzed discrete issues pursuant to unrelated standards. But in *Novartis*, the administrative exemption analysis was—like the outside salesperson analysis—expressly based on the standard of "controlling deference" to the Secretary's brief. *Novartis*, 611 F.3d at 149 (internal citation and quotation marks omitted). And a standard overruled by the Supreme Court is no longer good law in the Second Circuit, even if the factual context is different or the Supreme Court did not identify by name every case—or portion thereof—in which the Second Circuit applied the overruled standard.[4]

In *Novartis*, the Second Circuit analyzed whether pharmaceutical sales representatives ("PSRs") were exempt from the FLSA's overtime requirements either as outside sales employees or administrative employees. *Id.* The Secretary, as *amicus curiae*, argued that neither exemption applied to the PSRs. *Id.* The Second Circuit held that the under "regulations *as interpreted by the Secretary*, the [PSRs] are not outside salesmen or administrative employees; and that the

---

[4] *See Salinger v. Colting*, 607 F.3d 68, 76 (2d Cir. 2010) (holding that the Supreme Court's decision in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S.Ct. 1837 (2006) abrogated the Second Circuit's preliminary injunction standard in copyright cases, despite the fact that *eBay* addressed a Federal Circuit decision regarding a patent case); *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) (recognizing that the Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015) overruled the subjective standard established in *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009) for determining Due Process Clause deliberate indifference claims, despite the fact that *Kingsley* addressed a Seventh Circuit decision and did not discuss *Caiozzo*); *Levitian v. Sun Life & Health Ins. Co. (U.S.)*, 486 F. App'x 136, 141 (2d Cir. 2012) (recognizing that the Supreme Court in *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) abrogated exclusive reliance on the five-factor test from *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir.1987) regarding attorneys' fees, that was previously mandatory in the Second Circuit, despite the fact that *Hardt* addressed a Fourth Circuit decision and did not discuss *Chambless*).

Secretary's interpretations are entitled to '*controlling' deference*." *Id.* (emphasis added) (internal citation omitted). The court thus characterized its task as merely applying the Secretary's interpretation to the facts at bar. *Id.* at 153 (reasoning that the court owes "the Secretary's interpretation deference, and we turn to the question of its applicability to the present cases").

With respect to the administrative exemption analysis, the Second Circuit again acknowledged it was effectively handing the reins to the Secretary:

> The Secretary takes the position that for the administrative exemption to apply to the [PSRs], the regulations require a showing of a greater degree of discretion, and more authority to use independent judgment in matters of significance, than Novartis allows the [PSRs]. Again *we find it appropriate to defer to the Secretary's interpretation*.

*Id.* at 156. Given the controlling deference it granted to the Secretary's opinion, the Second Circuit saw no need to cite in its analysis *any* authority other than the regulations and the Secretary's interpretation of them. *Id.* at 155-57.

In *Christopher*, the Supreme Court granted *certiorari* to resolve a split between *Novartis* and a Ninth Circuit decision holding that PSRs were exempt. *Christopher*, 567 U.S. at 153. The Court affirmed the Ninth Circuit decision and expressly abrogated *Novartis*. *Id.* The Court held that granting controlling deference to the Secretary's interpretation—for which the DOL engaged in no notice-and-comment rulemaking—would result in unfair surprise and was therefore improper. *Id.* at 155-59. In other words, the Second Circuit erred in *Novartis* by relying on the Secretary's interpretation. Under the proper standard, PSRs were exempt as outside salespeople. *Id.* at 169. The Supreme Court did not analyze the administrative exemption analysis because neither the district court nor Ninth Circuit reached that question in *Christopher*. *Id.* at 152 n.9.

Because the Supreme Court held in *Christopher* that the Second Circuit should not have deferred to the Secretary's interpretation of the FLSA regulations, it is no wonder the only

6

district courts to squarely address the issue prior to the Order have found that the *Novartis* administrative exemption analysis was no longer good law. *See Pippins v. KPMG LLP*, 921 F. Supp. 2d 26, 51 (S.D.N.Y. 2012) ("*Pippins I*"), *aff'd*, 759 F.3d 235 (2d Cir. 2014); *Harper v. Gov't Emps. Ins. Co.*, 980 F. Supp. 2d 378, 391–92 (E.D.N.Y. 2013), *vacated on other grounds*, 586 F. App'x 772 (2d Cir. 2014); *Colello v. Bottomline Techs., Inc.*, No. 2:14-cv-00297-JAW, 2016 WL 471294, at *12 n.20 (D. Me. Feb. 5, 2016).[5]

Plaintiffs argue that in *Pippins v. KPMG LLP*, 759 F.3d 235, 241 (2d Cir. 2014) ("*Pippins II*"), the Second Circuit "recognized" that *Novartis* was abrogated by *Christopher* only "as to the 'outside salesman' determination." Pl. Br., at 7. It did not. To be sure, *Pippins II* cited to *Novartis* for the general requirements of the administrative exemption—language derived *directly* from the regulations rather than the Secretary's interpretation or the Second Circuit's substantive analysis in *Novartis*. *Pippins II,* at 241. And *Pippins II* did indicate without explanation that *Novartis* was "abrogated on other grounds." *Id.* What remains unclear—and requires clarification on appeal—is whether the "other grounds" on which the Second Circuit believes *Christopher* abrogated *Novartis* was the controlling deference granted to the Secretary's interpretation that guided the Second Circuit's substantive analysis of *both* exemptions.

Notably, the district court in *Pippins I* held that *Christopher* rendered the administrative exemption analysis in *Novartis* "pure dictum." 921 F. Supp. 2d at 51. The Second Circuit affirmed that decision and did not express any disagreement with the district court's finding

---

[5] Plaintiffs' conclusory statement that these district courts "were simply incorrect" does nothing to advance the ball. Pl. Br., at 7. Plaintiffs also miss the mark by citing to partially overruled multi-issue cases that share a fundamental distinction from *Novartis*—the Second Circuit did not apply to each issue the *same standard* later deemed improper by the Supreme Court. Pl. Br., at 8 (citing *Heredia v. Sessions*, 865 F.3d 60, 65 (2d Cir. 2017) (restating *Centurion's* holding without analysis); *Centurion v. Sessions*, 860 F.3d 69, 72 n.1 (2d Cir. 2017) (Supreme Court decision in *Varletas v. Holder*, 566 U.S. 257 (2012), that Illegal Immigration Reform and Immigrant Responsibility Act of 1996 did not apply retroactively, "left untouched" the unrelated issue of whether that Act overruled prior case law); *United States v. Awadallah*, 202 F. Supp. 2d 17, 49 (S.D.N.Y. 2002) (Supreme Court holding in *United States v. Ceccolini*, 435 U.S. 268 (1978), reversing Second Circuit decision solely on the dispositive ground of attenuation, did not abrogate the separate and distinct issue of whether exclusionary rule applies to charges of perjury after evidence is unlawfully obtained).

7

regarding the *Novartis* abrogation. *Pippins II*, 759 F.3d 235. And more recently, the Second Circuit noted *without qualification* that "[t]he Supreme Court's decision in *Christopher* abrogated our ruling in *In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010), which had concluded on similar facts that pharmaceutical sales representatives were not within the scope of the outside salesman exemption[.]" *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, at 230 n.6 (2d Cir. 2018). The Order should be certified for interlocutory appeal so the Second Circuit can resolve the open question, put an end to conflicting interpretations, and avoid the heavy burden on the court and litigants that would result from postponing the appeal.

### C. Denying certification would unduly tax the Court's and parties' resources.

Plaintiffs argue it is "well-established that the Opt-in Plaintiffs can present representative testimony on damages in a single trial/evidentiary hearing, *under the right circumstances*." Pl. Br., at 9 (emphasis added). They fail to identify those circumstances or explain how—and even whether—they are present in this case. Plaintiffs instead cite without analysis to three cases, none of which support their position.

*Tyson Foods* is a collective action certification decision in which the Supreme Court deemed acceptable representative testimony about the amount of time it took employees to don and doff specific clothes as part of a uniform process at a single facility. *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016). Here, by contrast, each Opt-In Plaintiff work in multiple different locations with widely varying schedules. Order, at 3-4; 11-12.

In *Harold Levinson*, the Second Circuit rejected the plaintiffs' attempt to rely on the average weekly hours during the period for which time records *were* available to prove by extrapolation the average weekly hours during the period for which time records *were not* available. *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 21-22 (2d Cir. 2002). Because the records showed that the "hours tended to fluctuate from one week to the next" and from

8

department to department, the Second Circuit held that the actual weekly hours worked by each employee during the unrecorded period "cannot be derived as a matter of reasonable inference" from the existing records, which were largely based on departmental averages rather than individual records. *Id.* Here, Plaintiffs lack any recorded basis—direct or indirect—for their hours worked. Damages will turn on individual testimony, which varies too widely for a representative sample to be probative.

Plaintiffs' unexplained reliance on *Reich* is similarly misplaced. There, the Second Circuit approved the use of representational evidence from employees at three job sites because "there was actual consistency among those workers' testimony . . . and the periods at issue were the employees' lunch hours, which are *predictable*, daily-recurring periods of *uniform* and *predetermined* duration." *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 68 (2d Cir. 1997) (emphasis added). Here, however, the Opt-In Plaintiffs worked in different locations for different periods of time and the periods at issue are far from predictable, uniform, or predetermined. Order, at 3-4; 11-12.

If the Court declines to certify the Order for interlocutory appeal, this litigation will proceed to discovery regarding each of the fourteen Opt-In Plaintiffs, written and deposition testimony regarding liquidated damages and the statute of limitations, and motion practice regarding admissibility of evidence and compensability of time. Then the Court and the parties will need to conduct fourteen individual damages trials. A reversal above, on the other hand, would yield a trial on liability that may dispose of the entire case. Even if it did not, or if the Second Circuit affirmed, clarification on the key *Novartis* issue could increase the likelihood of a settlement. In any event, granting certification would materially advance this litigation.

### III.  CONCLUSION

For the foregoing reasons, this Court should certify the Order for interlocutory appeal to the Second Circuit regarding the controlling question of whether and to what extent *Christopher* abrogated the administrative exemption analysis in *Novartis*.

Dated:  November 13, 2018          Respectfully submitted,
        New York, New York


                                   By:   /s/ Patrick W. Shea
                                         Patrick W. Shea

                                   PAUL HASTINGS LLP
                                   200 Park Avenue
                                   New York, New York 10166
                                   (212) 318-6000
                                   patrickshea@paulhastings.com

                                   *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2018, a copy of the foregoing Defendant's Reply in Support of its Motion for Certification of an Interlocutory Appeal, dated November 13, 2018, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Patrick W. Shea
Patrick W. Shea