1          UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF NEW YORK
2

3  --------------------------------------X
                                        :
4  LISA LOCURTO,                        :   13-CV-04303 (AT)
                                        :
5                      Plaintiff,       :
                v.                      :
6                                       :   500 Pearl Street
   AT&T MOBILITY SERVICES LLC,          :   New York, New York
7                                       :
                      Defendant.        :   October 31, 2018
8  --------------------------------------X

9
           TRANSCRIPT OF CIVIL CAUSE FOR HEARING
10     BEFORE THE HONORABLE GABRIEL W. GORENSTEIN
              UNITED STATES MAGISTRATE JUDGE
11

12 APPEARANCES:

13 For the Plaintiff:        STEVEN I. ADLER, ESQ.
                             Mandelbaum, Salsburg, Gold, Lazris
14                            & Discenza PC
                             155 Prospect Avenue
15                           West Orange, New Jersey 07052

16
   For the Defendant:        PATRICK W. SHEA, ESQ.
17                           EMILY R. PIDOT, ESQ.
                             Paul Hastings LLP
18                           200 Park Avenue
                             New York, New York 10166
19

20
   Court Transcriber:        MARY GRECO
21                           TypeWrite Word Processing Service
                             211 N. Milton Road
22                           Saratoga Springs, New York 12866

23

24

25


   Proceedings recorded by electronic sound recording,
   transcript produced by transcription service

1          THE CLERK:  <u>Lisa LoCurto v. AT&T Mobility Services</u>,

2   Docket Number 13-CV-4303.  Counsel, state your name for the

3   record.

4          MR. ADLER:  Good afternoon, Your Honor.  Steven

5   Adler; Mandelbaum Salsburg for the plaintiffs.

6          MR. SHEA:  Good afternoon, Your Honor.  Patrick Shea

7   for AT&T Mobility Services; Paul Hastings.

8          MS. PIDOT:  And Emily Pidot, also of Paul Hastings

9   for AT&T.

10          THE COURT:  Okay.  Welcome.  You can be seated if

11   you're not speaking.  We're here based on a letter to Judge

12   Torres.  She asked me to handle it.  I'm thinking maybe we

13   should start with the last issue.  It affects everything else.

14   I guess this is a request from the defendant to stay discovery

15   notice and so forth pending this petition.  You know, there's

16   case law about stays.  We have standards.  Showings have to be

17   made.  I certainly couldn't grant it based upon the sentence.

18   I'm not going to prevent you from seeking a stay if you want

19   to file a motion for a stay.  But I think we have to proceed

20   on the assumption for right now there is no stay.  And then if

21   we have to suddenly halt things because I grant a stay, then

22   we would suddenly halt things.  But I guess the motion will be

23   made to me, not Judge Torres.  And I'll waive the pre-motion

24   conference and you can follow my individual practices if you

25   really want to pursue it.

1          Okay.  So with that out of the way, I guess the next

2   -- well maybe I should turn to plaintiff to let me know which

3   of these still needs resolution.

4          MR. ADLER:  Yes, Your Honor.  Thank you.  If we're

5   looking at the October 5th joint letter, eight items there.

6   Number one, the names and addresses of class members.  That

7   has been supplied to us.  So that's done.  I apologize, I'm

8   late on getting to counsel the form of class notice.  I should

9   have it to them by the end of this week.  I don't want to

10  shortchange them in terms of their time to respond, but I'm

11  hoping we can get that squared away in the next week or so.

12  The other items --

13          THE COURT:  How many --

14          MR. ADLER:  Yes, Your Honor?

15          THE COURT:  -- class members are there

16  approximately?

17          MR. ADLER:  There are approximately 62.

18          THE COURT:  Six two?

19          MR. ADLER:  Six two.

20          THE COURT:  Very manageable.

21          MR. ADLER:  Yes.  The reason it's short is that a

22  lot of people who worked at AT&T Mobility signed class

23  arbitration waivers.

24          MR. SHEA:  I just have a modest amendment.  There's

25  62 altogether that include some opt ins under the FLSA

4

1  collective action who are not members of the Rule 23 class.

2  Rule 23 class I think is about 56.

3          THE COURT:  56.  Okay.

4          MR. ADLER:  There are 14 in the FLSA collective.

5          THE COURT:  All right.

6          MR. ADLER:  Number three is something for down the

7  road but we do intend to make an application concerning the

8  three-year statute of limitations under the FLSA and on the

9  issue of liquidated damages.

10          THE COURT:  Okay.  Except you also seem to seek

11  discovery on it.  I'm trying to understand, and I didn't check

12  that carefully, is discovery not over?  What's the story with

13  discovery?

14          MR. ADLER:  The discovery initially was on the FLSA

15  class, so we had finished that.  But Judge Torres just

16  recently certified the Rule 23 classes under the New York and

17  New Jersey Wage and Hour Laws.

18          THE COURT:  Okay.  So the theory is in your view,

19  and maybe in their view, this to be -- and again, putting the

20  stay aside, there's now going to be a period of Rule 23 class

21  discovery.  Is that it?

22          MR. ADLER:  Not exactly, Your Honor.

23          THE COURT:  Okay.

24          MR. ADLER:  Just Torres granted summary judgment for

25  the class representative and on the FLSA class and she also --

1          THE COURT:  As to the managerial exception or

2  whatever it is.

3          MR. ADLER:  Administrative, yes.

4          THE COURT:  Administrative exception.

5          MR. ADLER:  Correct.

6          THE COURT:  Okay.

7          MR. ADLER:  And as to the state law claims, Judge

8  Torres also granted summary judgment as to Lisa LoCurto's

9  state law claims finding that the New York and New Jersey law

10  in essence mirrors the FLSA.  And for the reasons she granted

11  certification of the -- excuse me, summary judgment on the

12  FLSA claim, she also granted summary judgment on the New York

13  and New Jersey Wage and Hour claim as to Ms. LoCurto.  We

14  think it's really pro forma but once the notice goes out to

15  the 56 odd additional Rule 23 class members, we anticipate

16  being entitled to summary judgment as to them for the same

17  reason that Judge Torres granted summary judgment on the state

18  law claims as to Ms. LoCurto.  So we don't believe there's any

19  additional fact discovery that's necessary as to that claim.

20  The only discovery that we have not taken yet is from the

21  plaintiff's point of view some very limited discovery as to

22  damages.  We think --

23          THE COURT:  But I thought you also wanted

24  willfulness discovery.

25          MR. ADLER:  Yes, that is also correct, Your Honor.

6

1   There was one deposition that had been taken of a managerial

2   level person at AT&T Mobility and some of that does relate to

3   the issue of willfulness.  And if I might, Your Honor, there

4   was a lawsuit previously filed in federal court in Florida

5   also for account executives back in 2012 or '13 that settled

6   in 2013.  And we believe the fact that they were on notice of

7   the same claims in the prior suits and they at one point --

8          THE COURT:  I really don't want to get into the

9   merits of your willfulness argument.

10          MR. ADLER:  Okay.  Well, Your Honor is --

11          THE COURT:  Unless we have to.

12          MR. ADLER:  No, no, Your Honor is correct.  I would

13   like probably one deposition on the issue of willfulness, but

14   beyond that, I don't think we need any other discovery.

15          THE COURT:  So you want a deposition on willfulness,

16   and for damages what do you want?

17          MR. ADLER:  I need to see who's in the case after

18   the notice goes out.  But essentially we need AT&T Mobility

19   phone records because these employees did not punch in and

20   out.  They were treated as if they were exempt and --

21          THE COURT:  You want to phone records to show the

22   time they were on the phone?

23          MR. ADLER:  Correct.

24          THE COURT:  Okay.  What else?  You need depositions

25   on this or just documents?

1          MR. ADLER:  I believe we probably just need

2    documents, Your Honor.

3          THE COURT:  Okay.  So you want some documents for

4    damages and the deposition on willfulness?

5          MR. ADLER:  Yes.

6          THE COURT:  And then -- and your vision after that

7    happens, while that's happening, a Rule 23 notice is going

8    out.  And then after you get your discovery you're going to

9    want to make a motion for summary judgment on the two to three

10   year period, right?

11         MR. ADLER:  Yes.

12         THE COURT:  And on damages or not?

13         MR. ADLER:  No.  Just on the willfulness issue for

14   liquidated damages under the FLSA and damages -- excuse me,

15   the motion on the statute of limitations and it should be a

16   three year statute under the FLSA.  It's almost the same

17   argument as the liquidated damage argument.  But beyond that

18   what I envision is some representative testimony on damages at

19   the time of the trial of the hearing.  And what I would

20   propose is after we understand how many of these 56 or so

21   additional people are remaining in the case, we would identify

22   those that we intend to call as witnesses to provide the

23   evidentiary  support for the damage calculations.  And I think

24   it's only fair that if these people are going to come in and

25   testify as to those issues that we identify them.  And if

8

1   defense counsel wishes to take depositions of those

2   representatives, I think that would be fair.

3          THE COURT:  Unfortunately, I think we need to talk

4   about this in order to figure out whatever discovery

5   defendants are going to want which is your vision is that

6   there are not 56 plaintiffs testifying about their damages?

7          MR. ADLER:  Correct.

8          THE COURT:  And what makes someone representative of

9   other people?

10         MR. ADLER:  Based on where they work, based upon the

11  years they worked, based upon their job duties.

12         THE COURT:  No, but what do they -- each person in

13  some way needs to say I worked X number of hours, or on the

14  average X number of hours, you know, during these time

15  periods.  How is that going to get into evidence through some

16  other person?

17         MR. ADLER:  I believe under the <u>Tyson Food</u> case and

18  other cases that we can proffer certain representative sample

19  of the plaintiffs so Your Honor, or whoever is hearing the

20  case, doesn't have to have 62 individuals march up and get on

21  the stand and testify about their exact hours.  In fact,

22  because we do not have records when they punched in and

23  punched out, I believe -- and we haven't spoken to these

24  putative class members yet, but I believe the testimony is

25  generally going to be what they did in the morning to get

1  ready to go to the various stores, what types of things they

2  were required to do at night, and I believe the case law

3  supports calling a representative sample of them to provide

4  the testimony that would then be applicable to the class in

5  terms of what the average overtime hours were.

6         THE COURT:  So your vision is you're going to tell

7  them who these representatives are and then those are the ones

8  they get to depose?

9         MR. ADLER:  Yes.

10         THE COURT:  Okay.  I think I should hear from

11  defendants as to what discovery they want.

12         MR. SHEA:  Your Honor, with respect to the newly

13  certified Rule 23 class, once the opt out period ends and we

14  know who's in, we need liability and damages discovery from

15  each of those individuals.  Under liability fraud, Mr. Adler

16  makes the point that Judge Torres did grant him summary

17  judgment but that doesn't mean we're not entitled to develop

18  the facts that are relevant to liability.  In particular, what

19  Judge Torres ruled as a matter of law was that the individuals

20  whose evidence she had before her did not exercise discretion

21  and independent judgment on significant matters.  It's one of

22  the elements of showing that someone is exempt from overtime.

23  We respectfully think the Court erred in that regard because

24  the things that she focused on really did not indicate a lack

25  of discretion and judgment.  But in any event, I need to be

1  able to make my record because if I have to go to the Second

2  Circuit on this, I need to be able to show exactly the

3  discretion and judgment that each of these individuals

4  exercised.  That's the record I need to build to be able to

5  show that if you gave me the benefit of every inference, which

6  as the person opposing summary judgment I'm entitled to, it

7  would be up to a jury to decide this and not a Court on

8  summary judgment.  Mr. Adler's proposal --

9          THE COURT:  I think hasn't that train left the

10  station as to where --  I mean I know you disagree with it,

11  but it seems to me Judge Torres said summary judgment, then

12  all these people are non-exempt.

13          MR. SHEA:  I don't think she did.  If you look at

14  it, Your Honor, she cited to the specific testimony of the

15  individuals who had been deposed there.

16          THE COURT:  No, I know that's what she cited to, but

17  that's not how she ended up.  She felt you were treating them

18  all the same way based upon the classification and she made a

19  decision about what they were actually doing based on I guess

20  a sample.  And I know you disagree with it.  Maybe it's a

21  great appeal.  Let me just check.  Is it your view that she's

22  ruled on liability as to the whole class?

23          MR. ADLER:  She's clearly done that as to the FLSA

24  collective and I believe based on her ruling for Ms. LoCurto

25  under the state law that she will rule the same way once we

11

1   make the application --

2           THE COURT:  Oh, right.  She hasn't ruled on the Rule

3   23 class.  She only ruled on that one person.

4           MR. ADLER:  Just the named plaintiff.

5           THE COURT:  Right.  And you plan to move for summary

6   judgment on the class as to liability --

7           MR. ADLER:  Yes.

8           THE COURT:  -- resting presumably on whatever

9   arguments you made as to LoCurto.

10          MR. ADLER:  And the judge's findings as to LoCurto

11  on the state law claims which in essence were New York and New

12  Jersey laws, the same as the --

13          THE COURT:  Right.  So he's saying before you, or --

14  yes, he wants to be able to put it in evidence to oppose your

15  motion for summary judgment as to individuals and what they

16  may or may not have done.

17          MR. SHEA:  Correct.

18          THE COURT:  So it had slipped my mind.  She hadn't

19  actually ruled on the Rule 23 class as liability yet.  So on

20  what basis would you oppose their obtaining discovery of your

21  -- I'm not saying it's necessarily a deposition of everyone

22  but who knows?  What's the objection of obtaining some

23  discovery from either some representative sample or all of

24  your people?

25          MR. ADLER:  Well, I think based on the judge's

1   reasoning and her findings it really is unnecessary because it

2   was very clear based on the evidence that was presented and it

3   was more than just a sample of those 14, we presented the

4   Court with all the deposition transcripts and the like and --

5            THE COURT:  Of how many people?

6            MR. ADLER:  I believe there were 14.

7            THE COURT:  Right.  14.  Okay.

8            MR. ADLER:  But beyond that, I think the judge found

9   that even if they exercised the level of judgment and

10  discretion that the company was arguing they had, even

11  applying all of the facts in a light most favorable to the

12  defendant, they were not involved in any matters of

13  significance.  And opening up to additional discovery based on

14  what the company's contending these people's levels of

15  authority and discretion were is not going to change anything.

16  In other words, she did consider all of the facts in the light

17  most favorable to the defendant and she did that and found

18  that they fell far short of coming under the administrative

19  exemption.

20           THE COURT:  Well, but now we have a larger group.

21  Right?

22           MR. ADLER:  We do, but that won't change the

23  position the company's taking concerning what their specific

24  job duties are and the areas which they contend these

25  individuals exercise judgment.

1          THE COURT:  So are you willing to have this decided

2   based upon their description of the job duties and without any

3   reference to testimony of your people?

4          MR. ADLER:  No, I don't believe that's what I'm

5   saying.

6          THE COURT:  Okay.  Because if you're not, then it

7   seems to me the testimony of your people is relevant.

8          MR. ADLER:  Again, I don't believe it is for the

9   reasons I stated.

10          THE COURT:  If you're willing to forego using it,

11   then you can put your money where your mouth is.  But if

12   you're not, then we're back to the same problem.

13          MR. ADLER:  Well, could I --

14          THE COURT:  Think about it?

15          MR. ADLER:  Yeah.  Let me think about that, Your

16   Honor.  Now, if we do move on to discovery, assuming I do want

17   to provide, as we did before, the evidence on these

18   depositions, the other issue that I see, and I think Your

19   Honor is aware of, is if there is going to be some discovery,

20   it clearly needs to be very limited.

21          THE COURT:  We can talk about that.  But the

22   threshold issue, since we're making the argument, was whether

23   you're going to rely merely on their descriptions in which

24   case I might say sure, no discovery, let's do it just based on

25   their descriptions.  But assuming for the moment you don't go

1  that route, now we're at a point where he wants discovery as

2  to people other than the 14.  And I understand you're opposing

3  that.  And I haven't quite finished with him.  So let me

4  finish now.

5         So your view is you want all, whatever the number

6  is, 50 -- no, 56 minus 14, 42 of the remainders?

7         MR. SHEA:  There's actually -- there's people who

8  are in both so there's an overlap.  So it's actually 56 who

9  are in the state and nine who are in the FLSA and not in the

10  state.  And I think there are five who are in both.

11         THE COURT:  Okay.  So I don't know how the 14 fit.

12  So you're looking for I assume 40 or so depositions.

13         MR. SHEA:  Approximately.

14         THE COURT:  Okay.  So you know, again, people have

15  not given me any case law.  I believe there is case law on

16  this which says that you're not necessarily entitled to 100

17  percent, that you might just be entitled to some sample of it.

18  Are you aware of such case law?

19         MR. SHEA:  I am aware of case law.  In general, my

20  experience with that has been that it applies when there are

21  very large classes.  I think in a class of this size where

22  it's practical to take the entire group, especially with short

23  depositions, I think sampling would not make sense especially

24  because in a Rule 23 class under the Supreme Court's decision

25  in Walmart v. Dukes, I'm entitled to put each of those

1   individuals on the stand and assert any defense I would have

2   for them in an individual case.  That's what the Supreme Court

3   said in <u>Dukes</u> because anything else --

4          THE COURT:  So they've now overturned all the laws

5   that says that you can you sampling?

6          MR. SHEA:  With respect --

7          THE COURT:  Even when there's thousands of people?

8          MR. SHEA:  But with respect to sampling, there has

9   to be a process in which I do not forfeit a defense I would

10  have in an individual case.  The Supreme Court in <u>Dukes</u> said

11  that would violate the rules enabling act because Rule 23 is a

12  procedural mechanism that can't cost you an ability to make a

13  substantive defense.

14         THE COURT:  Okay.  How are you going to determine --

15  and you're saying in order -- I mean I think you're

16  responsible for knowing some of these defenses.  If they sign

17  some arbitration agreement, you would know that.

18         MR. SHEA:  Right.  No, the defense I would have

19  would be on liability, that each of these individuals did

20  exercise discretion and independent judgment on significant

21  matters.

22         THE COURT:  Okay.  Well then you're now saying you

23  cannot have sampling.  Even if there were 10,000 people, you'd

24  be entitled to depose all of them.

25         MR. SHEA:  Unless -- no.  I think the position, and

16

1   we've said this in our papers to the Second Circuit, if there

2   was no dispute that everyone did the same thing -- in other

3   words, if you had an employer who had a manual out there --

4           THE COURT:  No, I'm talking about in this case.  If

5   there were 10,000 people -- there is a dispute.

6           MR. SHEA:  Right.

7           THE COURT:  If there was 10,000 people in the class,

8   you're saying you're entitled to depose all of them.

9           MR. SHEA:  I would --

10          THE COURT:  You're saying that's what Dukes says.

11          MR. SHEA:  If there are differences between what

12  they did, absolutely.  And I think there are differences

13  between --

14          THE COURT:  Right.  So the answer is yes.

15          MR. SHEA:  Yes.

16          THE COURT:  So all that law, that Rule 23 sampling

17  is out the window.

18          MR. SHEA:  Well again, it depends on the issue.  I'm

19  talking here about --

20          THE COURT:  Well, I think there are cases where it

21  is not known one way or the other whether there might be some

22  defenses to a particular class member and the courts have

23  nonetheless allowed sampling.

24          MR. SHEA:  So the sampling case that Mr. Adler

25  referred to, Tyson Foods v. Bouaphakeo, was not a Rule 23

1   case.  So <u>Dukes</u> was not directly implicated.  It wasn't a

2   rules enabling act.  It was under 29 USC 216(b).  And there,

3   for very discrete things, how long it takes for you to don and

4   doff protective equipment, the Court said you can use sampling

5   to determine damages, not liability.  So here, it's a very

6   different thing.  Duties vary greatly.  It's not just people

7   working on the same line and how long it takes to put on

8   clothing.  It's how they handle the particular set of doors,

9   doors they were assigned to, and how they develop the

10  marketing plans for them and how they increase AT&T sales in

11  them.  And even Judge Torres characterized some people as

12  likely exempt but outliers.  We need to figure out how many of

13  the 53 are also outliers, Your Honor.  And that's what I need

14  both discovery, and depending on what discovery yields, if

15  it's not amenable to summary judgment, a trial on that.

16          THE COURT:  Well, that's down the road.

17          MR. SHEA:  Right.

18          THE COURT:  I'm not concerned with a trial.  I'm

19  just concerned with discovery.

20          MR. SHEA:  I certainly need discovery on that and --

21          THE COURT:  Okay.  I mean I don't know how I can,

22  you know, decide this based upon an oral application and two

23  sentences in letters.  So once again, you know, obviously the

24  minimum, he's going to get a sample.  And if you guys can't

25  agree about the rest of it, then you're going to have to send

1   me real letters with real case law and explain, applying the

2   laws to the facts of this case, and explain why you're

3   entitled to 53 or 50 or whatever it is, and plaintiff

4   explaining why he's not entitled to it.  So I think we have to

5   punt on this.

6          But in any event, there's going to be some discovery

7   obviously from the defendants.  Again, unless by some miracle

8   the plaintiff says they're going to forgo relying on any

9   testimony and rely only on the defendant's job description,

10  are you agreeing in that case that there is no need for

11  discovery if they're relying on your own job description?

12         MR. SHEA:  Well the job description is very bare

13  bones.  I think it would be more than the job description.  It

14  would be the testimony and other indications.  If he agrees

15  that for all 53 --

16         THE COURT:  No, he's taking out all testimony of his

17  people.  Maybe not your people.

18         MR. SHEA:  Right.  So if he would agree that all 53

19  developed their own marketing materials, all 53 do detailed

20  business plans -- if all 53 do the duties, if you agree that

21  all of them do the duties that Judge Torres labeled as an

22  outlier, I think we can forego discovery.  And then I think

23  they would all be clearly exempt.

24         THE COURT:  All right.  I think then we're not going

25  down that road probably.

1          Okay.  So should I order a briefing schedule on this

2    issue?  Is that what needs to happen?

3          MR. SHEA:  I think that would be a good way to

4    proceed.

5          MR. ADLER:  That's fine, Your Honor.

6          THE COURT:  Okay.  What's your proposal if you have

7    one?  Otherwise I'll make up one.

8          MR. ADLER:  Should we both submit our positions by a

9    particular date?

10          THE COURT:  And then have responses?

11          MR. SHEA:  Yeah.

12          THE COURT:  Sure.

13          MR. SHEA:  I think it would be an economical way to

14    do it.

15          THE COURT:  How much time would you like?

16          MR. SHEA:  Three weeks for initial submissions?  I'm

17    not sure how close it takes it to Thanksgiving.

18          THE COURT:  My computer is frozen, so let me just

19    see if I can unfreeze.  I think I've unfrozen it.  Three weeks

20    is November 21.

21          MR. SHEA:  Okay.  That would work from defendant's

22    perspective.

23          THE COURT:  That's the day before Thanksgiving.

24    Responses?

25          MR. SHEA:  With the intervening holiday, could we

20

1  say two weeks hence?

2          THE COURT:  December 5?

3          MR. ADLER:  That's fine, Your Honor.

4          THE COURT:  Okay.  And I assume you're not objecting

5  to the willfulness deposition or the damages documents?

6          MR. SHEA:  Well, it's really not the damages

7  documents.  I mean on the willfulness, that was part of the

8  FLSA case.  And as Your Honor noted, discovery was supposed to

9  close on that and there was discovery on that issue.

10          THE COURT:  I mean I unfortunately don't have the

11  full history of this.  So it is an FLSA issue.  Is there a

12  reason you don't have what you need on that?

13          MR. ADLER:  Well, the discovery though on the FLSA

14  really went to the class issues and not damages or statute of

15  limitations.  It was solely focused on --

16          THE COURT:  You think there was no limitation?

17          MR. SHEA:  I couldn't point you to chapter and

18  verse, Your Honor, but I think --

19          THE COURT:  All right.  At this point we're doing

20  discovery anyway so I'm going to allow the deposition on

21  willfulness.

22          And then we have briefing on your discovery.  Are

23  there some things that you can do by interrogatory?

24          MR. SHEA:  Well, certainly I would like to do

25  written interrogatory and document discovery that goes to the

1    question of hours worked, Your Honor.  I think that would be

2    something I could explore that way.  I don't think I can

3    explore the liability issues about duties and exercise a

4    discretion in judgment that way.  I think I need deposition

5    testimony for that.

6            THE COURT:  All right.  Well, that we're putting

7    off.  Okay.  So we'll have the briefing.  You'll get a ruling.

8    And then after that you'll come to me with a proposal as to

9    how we complete whatever discovery it is that I'm permitting.

10           MR. ADLER:  Your Honor, just for clarification, the

11   briefing that we're submitting is on what issues?  Because I

12   assume that -- I had thought --

13           THE COURT:  It's him saying he wants to depose all

14   your clients or future clients or -- sorry, 23 class members

15   and you saying he should get some kind of sample.

16           MR. ADLER:  Okay.  Thank you.

17           THE COURT:  So you're going to justify that position

18   and he's going to justify his position and then you'll

19   respond.

20           MR. ADLER:  Right.  Okay.  Thank you.

21           THE COURT:  So you have to hold off on your Rule 23

22   summary judgment motion until the discovery is completed.

23           MR. ADLER:  Yes.

24           THE COURT:  All right.  So I don't think there's

25   anything else that I see that we need to do today.  Is there

22

1  some other issue that needs to be resolved?

2          MR. SHEA:  None from the defendant, Your Honor.

3          MR. ADLER:  No, Your Honor.  Thank you.

4          THE COURT:  All right.  The next thing will be the

5  letters on the discovery and then once I make a ruling you

6  will consult with each other and submit the joint proposal, or

7  if you can't agree, competing proposals as to deadlines and so

8  forth.

9          MR. ADLER:  There is one other item, Your Honor.

10          THE COURT:  All right.

11          MR. ADLER:  Just the form of notice that we're going

12  to try to work out.

13          THE COURT:  You said you were going to work it out.

14          MR. ADLER:  Yes.

15          THE COURT:  If you can't, obviously you can apply to

16  me for relief.

17          MR. ADLER:  Okay.  Fine.  Thank you.

18          THE COURT:  All right.  Thank you.

19          MR. SHEA:  Thank you.

20                    * * * * * *

21

22

23

24

25

23

1      I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4                                    *Mary Greco*

5                          _____

6                                    Mary Greco

7   Dated:   November 9, 2018