# PAUL HASTINGS

1(212) 318-6405
patrickshea@paulhastings.com

May 6, 2019                                                                                      36516.00239

**VIA ECF**

Honorable Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Honorable Gabriel W. Gorenstein, Chief U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    *LoCurto v. AT&T Mobility Services LLC*
           Case No. 1:13-cv-04303-AT-GWG

Your Honors:

We write on behalf of Defendant AT&T Mobility Services LLC ("AT&T") in response to Plaintiff's pre-motion letter to Judge Torres dated April 29, 2019 (ECF No. 350) (copy enclosed for Judge Gorenstein). At the outset, we note that this action has been referred to Magistrate Judge Gorenstein for general pretrial purposes (ECF No. 172 (referral reassigned to Judge Gorenstein on July 10, 2018)). Although Plaintiff's letter was addressed to Judge Torres, we have addressed this response to both Judge Torres and Judge Gorenstein, because we understand Plaintiff's request for leave to file a motion to be referred to Judge Gorenstein. We will take direction from Your Honors as to which judge will decide Plaintiff's request. For the reasons set forth herein, AT&T opposes Plaintiff's request for leave to file a motion to expand the scope of the Rule 23 class in New Jersey.

1.     Plaintiff's Application Is Untimely.

Plaintiff's application is untimely, and will only serve to unduly delay proceedings in this matter. This case has been pending since 2013. In November 2013, Plaintiff sought to certify an FLSA collective that specifically excluded employees bound by arbitration agreements, and she again excluded such employees when she subsequently moved for class certification under Rule 23. But now, five and a half years after excluding those employees from this action, Plaintiff seeks to reverse course and add individuals bound by arbitration agreements to the Rule 23 class. That request is plainly untimely.

Class notice has already been sent, and the opt-out period has run. If the Court were to grant Plaintiff's request, a new notice would need to go out to additional potential class members in New Jersey, all of whom are party to an arbitration agreement with AT&T that AT&T will seek to enforce. After an additional opt-out period has run, AT&T would then move to compel arbitration of the claims of all additional members of the class who did not opt-out of the class. In the event that motion is granted, nothing will have been gained except for a further delay of the final resolution of this action. In the event that motion is denied, such a decision would be immediately appealable to the Second Circuit. In either case, Plaintiff's



Hon. Analisa Torres
Hon. Gabriel W. Gorenstein
May 6, 2019
Page 2

very belated attempt to expand the scope of the class will delay the ultimate disposition of this case for many months, or perhaps years.

Plaintiff's latest attempt to enlarge the scope of the class is reminiscent of her earlier motion to amend the complaint in 2015 (ECF No. 178), which Judge Torres denied. In that instance, Plaintiff sought to add five additional named plaintiffs and claims under the laws of ten different states after the Court granted her partial summary judgment. Judge Torres denied Plaintiff's motion, noting that she "ha[d] not shown good cause for why she waited more than two years after the close of the opt-in period and approximately a year and a half after the parties' July 2015 status update outlining the progress of discovery—until December 2016—to move for leave to file an amended complaint." (ECF No. 222, at 7–8.)

In her most recent pre-motion letter, Plaintiff again seeks to expand the group of persons asserting state-law causes of action against AT&T, and the Court should again deny Plaintiff's request as untimely. Plaintiff offers as a transparent excuse for her extraordinary delay the claim that her belated attempt to expand the class is based on a new legal development—the decision of an intermediate appellate court in New Jersey, *Skuse v. Pfizer, Inc.*, 457 N.J. Super. 539, 202 A.3d 1 (Super. Ct. App. Div. 2019), which Plaintiff alleges makes AT&T's arbitration agreement vulnerable to challenge. But *Skuse* does not reflect a new legal development, as even a cursory reading of the decision discloses. *Skuse* invalidated an arbitration agreement because it did not contain "some explicit, affirmative expression of agreement," which the Court found necessary to waive procedural rights like a right to trial by jury. That reflects a flawed interpretation of the Federal Arbitration Act for the reasons noted below. But with respect, that is a mistake that New Jersey state courts have been making for the past fifteen years and is decidedly not a new development. As the *Skuse* court noted, its decision is in line with "*longstanding precedent* in *Leodori v. CIGNA Corp.*, 175 N.J. 293, 303, 814 A.2d 1098 (*2003*) . . . , as well as the Court's more recent opinion in *Atalese v. U.S. Legal Services Group, L.P.*, 219 N.J. 430, 447, 99 A.3d 306 (*2014*)." *Id.* at 543 (emphasis added).

If Plaintiff wished to attempt to rely on *Leodori*'s flawed view of the Federal Arbitration Act, she was obliged to attempt to do so back in 2013 instead of accepting the enforceability of AT&T's agreement. It is far too late to raise this issue to further delay this almost six-year-old case.

2.      The Claims of Individuals Specifically Excluded from the Class Are Plainly Time-Barred.

Plaintiff's application should further be denied because the claims of the potential additional class members are barred by the relevant statute of limitations. Here, Plaintiff specifically excluded individuals who agreed to arbitrate disputes with AT&T when she first moved for conditional certification in November 2013 (ECF Nos. 32–33), thereby unequivocally indicating that she did not seek to advance the claims of individuals with arbitration agreements. Plaintiff reaffirmed this position by later moving for class certification of the New York and New Jersey classes in September 2017, and again specifically excluded individuals with arbitration agreements from her motion. (ECF No. 315.) Now, almost six years after filing the original complaint, Plaintiff argues that the filing of the original complaint somehow tolled the statute of limitations for individuals whose were never meant to be parties to this action. That argument turns the *American Pipe* doctrine on its head. The Supreme Court has made clear that "the commencement of a class action suspends the applicable statute of limitations as to all *asserted members* of the class who would have been parties had the suit been permitted to continue as a class action." *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S. Ct. 756, 766 (1974) (emphasis added); *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350, 103 S. Ct. 2392, 2396 (1983) (quoting *Am. Pipe*, 414 U.S. at 554)



Hon. Analisa Torres
Hon. Gabriel W. Gorenstein
May 6, 2019
Page 3

("The filing of a class action tolls the statute of limitations 'as to all *asserted members* of the class,' not just as to intervenors." (emphasis added)). In other words, *American Pipe* tolls the statute of limitations as to asserted members of the class, but not as to individuals specifically excluded from the class definition.

Here, Plaintiff improperly attempts to apply *American Pipe* tolling to individuals *who were not asserted members of the class*. When Plaintiff specifically excluded individuals who agreed to arbitrate disputes with AT&T from this action, she "clarified that these plaintiffs were never members of the putative class." *See Choquette v. City of N.Y.*, 839 F. Supp. 2d 692, 700 (S.D.N.Y. 2012) (citing *Smith v. Pennington*, 352 F.3d 884, 894 (4th Cir. 2003) ("[W]hen a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition. It then follows that for parties outside that asserted class, tolling will be unavailable at least until such time as the plaintiff repudiates that definition of the class he seeks to have certified in a manner that provides adequate notice that his class definition has changed."). "[B]oth the Supreme Court and courts in this Circuit have indicated that *American Pipe* tolling ends when a plaintiff opts out of the class *or a class certification decision of the court definitively excludes that plaintiff*." *Choquette*, 839 F. Supp. 2d at 699 (emphasis added); *accord McCalla v. City of N.Y.*, 2017 U.S. Dist. LEXIS 130040, at *90 n.53 (S.D.N.Y. Aug. 14, 2017). "Once [individuals] cease to be members of the class—for instance, when they opt out *or when the certification decision excludes them*—the limitation period begins to run again on their claims." *Ca. Pub. Emples. Ret. Sys. v. Caboto-Gruppo Intesa BCI (In re WorldCom Sec. Litig.)*, 496 F.3d 245, 255 (2d Cir. 2007) (emphasis added); *accord Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 116 (2d Cir. 2013); *see Liner v. City of N.Y.*, 2012 U.S. Dist. LEXIS 153651, at *10 (S.D.N.Y. Oct. 24, 2012) ("If the plaintiff in this case was excluded from the . . . class when it was preliminarily certified . . . , the tolling would have ended at that point. . . . Therefore, the Amended Complaint is plainly time-barred and must be dismissed."). *American Pipe* "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1804 (2018).

AT&T eliminated the account executive positions at issue in this litigation more than two years ago. Therefore, the claims of all additional individuals that Plaintiff seeks to sweep into the class are now time-barred.

3.     *Skuse* Does Not Apply and Is Preempted by the Federal Arbitration Act.

For the reasons stated above, this Court need not address the merits of *Skuse*. But even if this Court ignores the procedural posture of this action, forgives Plaintiff's lack of explanation for delay, and somehow concludes that the claims of individuals specifically excluded from the class are not time-barred, it still must reject the application of *Skuse* to this case because that decision is inconsistent with the Federal Arbitration Act ("FAA").

The FAA requires that states apply to arbitration contracts the same rules of contract formation that apply to non-arbitration contracts. 9 U.S.C. § 2. A court may invalidate an arbitration agreement based on "generally applicable contract defenses," but not on legal rules that "apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 333, 131 S. Ct. 1740, 1742-43 (2011). Indeed, the Supreme Court recently restated the well-settled proposition that "state law is preempted to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the FAA." *Lamps Plus, Inc. v.*



Hon. Analisa Torres
Hon. Gabriel W. Gorenstein
May 6, 2019
Page 4

*Varela*, No. 17-988, 2019 U.S. LEXIS 2943, at *11 (Apr. 24, 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352, 131 S. Ct. 1740, 1753 (2011)).

New Jersey, like other states, recognizes that the acceptance of a contract offer need not be express or explicit. *See, e.g.*, *Woolley v. Hoffmann-La Roche*, 99 N.J. 284, 302, 491 A.2d 1257, 1267 (1985) ("[T]he [employee] manual is an offer that seeks the formation of a unilateral contract—the employees' bargained-for action needed to make the offer binding being their continued work when they have no obligation to continue."); *Mita v. Chubb Comput. Servs., Inc.*, 337 N.J. Super. 517, 527, 767 A.2d 989, 995 (Super. Ct. App. Div. 2001) ("The employee, by continuing to work, accepts the employer's offer and the requisite conditions of employment."); *Craffey v. Bergen Cty. Utils. Auth.*, 315 N.J. Super. 345, 351, 718 A.2d 701, 704 (Super. Ct. App. Div. 1998) (employee "accepted his salary [by] continu[ing] to work at his job" after the expiration of his employment contract, which "was inconsistent with any claim on his part that he did not implicitly agree" to new terms and conditions of his employment); *Antheunisse v. Tiffany & Co., Inc.*, 229 N.J. Super. 399, 404, 551 A.2d 1006, 1008 (Super. Ct. App. Div. 1988) ("Plaintiff impliedly contracted with defendant when she reported voluntarily to work, complied with store policies and accepted the training and guidance provided by defendant."); *see also, e.g.*, *Weichert Co. Realtors v. Ryan*, 128 N.J. 427, 436-37, 608 A.2d 280, 285 (1992) ("[W]here an offeree gives no indication that he or she objects to any of the offer's essential terms, and passively accepts the benefits of an offeror's performance, the offeree has impliedly manifested his or her unconditional assent to the terms of the offer."); *Gamble v. Connolly*, 399 N.J. Super. 130, 141, 943 A.2d 202, 208 (Super. Ct. 2007) ("Acceptance may come either from words, creating an express contract, or from conduct, creating a contract implied-in-fact."); *Quigley v. KPMG Peat Marwick, LLP*, 330 N.J. Super. 252, 265, 749 A.2d 405, 413 (Super. Ct. App. Div. 2000) ("[E]mployment can be deemed consideration for an employee's submission to various demands of an employer."). However, in *Skuse*, the New Jersey Superior Court, relying on the New Jersey Supreme Court's opinion in *Leodori v. Cigna Corp.*, 175 N.J. 293, 306, 814 A.2d 1098, 1106 (2003), purports to impose a higher standard for the formation of arbitration agreements than for the formation of other contracts. Such a holding is in direct violation of the FAA. *See Lamps Plus*, No. 17-988, 2019 U.S. LEXIS 2943, at *11.

For the foregoing reasons, AT&T respectfully requests that this Court deny Plaintiff's leave to file a motion to redefine the already-certified Rule 23 New Jersey class to include individuals who were never meant to be part of this action and whose claims are plainly time-barred.

Respectfully submitted,

*[signature]*

Patrick W. Shea
of PAUL HASTINGS LLP

cc:    *All via email only*

      Steven I. Adler, Esq.
      Michael A. Saffer, Esq.
      Arla D. Cahill, Esq.
      Brian M. Block, Esq.

# ENCLOSURE



**Steven I. Adler, Esq.**
Member
Email:  sadler@lawfirm.ms

Mandelbaum Salsburg
attorneys at law

New Jersey • New York • Florida

3 Becker Farm Road
Suite 105
Roseland, New Jersey 07068
www.lawfirm.ms
t. 973.736.4600
f. 973.325.7467

April 29, 2019

**VIA ECF**

Honorable Analisa Torres, U.S.D.J.
Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      RE:   *LoCurto, et al. vs. AT&T Mobility Services, LLC*
              Civil Action No. 1:13-cv-04303 (AT) (GWG)

Dear Judge Torres:

     As Your Honor is aware, this firm represents plaintiff Lisa LoCurto, the FLSA opt-in plaintiffs and the Rule 23 New York and New Jersey class member plaintiffs (collectively, the "Plaintiffs") in this matter. Please accept this pre-motion letter pursuant to Your Honor's Individual Practices Rule III.A.ii.

     Plaintiffs respectfully request leave to file a motion to expand the Rule 23 New Jersey class to include additional former New Jersey Retail and National Retail Account Executives (collectively, the "RAEs"). Presently, the Rule 23 class includes all New York and New Jersey RAEs, "with the exception of RAEs who: . . . agreed to arbitrate their overtime claims with Defendant." *See* Order at 23-24 [Dkt. 315]. The alleged "agreement" to arbitrate is based on an arbitration notice that defendant AT&T Mobility Services, LLC ("AT&T") e-mailed to RAEs in 2011 and 2013 that required them to affirmatively "opt out" of the arbitration policy on or before a certain date if they did not want to be bound by it.[1] In other words, AT&T unilaterally deemed each RAE to have agreed to binding arbitration, unless and until the RAE timely opted out.

---

[1] A true and correct copy of the e-mail from AT&T that forwarded RAEs an "Important Notice Regarding Management Arbitration Agreement" and a "Management Arbitration Agreement" is annexed hereto as **Exhibit A**.

Honorable Analisa Torres, U.S.D.J.
April 29, 2019
Page 2

      This "opt out" procedure that AT&T employed, however, is in direct conflict with a recent published decision of the Superior Court of New Jersey, Appellate Division, in Skuse v. Pfizer, Inc., 457 N.J. Super. 539 (App. Div. 2019). There, the Appellate Division rejected an employer's unilateral declaration, on an e-mailed PowerPoint slide, that an employee would be deemed to have agreed to arbitrate if he or she continued to work for the company for an additional sixty days. Id. at 561-63. Indeed, the panel noted it was departing from the contrary holding in a 2015 decision of its sister panel. Id. (citing Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464 (App. Div. 2015)). Accordingly, Skuse represents a new development in New Jersey law.

      Skuse applies here. Simply put, if Skuse does not recognize an employee to have assented to arbitration by virtue of continuing to work for the employer for an additional period of time, *a fortiori*, an arbitration "agreement" like AT&T's, that unilaterally decrees that an employee is deemed to have agreed to arbitrate unless and until he or she affirmatively and timely opts-out, *i.e.* disagrees, is unenforceable. Accordingly, based on Skuse, Plaintiffs now seek leave to file a motion to have this Court invalidate AT&T's arbitration opt-out mechanism under New Jersey law and thereby add to the Rule 23 class those New Jersey RAEs who did not opt out.

      There is no statute of limitations issue with regard to the proposed expanded class of New Jersey RAEs. It is well-settled that the statute of limitations is tolled upon the filing of the Rule 23 claim. See, e.g., Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class."); Giovanniello v. ALM Media, LLC, 726 F.3d 106, 115 (2d Cir. 2013) (explaining Rule 23 tolling doctrine); Jie Zhang v. Wen Mei, Inc., No. 14-CV-1647, 2017 WL 8813132, at *13 (E.D.N.Y. Dec. 28, 2017) (applying Rule 23 tolling rule to NYLL wage claim), report and recommendation adopted, 2018 WL 878988 (E.D.N.Y. Feb. 14, 2018). The Complaint in this matter was filed on June 20, 2013. Complaint [Dkt. 1].

      The Complaint contains New Jersey Rule 23 class allegations for unpaid overtime and, importantly, does not exclude any subset of RAEs, including those who did not opt-out and purportedly were bound to arbitrate their claims with AT&T. Therefore, the statute of limitations was tolled for these RAEs. See id. at 9-11. Moreover, as to the recently certified New Jersey Rule 23 class, Court ordered depositions of certain class members have not yet begun. Accordingly, there will be no prejudice to AT&T should the Court allow our motion to be filed and expand the class to include all NJ RAEs.

      For these reasons, Plaintiffs respectfully request that the Court enter a briefing schedule for Plaintiffs' proposed motion to expand the Rule 23 class for New Jersey RAEs.

                                      Respectfully,

                                        STEVEN I. ADLER

Honorable Analisa Torres, U.S.D.J.
April 29, 2019
Page 3


SIA:bb
[Enc.]
Cc:   *Via Email Only*:
      Emily R. Pidot, Esq.

# EXHIBIT A

**Important Notice Regarding Management Arbitration Agreement**

The Management Arbitration Agreement that appears below provides for employees and AT&T to use independent, third-party arbitration rather than courts or juries to resolve legal disputes. **It is very important that you read this Agreement, as it affects your rights.**

The decision whether or not to participate in the arbitration process is entirely up to you. No one will be subjected to pressure or retaliation in connection with this decision.  If, contrary to this assurance, you believe you have experienced any pressure or retaliation, please contact the AT&T Hotline (888-871-2622).

**Should you choose not to participate, you must opt out -- that is, decline to participate in the arbitration process -- no later than 11:59 p.m. Central Standard Time on Monday, February 6, 2012.**   If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement.  If you choose to opt out, use this link http://mycsp.edc.cingular.net/csp_forms/opt_out_form.asp, which will take you to the site where you can electronically register your decision to opt out.  That site will generate and send to you written confirmation of your decision to opt out.
Once you have completed your review of the Agreement, please click the "Review Completed" button, whether or not you choose to opt out.

If you have any questions about this Agreement, please contact OneStop (Dial 1-888-722-1787, then speak "Employee Service Hotline").

**MANGEMENT ARBITRATION AGREEMENT**

*Please carefully review this new Management Arbitration Agreement.  Your decision in this matter is important.*

**Summary**

Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation.  Arbitration is more informal than a lawsuit in court, and may be faster.  Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts.  Under this Agreement, Arbitrators can award the same damages and relief that a court can award.  Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Except for a filing fee if you initiate a claim, the Company pays all the fees and costs of the Arbitrator.  Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to the same extent as you would be in court.

**How This Agreement Applies**

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce. This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation,

discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse you from utilizing the Company's or employee benefit plans' existing internal procedures for resolution of complaints.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

**Limitations On How This Agreement Applies**

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits. In order to ensure that employee benefit plan claims procedures comply fully with Department of Labor regulations (for example, 29 C.F.R. § 2560.503-1(c)(4)), this Agreement also does not apply to claims arising under the Employee Retirement Income Security Act ("ERISA").

This Agreement does not apply to any pending lawsuit that was on file in any federal or state court and to which you were a party as of December 1, 2011. Nor does this Agreement apply to any pending alleged or certified class, collective, or representative lawsuit that was on file in any federal or state court as of December 1, 2011, in which you were reasonably identifiable as a class member (or in the case of representative action, a beneficiary) as of that date.

Regardless of any other terms of this Agreement, you may still bring certain claims before administrative agencies or government offices or officials if applicable law permits access to such an agency, office, or official, notwithstanding the existence of an agreement to arbitrate. Examples would include, but not be limited to, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/ofccp/). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency or employee benefit plan in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to a pre-dispute arbitration agreement, such as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203), also are excluded from the coverage of this Agreement.

**To the maximum extent permitted by law, you hereby waive any right to bring on behalf of persons other than yourself, or to otherwise participate with other persons in: any class action; collective action; or representative action, including but not limited to any representative action under the California Private Attorneys General Act ("PAGA") or other, similar state statute. You retain the right, however, to bring claims in arbitration, including PAGA claims, but only for yourself as an individual. If a court determines that you cannot waive your right to bring a representative action under PAGA, any such claim may only be brought in court and not in arbitration.**

**Arbitration Rules, Selecting The Arbitrator, And Location Of Hearing**

The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. or any successor. The arbitration shall be in accordance with its Employment Arbitration

Rules & Procedures (and no other JAMS rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration.  The Company will supply you with a printed copy of those rules upon your request.  Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"), selected pursuant to JAMS rules or by mutual agreement of the parties.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted.  The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies.  The Federal Rules of Evidence shall apply.  The arbitration shall be final and binding upon the parties, except as provided in this Agreement.

Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company.  If you so choose, and if your residence is not in the same county (or parish) where you work or last worked for the Company, you may designate that the proceeding will occur within the county (or parish) where you reside.

**Notice Requirements And Starting An Arbitration**

The Company must, and you may, notify the other party of a claim to be arbitrated by using the forms provided on the JAMS website (www.jamsadr.com.)  Alternatively, you may commence an arbitration against the Company, its officers, directors, employees, or agents by sending to the Company a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: AT&T Legal Department, 208 S. Akard St., Room 3305, Dallas, TX 75202 ("Notice Address"). The Notice must (a) identify all parties, (b) describe the nature and basis of the claim or dispute; and (c) set forth the specific relief sought ("Demand").  Any party giving written notice of a claim to be arbitrated must do so no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim.

The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. To the extent permitted by law, a party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled would be rendered ineffectual without such provisional relief.

**Paying For The Arbitration**

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if you are the party initiating the claim, you will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which you are (or were last) employed by the Company.  Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any.  However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

**How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct limited civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

Each party shall have the right to take depositions of up to three fact witnesses and any expert witness designated by another party.  Each party also shall have the right to make one request for production of documents to any party.  Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement.  The Arbitrator may grant such additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery to adequately arbitrate the claim,

taking into account the parties' mutual desire to have a fast, cost-effective dispute-resolution mechanism. Each party shall have the right to subpoena documents and witnesses from third parties subject to any limitations the Arbitrator shall impose for good cause shown.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable.  The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief.  The time for filing such a brief shall be set by the Arbitrator.

**The Arbitration Award**

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law.  A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement.  If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the Ethics and Compliance Hotline (888-871-2622)

**Sole and Entire Agreement**

This is the complete agreement of the parties on the subject of arbitration of disputes.  This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject.  No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

**Construction and Severability**

If any provision of this Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement.  All provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.

# MANAGEMENT ARBITRATION AGREEMENT

**Summary**

Under this Agreement, you and the AT&T company that employs you ("the Company") agree that any dispute to which this Agreement applies will be decided by final and binding arbitration instead of court litigation. Arbitration is more informal than a lawsuit in court, and may be faster. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Under this Agreement, Arbitrators can award the same damages and relief that a court can award. Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted. Except for a filing fee if you initiate a claim, the Company pays all the fees and costs of the Arbitrator. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to the same extent as you would be in court.

**How This Agreement Applies**

This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 and following, and evidences a transaction involving commerce. This agreement applies to any claim that you may have against any of the following: (1) any AT&T company, (2) its present or former officers, directors, employees or agents in their capacity as such or otherwise, (3) the Company's parent, subsidiary and affiliated entities, and all successors and assigns of any of them; and this agreement also applies to any claim that the Company or any other AT&T company may have against you. Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. Nothing contained in this Agreement shall be construed to prevent or excuse you from utilizing the Company's or employee benefit plans' existing internal procedures for resolution of complaints.

Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of a court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

**Limitations On How This Agreement Applies**

This Agreement does not apply to claims for workers compensation, state disability insurance and unemployment insurance benefits. In order to ensure that employee benefit plan claims procedures comply fully with Department of Labor regulations (for example, 29 C.F.R. § 2560.503-1(c)(4)), this Agreement also does not apply to claims arising under the Employee Retirement Income Security Act ("ERISA").

This Agreement does not apply to any pending lawsuit that was on file in any federal or state court and to which you were a party as of March 15, 2013. Nor does this Agreement apply to any pending alleged or certified class, collective, or representative lawsuit that was on file in any federal or state court as of March 15, 2013, in which you were reasonably identifiable as a class member (or in the case of representative action, a beneficiary) as of that date.

Regardless of any other terms of this Agreement, you may still bring certain claims before administrative agencies or government offices or officials if applicable law permits access to such an agency, office, or

official, notwithstanding the existence of an agreement to arbitrate. Examples would include, but not be limited to, claims or charges brought before the Equal Employment Opportunity Commission (www.eeoc.gov), the U.S. Department of Labor (www.dol.gov), the National Labor Relations Board www.nlrb.gov), or the Office of Federal Contract Compliance Programs (www.dol.gov/ofccp/). Nothing in this Agreement shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency or employee benefit plan in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration.

Disputes that may not be subject to a pre-dispute arbitration agreement, such as provided by the Dodd-Frank Wall Street Reform and Consumer Protection Act (Public Law 111-203), also are excluded from the coverage of this Agreement.

**To the maximum extent permitted by law, you hereby waive any right to bring on behalf of persons other than yourself, or to otherwise participate with other persons in: any class action; collective action; or representative action, including but not limited to any representative action under the California Private Attorneys General Act ("PAGA") or other, similar state statute. You retain the right, however, to bring claims in arbitration, including PAGA claims, but only for yourself as an individual. If a court determines that you cannot waive your right to bring a representative action under PAGA, any such claim may only be brought in court and not in arbitration.**

**Arbitration Rules, Selecting The Arbitrator, And Location Of Hearing**

The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. or any successor. The arbitration shall be in accordance with its Employment Arbitration Rules & Procedures (and no other JAMS rules), which are currently available at http://www.jamsadr.com/rules-employment-arbitration. The Company will supply you with a printed copy of those rules upon your request. Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator"), selected pursuant to JAMS rules or by mutual agreement of the parties.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies. The Federal Rules of Evidence shall apply. The arbitration shall be final and binding upon the parties, except as provided in this Agreement. Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company. If you so choose, and if your residence is not in the same county (or parish) where you work or last worked for the Company, you may designate that the proceeding will occur within the county (or parish) where you reside.

**Notice Requirements And Starting An Arbitration**

The Company must, and you may, notify the other party of a claim to be arbitrated by using the forms provided on the JAMS website (www.jamsadr.com.) Alternatively, you may commence an arbitration against the Company, its officers, directors, employees, or agents by sending to the Company a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: AT&T Legal Department, 208 S. Akard St., Room 3305, Dallas, TX 75202 ("Notice Address"). The Notice must (a) identify all parties, (b) describe the nature and basis of the claim or dispute; and (c) set forth the specific relief sought ("Demand"). Any party giving written notice of a claim to be arbitrated must do so no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim.
The arbitrator shall resolve all disputes regarding the timeliness or propriety of the demand for arbitration. To the extent permitted by law, a party may apply to a court of competent jurisdiction for temporary or preliminary injunctive relief in connection with an arbitrable controversy, but only upon the ground that the award to which that party may be entitled would be rendered ineffectual without such provisional relief.

**Paying For The Arbitration**

The Company will be responsible for paying any filing fee and the fees and costs of the Arbitrator; provided, however, that if you are the party initiating the claim, you will contribute an amount equal to the filing fee to initiate a claim in the court of general jurisdiction in the state in which you are (or were last) employed by the Company. Each party shall pay in the first instance its own litigation costs and attorneys' fees, if any. However, if any party prevails on a statutory claim which affords the prevailing party attorneys' fees and litigation costs, or if there is a written agreement providing for attorneys' fees and/or litigation costs, the Arbitrator shall rule upon a motion for attorneys' fees and/or litigation costs under the same standards a court would apply under the law applicable to the claim(s) at issue.

**How Arbitration Proceedings Are Conducted**

In arbitration, the parties will have the right to conduct limited civil discovery, bring dispositive motions, and present witnesses and evidence as needed to present their cases and defenses, and any disputes in this regard shall be resolved by the Arbitrator.

Each party shall have the right to take depositions of up to three fact witnesses and any expert witness designated by another party. Each party also shall have the right to make one request for production of documents to any party. Requests for additional depositions or discovery may be made to the Arbitrator selected pursuant to this Agreement. The Arbitrator may grant such additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery to adequately arbitrate the claim, taking into account the parties' mutual desire to have a fast, cost-effective dispute-resolution mechanism. Each party shall have the right to subpoena documents and witnesses from third parties subject to any limitations the Arbitrator shall impose for good cause shown.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person, as the Arbitrator deems advisable. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure. Should any party refuse or neglect to appear for, or participate in, the arbitration hearing, the Arbitrator shall have the authority to decide the dispute based upon whatever evidence is presented.

Either party shall have the right to file a post-hearing brief. The time for filing such a brief shall be set by the Arbitrator.

**The Arbitration Award**

The Arbitrator may award any party any remedy to which that party is entitled under applicable law, but such remedies shall be limited to those that would be available to a party in his or her individual capacity in a court of law for the claims presented to and decided by the Arbitrator.

The Arbitrator will issue a decision or award in writing, stating the essential findings of fact and conclusions of law. A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration.

**Non-Retaliation**

It is against Company policy for any Employee to be subject to retaliation if he or she exercises his or her right to assert claims under this Agreement. If you believe that you have been retaliated against by anyone at the Company, you should immediately report this to the AT&T Hotline (888-871-2622)

**Sole and Entire Agreement**

This is the complete agreement of the parties on the subject of arbitration of disputes. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

**Construction and Severability**

If any provision of this Agreement is adjudicated to be void or otherwise unenforceable, in whole or in part, such adjudication shall not affect the validity of the remainder of the Agreement. All provisions shall remain in full force and effect based on the parties' mutual intent to create a binding agreement to arbitrate their disputes.